IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELE SAUNDERS and RICHARD HAYDEN, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>HEARST TELEVISION, INC.,<br><br><br>       Defendant. | No. 1:23-cv-10998-RWZ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

*Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Television Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

THE VIDEO PRIVACY PROTECTION ACT ................................................................... 2

RELEVANT FACTS ALLEGED ......................................................................................... 4

ARGUMENT ......................................................................................................................... 6

   I.   Plaintiffs' Claims Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) ................. 6

   A. Pleading Standard. ................................................................................................... 6

   B. Defendant Hearst Television Is Not a Video Tape Service Provider. ............................. 8

   C. Plaintiffs Have Not Alleged That They Are "Consumers" Within the Meaning of the
       VPPA. ....................................................................................................................... 9

   D. The Information Allegedly Shared with Braze and DoubleClick Is Not "Personally
       Identifiable Information" Within the Meaning of the VPPA. .......................................... 11

       1.   The information disclosed does not "easily identify" any individual. ..................... 13

          a)   Email ...................................................................................................... 14

          b)   Geolocation .......................................................................................... 15

          c)   Other alphanumeric identifiers ........................................................... 18

          d)   None of the identifiers are alleged to have permitted identification of Plaintiffs 19

       2.   The information disclosed does not identify "specific video materials requested or
          obtained." .................................................................................................................. 23

   E. Plaintiffs Have Not Alleged Knowing Transmission ................................................... 24

   F. Plaintiffs Have Not Alleged Actual Damages. ............................................................. 25

   G. The Purported Disclosures Alleged in the Complaint Fall Within an Exception to
       Liability under the VPPA. .......................................................................................... 26

   II.   Plaintiffs' Reading of the VPPA Would Be Barred by the First Amendment. ................. 27

   A. The VPPA Is a Content-Based and Speaker-Based Restriction on Speech. .................. 27

   B. The VPPA Would Not Satisfy Any Level of Scrutiny as Applied to Hearst's Alleged
       Speech. ..................................................................................................................... 28

CONCLUSION ................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ambrose v. Bos. Globe Media Partners LLC*,
No. CV 21-10810, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ......................................8, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................7

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-CV-04570, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)................................. *passim*

*Berry v. FBI*,
No. 17-CV-143, 2018 WL 3468703 (D.N.H. July 17, 2018) ..................................................25

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011)..............................................................................................................28

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .........................................................................6, 7, 19

*Carter v. Scripps Networks, LLC*,
No. 22-CV-2031, --- F. Supp. 3d ----, 2023 WL 3061858 (S.D.N.Y. Apr. 24,
2023) ....................................................................................................................................10

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980)..............................................................................................................29

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
142 S. Ct. 1464 (2022)..........................................................................................................28

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993)..............................................................................................................29

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ................................................................................................15

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*,
972 F.2d 453 (1st Cir. 1992).................................................................................................21

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ................................................................................................27

*Doe v. Chao*,
    540 U.S. 614 (2004).......................................................................................................25

*Dyer v. Capital One, N.A.*,
    496 F. Supp. 3d 554 (D. Mass. 2020) .........................................................................25

*Edenfield v. Fane*,
    507 U.S. 761 (1993).......................................................................................................29

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ..........................................................................12, 13, 14

*Eichenberger v. ESPN, Inc.*,
    No. C14-463, 2015 WL 7252985 (W.D. Wash. May 7, 2015)..................................16

*Ellis v. Cartoon Network, Inc.*,
    No. 14-CV-484, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ..................................16

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) ........................................................................9, 10, 16

*Exeltis USA Inc. v. First Databank, Inc.*,
    520 F. Supp. 3d 1225 (N.D. Cal. 2021) .....................................................................27

*F.A.A. v. Cooper*,
    566 U.S. 284 (2012).......................................................................................................25

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) .......................................................................................7

*Feldman v. Star Trib. Media Co.*,
    No. 22-CV-1731, 2023 WL 2388381 (D. Minn. Mar. 7, 2023) ...............................13

*In re Fin. Oversight & Mgt. Bd. for P.R.*,
    919 F.3d 638 (1st Cir. 2019)........................................................................................20

*First Fed. Sav. & Loan Ass'n of Bos. v. State Tax Comm'n*,
    437 U.S. 255 (1978).........................................................................................................8

*Gardener v. MeTV*,
    No. 22 CV 5963, 2023 WL 4365901 (N.D. Ill. July 6, 2023) .................................10

*Giragosian v. Ryan*,
    547 F.3d 59 (1st Cir. 2008)............................................................................................7

*Goodman v. Main Springs*,
    No. 14-12585, 2014 WL 5454220 (D. Mass. Oct. 27, 2014) .....................................6

*Gooley v. Mobil Oil Corp.*,
  851 F.2d 513 (1st Cir. 1988) .................................................................................7

*Greater New Orleans Broad. Ass'n v. United States*,
  527 U.S. 173 (1999) ...........................................................................................29

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...........................................................11, 24

*In re Hulu Priv. Litig.*,
  No. C 11-03764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ...........................8

*Ibanez v. Fla. Dep't of Bus. & Prof'l Regul.*,
  512 U.S. 136 (1994) ...........................................................................................29

*Jefferson v. Healthline Media, Inc.*,
  No. 22-CV-05059, 2023 WL 3668522 (N.D. Cal. May 24, 2023) ......................10

*Locklear v. Dow Jones & Co.*,
  101 F. Supp. 3d 1312 (N.D. Ga. 2015) ...............................................................16

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ...........................................................................................29

*Martin v. Meredith Corp.*,
  No. 22-cv-4776, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ..........................23

*Mayhall on behalf of D.M. v. Amazon Web Servs. Inc.*,
  No. C21-1473, 2022 WL 2718091 (W.D. Wash. May 24, 2022) ........................19

*MCI Telecomms. Corp. v. AT&T Co.*,
  512 U.S. 218 (1994) .............................................................................................8

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) .............................................................................13

*Monsarrat v. Newman*,
  28 F.4th 314 (1st Cir. 2022) ................................................................................27

*Nationstar Mortg. LLC v. Nelson*,
  No. 14-CV-00507, 2015 WL 3885361 (D. Me. June 24, 2015) ..........................20

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) .......................................................................11, 12, 14

*In re Nickelodeon Consumer Priv. Litig.*,
  MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014) ...............................12, 16

*Ocasio-Hernández v. Fortuño-Burset*,
  640 F.3d 1 (1st Cir. 2011) ................................................................6, 7

*Peñalbert-Rosa v. Fortuño-Burset*,
  631 F.3d 592 (1st Cir. 2011) ...................................................................7

*Perry v. Cable News Network, Inc.*,
  854 F.3d 1336. (11th Cir. 2017) ............................................................11

*Project Veritas v. Schmidt*,
  No. 22-35271, --- F.4th ----, 2023 WL 4308952 (9th Cir. 2023)...........28

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015)...............................................................27, 28, 29, 30

*Robinson v. Disney Online*,
  152 F. Supp. 3d 176 (S.D.N.Y. 2015) ..............................11, 12, 13, 22

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995)................................................................................29

*Ruiz Rivera v. Pfizer Pharm., LLC*,
  521 F.3d 76 (1st Cir. 2008) ......................................................................7

*Schatz v. Republican State Leadership Comm.*,
  669 F.3d 50 (1st Cir. 2012).................................................................6, 7

*Solmetex, LLC v. Apavia LLC*,
  149 F. Supp. 3d 192 (D. Mass. 2016) ......................................................7

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011)...........................................................................27, 28, 29

*Soto-Torres v. Fraticelli*,
  654 F.3d 153 (1st Cir. 2011) ....................................................................6

*St. Louis Heart Ctr. v. Nomax*,
  899 F. 3d 500 (8th Cir. 2018) .................................................................26

*Stark v. Patreon, Inc.*,
  No. 22-CV-03131, 2023 WL 2090979 (N.D. Cal. Feb. 17, 2023) .........28

*Sterk v. Redbox Automated Retail, LLC*,
  770 F.3d 618 (7th Cir. 2014) ..................................................................25

*In re SuperValu, Inc.*,
  925 F.3d 955 (8th Cir. 2019) ..................................................................25

*Tassinari v. Salvation Army Nat'l Corp.*,
   610 F. Supp. 3d 343 (D. Mass. 2022) ........................................................27

*United States v. Caronia*,
   703 F.3d 149 (2d Cir. 2012) ....................................................................29

*United States v. Vega-Rivera*,
   866 F.3d 14 (1st Cir. 2017) ....................................................................19

*Walker v. Meta Platforms, Inc.*,
   No. 22-CV-02442, 2023 WL 3607282 (N.D. Cal. Mar. 3, 2023) ............................9

*Wang v. N.H. Bd. of Registration in Med.*,
   55 F.3d 698 (1st Cir. 1995) ....................................................................20

*Williams v. Litton Loan Servicing*,
   No. CA 10-11866, 2011 WL 3585528 (D. Mass. Aug. 15, 2011) ........................25

*Wilson v. Triller, Inc.*,
   598 F. Supp. 3d 82 (S.D.N.Y. 2022) ................................................13, 22

*Wollschlaeger v. Governor, Fla.*,
   848 F.3d 1293 (11th Cir. 2017) ..............................................................29

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ............................................................ *passim*

## Statutes

5 U.S.C. § 552a(g)(4)(A) ............................................................................4

18 U.S.C. § 2710 .................................................................................... *passim*

## Other Authorities

Google Authorized Buyers Help, Target mobile apps with IDFA or AAID,
   https://support.google.com/authorizedbuyers/answer/3221407?hl=en (last
   visited 7/17/23) ....................................................................................19

Google Play Console Help, Advertising ID,
   https://support.google.com/googleplay/android-
   developer/answer/6048248?hl=en#:~:text=The%20advertising%20ID%20is%
   20a,continue%20to%20monetize%20their%20apps (last visited 7/17/23) .....................18, 19

S. Rep. No. 100–599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1 .............................. *passim*

## INTRODUCTION

This is one of dozens (if not hundreds) of recent cases seeking to expand application of the Video Privacy Protection Act ("VPPA")—a 1988 law designed to prevent video stores and similar outlets from disclosing the video rental history of customers—well beyond Congress's intended scope and the limits of common sense.

Plaintiffs' theory is that each time anyone watches a local weather report or breaking news story published by defendant Hearst Television Inc. ("HTV") on their mobile phone, they are entitled to a minimum of $2500 in liquidated damages under the VPPA.  Compl. ¶¶ 96, 102-03, 137.  Plaintiffs claim they are entitled to this even though they suffered no actual damages (as required under the statute), because when they accessed news content (for free) on HTV's Apps, Plaintiffs' phones sent their approximate GPS location and a random alphanumeric identifier to third-party service providers (Braze and DoubleClick) that Plaintiffs allege provide marketing services to HTV.  They claim this violated their privacy under the VPPA. Significantly, Plaintiffs are non-subscriber, non-paying, visitors to HTV's app and neither their name, address nor any other information that would easily identify them was shared with anyone. More significantly, Plaintiffs' geolocation could be shared only if they affirmatively and voluntarily enabled "location services" on their mobile phones.  The VPPA provides no cause of action for Plaintiffs' fanciful claim.

The VPPA was enacted to address a specific and narrow issue identified by Congress and its scope is limited to that end.  It was tailored to prohibit disclosures of personally identifying information (principally names) connected with the titles of specific videotape cassettes, whether they were purchased, rented from a neighborhood video rental store, or obtained via a subscription membership club or service.  It did *not* cover distribution of *all* video content, and it

certainly did not cover the distribution of broadcast news and daily weather reports, which were not even available by videocassette or "similar" means in 1988. Moreover, broadcast news and weather has *never* been information of the sort for which consumption is deemed private, under any law. Nor does the VPPA prohibit disclosures of non-personalized mobile geolocation or other information not associated with any specific person.

The Complaint fails to meet the VPPA's very specific requirements because it is devoid of facts plausibly alleging that (i) HTV is a "video tape service provider"; (ii) Plaintiffs are statutory "consumers"; (iii) HTV shared any "personally identifiable information" (or "PII"), let alone "knowingly"; or (iv) that either Plaintiff suffered any "actual damages" by the alleged disclosures. It *does* allege facts showing, on the face of the Complaint, that an exemption to the VPPA applies. Plaintiffs attempt to obfuscate these fundamental and fatal pleading deficiencies by conflating alleged disclosures to two separate entities, neither of which alone is sufficient to state a claim even under the most liberal pleading standard.

Plaintiffs' failure to allege these essential elements of a VPPA claim provides multiple independent grounds to dismiss the Complaint. Moreover, while the Court need not reach this issue, Plaintiffs' overbroad reading of the VPPA is made even more apparent by the fact it would collide head-first with the First Amendment if credited, rendering the VPPA unconstitutional as applied. For all the reasons, the Complaint should be dismissed.

## THE VIDEO PRIVACY PROTECTION ACT

During the 1987 confirmation hearings for then-Supreme Court nominee Judge Robert H. Bork, a Washington, D.C., newspaper published a profile that included a list of 146 films the Judge and his family had rented from a local video store. S. Rep. No. 100–599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1 (hereinafter "S. Rep."). This prompted Congress to

enact the VPPA, with the goal of "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id.* at 1. ("[S]imilar Audio visual materials" are "laser discs, open-reel movies, or CDI technology . . . ." *Id.* at 12.)

The VPPA provides a civil remedy against a "video tape service provider" for "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The law includes precise definitions that must be used to evaluate the adequacy of the Complaint in this case:

> (1) the term "**consumer**" means any renter, purchaser, or subscriber of goods or services from a video tape service provider;
>
> . . . .
>
> (3) the term "**personally identifiable information**" includes information **which identifies *a person* as having requested or obtained specific video materials** or services from a video tape service provider[.]
>
> (4) the term "**video tape service provider**" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of ***prerecorded video cassette tapes or similar*** audio visual materials[.]

*Id.* § 2710(a)(1), (3), (4) (emphases added).

The statute expressly provides that "personally identifiable information" is "information that identifies a *particular person* as having engaged in a specific transaction with a video tape service provider." S. Rep. at 12 (emphasis added). The VPPA further provides that to be PII, it must identify a specific individual as having "requested or obtained" specific video content. 18 U.S.C. § 2710(a)(3). Merely revealing that an individual may have visited a website containing video content does not satisfy this requirement. *Cf.* S. Rep. at 12. All the required elements must be specified to fall within the law's scope—the individual's identity, the content's identity, and that that specific content was requested or obtained by the specific individual.

Finally, to state a claim, the VPPA requires a consumer to have suffered "actual damages", while setting a floor of $2500 for those who can make this showing. 18 U.S.C.

§ 2710(c)(2)(A) (providing for recovery of "actual damages but not less than liquidated damages

in an amount of $2,500").  In this way, the VPPA parallels the Privacy Act of 1972.  *See* 5

U.S.C. § 552a(g)(4)(A) (providing for recovery of "actual damages sustained by the

individual . . . but in no case . . . less than the sum of $1,000").

The VPPA also contains a number of exceptions, including disclosures with the consent

of the consumer and disclosures "incident to the ordinary course of business" of the video tape

service provider.  18 U.S.C. § 2710(b)(2)(B) & (E).  "[O]rdinary course of business" is defined

under the statute as including "order fulfillment" and "request processing."  *Id.* § 2710(a)(2).

The "ordinary course of business" exception "allows disclosure to permit video tape service

providers to use mailing houses, warehouses, *computer services, and similar companies* for

*marketing to their customers*."  S. Rep. at 14 (emphases added).

## RELEVANT FACTS ALLEGED[1]

Defendant Hearst Television Inc. ("HTV") is a New York-based company that, through

its local news stations broadcasts local news, weather and other programming to 39 states.

Compl. ¶¶ 10-11.  In certain markets, HTV also offers mobile phone applications (the "Apps" or

an "App") that users can download to their phone from the Apple or Google mobile application

store.  *Id.* ¶¶ 4, 96, 102.  Plaintiffs do not allege—because they cannot—that they or any users

were required to share geolocation, email, or any other information to download or use the Apps

or to view news and weather reports within the Apps.

---

[1] The facts set forth herein are taken, except where noted, from the allegations of Plaintiffs' Complaint.  They are accepted as true for purposes of this motion only; in many cases they are inaccurate.  Plaintiffs' characterizations and conclusory statements, or allegations contradicted by other factual allegations, need not be accepted as true.

To the contrary, Plaintiffs **specifically admit** that at some point, they **voluntarily** turned on their phone's "location services." *Id.* ¶¶ 96, 102, 118-20.[2]  Although Saunders alleges she provided an email to WCVB "for further news updates" "[b]etween 2021 and April 2022" (*id.* ¶ 96), she also alleges that she did not download the App until January 2023 (*id.*) and need not be credited in connection with allegations concerning her use of HTV's App.  Plaintiff Hayden does NOT allege that he ever provided an email in connection with his use of the WMUR App (*see id.* ¶¶ 102-05).  Neither Plaintiff alleges that HTV shared their email with anyone.

Plaintiffs used the App to watch only "local news stories" (*id.* ¶ 97) or "local weather updates" (*id.* ¶ 103), but do not specify which stories or updates they viewed or when.  Plaintiffs allege some of the news stories included video content, but do not allege they requested or received any video content (as opposed to news articles) specifically.  *Id.* ¶ 14.  Plaintiffs affirmatively allege that any video content within the Apps only "supplements the written content", and the videos themselves are "clips of news stories on various topics."  *Id.*

Plaintiffs allege that certain information is disclosed to two different service providers, Braze and DoubleClick, and include purported "captures" of that data with respect to an unidentified App user, not either Plaintiff.  *Id.* ¶¶ 24, 25.  With respect to alleged "transmissions" to Braze, the Complaint alleges that Braze "obtain[s]" the following information (*id.* ¶ 24):

- A user's geolocation (*if* geolocation services *are enabled*).  *Id.* ¶¶ 24, 96, 102, 118-20.
- A user's email address *if that user submits it.*  *Id.* ¶ 35.
- A "Braze user ID", which Plaintiffs allege is "string of numbers" assigned to a "user" accessing a mobile application.  *Id.* ¶¶ 24, 52.
- What Plaintiff describes as "the video ID and category for the specific video viewed by the user", which plaintiffs admit is a *string of numbers* only, with no article or

---

[2] As noted, Plaintiffs admit in the Complaint that "location services" can be turned on and off in a phone's settings and in the App itself.  *E.g.*, Compl. ¶¶ 96, 102.

other title information included. *Id.* ¶ 24. (The transmission report copied into the Complaint uses different terminology, identifying the numbers as a "COID".)

With respect to "transmissions" to DoubleClick, the Complaint alleges that DoubleClick "obtain[s]" the following information (*id.* ¶ 25):

- A user's geolocation (*if* geolocation services *are enabled*). *Id.* ¶¶ 25, 96, 102, 118-20.
- An "advertising ID" or "AAID".  AAID is a "*string of numbers* which attaches *to a device*" (*id.* ¶ 47 (emphasis added)) and can be reset at any time (*id.* ¶ 48).
- Video information in the form of "videoID" or what Plaintiffs claim is "videoName", but which appears in the purported transmission "capture" as a URL to an online article.  *Id.* ¶ 25.
- Plaintiffs do NOT allege that DoubleClick ever receives email addresses, even if provided to the App.

Plaintiffs make the conclusory allegation that they could not prevent the App "from disclosing [their] PII to third parties" (*id.* ¶¶ 99, 105), but this is directly contradicted by their specific admissions that each voluntarily chose to enable geolocation (*id.* ¶¶ 96, 102) and the absence of any allegation that such geolocation was required to use the App.

## ARGUMENT

### I.    Plaintiffs' Claims Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

#### A.    Pleading Standard.

Fed. R. Civ. P. 12(b)(6) requires courts to first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *see also Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011).  This includes statements that "offer legal conclusions couched as facts . . . ." *Goodman v. Main Springs*, No. 14-12585, 2014 WL 5454220, at *2 (D. Mass. Oct. 27, 2014) (quoting *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011)); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1062 (N.D. Cal. 2021) (courts need not "assume the truth of legal conclusions merely because they are

cast in the form of factual allegations.") (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). "[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007)).

Next, the court takes any non-conclusory, non-speculative facts as true to see if they plausibly narrate a claim for relief. *Schatz*, 669 F.3d at 55. Plausibility requires "something more than merely possible . . . ." *Id*. Although the court draws all reasonable inferences in the pleader's favor, it "need not accept every imaginable inference." *See id*. at 57 (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514, 515 (1st Cir. 1988)). Where a complaint pleads facts "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal is warranted where the non-conclusory facts alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (citation and alterations omitted).

"A district court may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" *Solmetex, LLC v. Apavia LLC*, 149 F. Supp. 3d 192, 194 (D. Mass. 2016) (quoting *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original) (other citations omitted); *Brown*, 525 F. Supp. 3d at 1062 (a court "need not accept as true allegations contradicted by judicially noticeable facts" and "may look beyond the . . . complaint to matters of public record" without converting the motion into one for summary judgment) (citations omitted).

**B.      Defendant Hearst Television Is Not a Video Tape Service Provider.**

HTV is a broadcaster of local news, not a distributor of prerecorded video tapes or other similar materials, and HTV's news stories, weather reports, and similar public-interest content have never been delivered by those means.  As a result, HTV is not the type of video service provider covered by the VPPA.

Congress could have made the VPPA applicable to distributors of any and all video content or "audio visual materials"—including those broadcast on TV.  They did not.  Instead, Congress expressly limited the VPPA's coverage to distributors of videocassettes or similar media, designed to be viewed in the privacy of one's home.[3]  *See* S. Rep. at 5; *cf. First Fed. Sav. & Loan Ass'n of Bos. v. State Tax Comm'n*, 437 U.S. 255, 262 (1978) ("When Congress required that federal savings and loan associations be placed in the same classification as 'similar' state institutions, it certainly did not assume that every local and mutual or cooperative thrift and home-financing institution is similar to a federal association.").

Courts that have extended the VPPA's reach beyond video cassettes have generally done so only to defendants using new technologies to distribute the same sort of content available by video cassette in the 1980s—*i.e.*, streaming services providing prerecorded movies and similar content.[4]  *See, e.g., In re Hulu Priv. Litig.*, No. C 11-03764, 2012 WL 3282960, at *5 (N.D. Cal. Aug. 10, 2012) (whether someone is a "service provider" under the VPPA depends on the type of

---

[3] The "most relevant time for determining a statutory term's meaning" is the time when the law was enacted.  *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 228 (1994).

[4] Decisions that have permitted a claim to proceed past a motion to dismiss based on news content have been cursory district court decisions with little analysis and are not binding on this Court.  *See, e.g., Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022).  No court to HTV's knowledge has ever applied the VPPA to broadcast news, and *Yershov*, which addressed a Gannett news app, did not consider this requirement at all, noting that the defendant had not "challenge[d] the sufficiency of [the] pleading as to this element of the claim."  *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 n.2 (1st Cir. 2016).

video content distributed); *Walker v. Meta Platforms, Inc.*, No. 22-CV-02442, 2023 WL 3607282, at *6 (N.D. Cal. Mar. 3, 2023) (only "prerecorded video content . . . falls within the scope of 'similar audio visual materials'") (collecting cases). Here, the only content at issue is "news" and "local weather updates". Compl. ¶¶ 96, 103. Neither is similar to materials distributed via "prerecorded video cassette tapes" in 1988. The fact that news may now be watched on one's phone while in transit between scheduled broadcasts does not change the fact that HTV's content is not the sort targeted by the VPPA and does not make it a "videotape service provider" under the law. The Complaint should be dismissed for this reason alone.

### C.    Plaintiffs Have Not Alleged That They Are "Consumers" Within the Meaning of the VPPA.

Under the VPPA, a "consumer" is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiffs do not allege they "rented or purchased" anything from HTV. Nor do they allege they are "subscribers", or facts that could support such an allegation. The only allegation addressing their consumer status is the conclusory Class-wide claim that "Plaintiffs . . . are 'consumers' as defined by the VPPA because they downloaded, installed, and watched videos using the Apps." Compl. ¶ 131.

Merely downloading a mobile app (or even watching videos on it) is not sufficient to render an App user a "subscriber." Every appellate court to consider the issue—including the First Circuit—has required more. *See, e.g.*, *Yershov*, 820 F.3d at 486; *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015) ("[A] person who downloads and uses a free mobile application on his smartphone to view freely available content, without more, is not a 'subscriber' . . . under the VPPA."). The court in *Ellis* reasoned that subscriber status requires "some type of commitment, relationship, or association (financial or otherwise) between a person and an entity," and that such commitment might be established by "payment, registration,

commitment, delivery, [expressed association,] and/or access to restricted content." *Id*. at 1256 (alteration in original) (citation omitted); *see also Carter v. Scripps Networks, LLC*, No. 22-CV-2031, --- F. Supp. 3d ----, 2023 WL 3061858, at *4 (S.D.N.Y. Apr. 24, 2023) (collecting cases); *Jefferson v. Healthline Media, Inc.*, No. 22-CV-05059, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023) (dismissing complaint where plaintiff alleged only that "she gave [defendant] her name and email address to 'subscribe[ ] to [its] email list'", but did not allege facts describing "any good or service" received "in exchange for signing up").

Notably, the First Circuit, which took an arguably "broader" view of who might qualify as a "subscriber" under the VPPA, required specific allegations beyond mere installation and use of an app, or the provision of additional information, such as an email address or enabling of geolocation. The *Yershov* court found that installing a mobile app was sufficient to create a subscriber relationship **only when** plaintiff alleged that installation **required** the user to provide personal information **in exchange for access** to the app's content. 820 F.3d at 486, 489.[5] Thus, in *Yershov*, the First Circuit found that plaintiff had satisfied this requirement only because he alleged that "[to] use the App", he was *required* to provide it with personal information, such as "his mobile device's GPS location . . . ."[6] *Id*.; *see also Gardener v. MeTV*, No. 22 CV 5963, 2023 WL 4365901, at *4 (N.D. Ill. July 6, 2023) (dismissing complaint for failure to allege "subscriber") (citing *Yershov*, 820 F.3d at 489). There are no such allegations here.

---

[5] Notably, the *Yershov* court stated that requiring a user's PII in exchange for using an App was "materially different from" a case in which "*USA Today* simply remained one of millions of sites on the web that Yershov might have accessed through a web browser" (or App) without requiring PII. 820 F.3d at 489.

[6] This aspect of the *Yershov* decision was dependent on the court's separate finding that GPS location information was sufficient to identify a specific individual, and therefore constituted, *when combined with other information*, "PII" under the VPPA. As discussed *infra*, this aspect of *Yershov* should not apply to a mobile news and weather app (which by its nature is used at multiple locations and insufficient by itself to identify a specific individual), but it is of questionable precedent and conflicts with every other appellate court to have considered the issue.

As the Eleventh Circuit subsequently noted, finding "subscriber" status in the absence of specific allegations that provision of PII was required in order to use the app "would require the conclusion that every app user is a subscriber" under the VPPA.  *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 & n.6. (11th Cir. 2017) (distinguishing *Yershov* and affirming dismissal where provision of GPS location data was not required "to use the app").  Because Plaintiffs do not allege that they provided any PII to HTV *in return for access to HTV's free video content* (and did not do so) there is no plausible allegation that they are VPPA "consumers".

### D.    The Information Allegedly Shared with Braze and DoubleClick Is Not "Personally Identifiable Information" Within the Meaning of the VPPA.

A third independent basis for dismissal is the absence of any factual allegations giving rise to a plausible inference that the information disclosed meets the VPPA's very specific definition of "PII": "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3). This requires fact allegations that the information disclosed would permit the recipient to identify three things: "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material."  *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015); *see also Yershov*, 820 F.3d at 485-86; *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015).  Plaintiffs have not alleged any of these elements here.

Courts, including the First Circuit, have recognized "there must be limitations to what constitutes PII under the VPPA." *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017), *report and recommendation adopted*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017); *see also Yershov*, 820 F.3d at 486; *In re*

*Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) (Congress did not intend the VPPA "to cover factual circumstances far removed from those that motivated its passage"); *Robinson*, 152 F. Supp. 3d at 181 ("If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless."); *accord In re Nickelodeon Consumer Priv. Litig.*, MDL No. 2443, 2014 WL 3012873, at *11 (D.N.J. July 2, 2014) ("Certainly, this type of information might one day serve as the basis of personal identification after some effort on the part of the recipient, but the same could be said for nearly any type of personal information.").

First, PII must identify a purported "customer"—not just a device.  Under *Yershov*, the information allegedly disclosed must do so "easily."  820 F.3d at 486.  Short of a specific name, a person may be easily identified by revealing a social security number to the government (because the government would be able to easily identify the person the number corresponded to) or "when a football referee announces a violation by 'No. 12 on the offense,' [because] everyone with a game program knows the name of the player who was flagged."  *Id*.  The information allegedly disclosed here does not come close to easily "identifying a person" in this way.

Second, the information shared must also be "reasonably and foreseeably likely to reveal which . . . video[] [the consumer] has obtained."  *Id*.  This means that the information would "readily permit *an ordinary person* to identify a [particular individual]", *In re Nickelodeon*, 827 F.3d at 290 (emphasis added), without the need for additional steps to connect the information to a specific individual.[7]  Here, Plaintiffs' allegations do not suggest that it would be possible for

---

[7] A majority of courts use the "*ordinary person*" test.  *In re Nickelodeon*, 827 F.3d at 290 (emphasis added); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).  As the Ninth Circuit has observed, "[t]he 'ordinary person' test better informs video service providers of their obligations under the VPPA."  876 F.3d at 985.  This is because "the statute views disclosure from the perspective of the disclosing party.  It looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it.  As a result, 'personally identifiable information' must have the same meaning without regard to its recipient's capabilities.

anyone, including Braze and DoubleClick, to do so without taking additional, unspecified steps. Nor do the disclosures alleged—including GPS location and email, *see, e.g.*, Compl. ¶¶ 24-25—demonstrate that even taking additional steps would permit identification of particular individuals (let alone Plaintiffs), and Plaintiffs do not allege otherwise.

### 1.    The information disclosed does not "easily identify" any individual.

The differences between the factual allegations of this case and those at issue in *Yershov* and other cases attempting to establish VPPA claims (such as those involving the Facebook Pixel) make clear the allegations here are insufficient to "easily identify" a Plaintiff or any individual.  In *Yershov* and the Facebook cases, for example, central to the court decisions denying a motion to dismiss were factual allegations that the recipient of the information at issue (in *Yershov*, Adobe, and in the Facebook Pixel cases, Facebook) itself possessed preexisting personalized information (including names), that the *recipient* could actually use *at the time of receipt* to identify a specific, named, individual.  *See, e.g.*, *Yershov*, 820 F.3d at 484-85 (describing allegations); *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (noting that *Yershov* "explicitly relied on the allegation that the defendant knew Adobe would be able to use this information to identify the plaintiff with particularity because of vast information the company collects about individuals for the purpose of creating 'digital dossiers'" (citing *Yershov*, 820 F.3d at 485-86)); *Feldman v. Star Trib. Media Co.*, No. 22-CV-1731, 2023 WL 2388381, at *9 (D. Minn. Mar. 7, 2023) (denying motion to dismiss where complaint alleged that "connecting a Facebook ID to a specific person, a URL to a particular video, and the specific

---

Holding otherwise would make '[t]he lawfulness of [a] disclosure . . . depend on circumstances outside of [a video service provider's] control.'" *Id.* (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)); *see also Robinson*, 152 F. Supp. 3d at 182 (interpretations of the VPPA that look to whether "information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties" identify a particular person are at odds with the language of the statute).

person to the particular video is a reasonably straightforward exercise" for Facebook); *Ambrose*,
2022 WL 4329373, at *2 (noting specific allegations that Facebook would be able to connect the
material disclosed by Pixel to existing, personalized profiles that would permit it to specifically
determine what information identifiable registered users had viewed); *see also* Compl. ¶ 70.
There are no such allegations here.

While Plaintiffs try to leave the impression that such connections are being made by
Braze and DoubleClick, their factual allegations indicate precisely the opposite—that *none* of the
information allegedly disclosed actually permitted Braze or DoubleClick, let alone an "ordinary
person", to identify either Plaintiff or any other individual as having requested or obtained a
specific video. *See, e.g.*, *Eichenberger*, 876 F.3d at 986 (information disclosed "*cannot* identify
an individual unless it is combined with other data in Adobe's possession—data that ESPN never
disclosed and apparently never even possessed"); *In re Nickelodeon*, 827 F.3d at 283
(questioning whether the definition of PII includes information that "[t]o an average person . . .
would likely be of little help in trying to identify an actual person").

In nonetheless trying to meet *Yershov*'s "easily identify" test, Plaintiffs rely heavily on
three pieces of information that they allege were disclosed to either Braze or DoubleClick: email
address (to Braze only), geolocation data, and a third alphanumeric identifier (a "Braze ID" or an
"AAID").  None meets *Yershov*'s test and is PII within the meaning of the VPPA.

### a)  Email

The Complaint does not squarely allege that either Plaintiff provided an email address in
connection with their use of the Apps (much less that it was required to use the App).  *See supra*
p. 5.  As to Braze only, Plaintiffs allege that an email address *can* be shared by the App—but
only if a user *chooses* to provide their email address to HTV.  There also is no allegation that

Plaintiffs' email addresses (which are not alleged) would easily identify them, or that email addresses that *are* alleged to have been transmitted to Braze (*see* Compl. ¶ 24) identify any specific person, whether on their own or combined with other information allegedly disclosed.[8] Plaintiffs instead allege that an email address "is a unique string of characters which designate an electronic mailbox" (*id.* ¶ 35), *not* a specific individual.  These pleading failures independently doom Plaintiffs' claim.

Moreover, as a matter of law, an email address is not in itself sufficient to identify a specific person within the meaning of the VPPA (let alone the person who may have "requested or obtained" a video).  *See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008-09 (7th Cir. 2019) (an email address is not *inherently* identifying).  In *Dancel*, the Seventh Circuit held that a username was not sufficient to identify a specific individual for purposes of a right of publicity statute. "The [statute] . . . requires more . . . . It demands that an attribute, even a name, serve to identify an individual.  And not just *an* individual but '*that* individual,' the one whose identity is being appropriated."  *Id.* at 1009 (the fact that usernames are unique "does nothing to answer the question whether any given username identifies that specific individual who is behind that username and its associated account").  The VPPA demands no less.

### b)    Geolocation

Plaintiffs also allege that the purported disclosure of geolocation information (in the form of a hashed identifier or longitude/latitude) they voluntarily enabled to both Braze and DoubleClick "combined with publicly available tools" transform those disclosures into PII under

---

[8] In yet another of their non-fact based, hypothetical allegations, Plaintiffs allege that there exist third party services that one may use to identify an individual from an email alias and conclude this means an ordinary person can use an email address to identify a person.  Compl. ¶ 35.  But Plaintiffs do NOT allege that Braze did so or would do so, or that doing so would identify Plaintiffs or the individuals associated with the emails included in the Complaint.  (And of course, no email addresses are alleged to have been disclosed to DoubleClick at all.)

the VPPA.[9]  *See, e.g.*, Compl. ¶¶ 50, 53, 62, 100, 101.  Although the *Yershov* court suggested

that GPS data *can* be identifying under certain circumstances, it is not necessarily the case, and

Plaintiffs' very specific allegations illustrate why it is not the case here.[10]  In fact, Plaintiffs'

allegations provide no factual basis to conclude that their geolocation data enabled anyone to

identify them, or anyone else.  They support the opposite conclusion.

   The precise geolocation information provided in Compl. ¶¶ 24-25—which purports to

include actual data transmitted to Braze and DoubleClick as part of a "dynamic analysis" and

includes three different longitude/latitudes—indicates the device(s) that sent GPS signals to

Braze and/or DoubleClick may have been located in or around 1306 to 1314 Solano Avenue in

Albany, California (*see* Compl. ¶¶ 24-25, and 39, p. 13) at some point in time.  This information

does not make any individual "easily identifiable" to an "ordinary person," either on its face or

with "publicly available tools."[11]  There is nothing in the data, much less the Complaint, to

suggest who in particular might live at the corresponding California addresses, or that whoever

---

[9] Notably, the class that Plaintiffs purport to represent is defined to include all persons who used the apps "with location services enabled", regardless of whether they submitted an email address.  Compl. ¶¶ 118-20.

[10] To the extent *Yershov* is misread to stand for the proposition that device identifiers and GPS signals, in all cases and without more, are capable of identifying a particular person, it would be both counterfactual (*see infra* pp. 16-17, 20-21) and contrary to the weight of case law.  *See also In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *10 ("PII is information which must, without more, itself link an actual person to actual video materials."); *Ellis v. Cartoon Network, Inc.*, No. 14-CV-484, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (PII not disclosed where the third party to whom an Android ID and viewing history were provided had to "collect information from other sources" to identify the plaintiff), *aff'd on other grounds*, 803 F.3d 1251; *Locklear v. Dow Jones & Co.*, 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person and, therefore, is not PII." (citation and quotation marks omitted)), *abrogated on other grounds*, *Ellis*, 803 F.3d 1251; *Eichenberger v. ESPN, Inc.*, No. C14-463, 2015 WL 7252985, at *6 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA).  And even *Yershov* itself cautioned against reading its holding too broadly.  820 F.3d at 489.

[11] Notably, the articles Plaintiffs cite to support their theory do NOT state that a single GPS coordinate at a single point in time is sufficient to identify an individual; rather, they are clear that such identification is only possible with following multiple data points over a long period of time—approaching a year or more.  Compl. ¶ 40 n.25, 41.  This is the very nature of a "longitudinal" study such as those referenced in n.25 and ¶ 41 of the Complaint.

was using the App at that time even lives at one of those addresses and was not just walking or driving by or visiting temporarily.  It does not "easily identify" the Plaintiffs, who allege they reside across the country in Massachusetts and New Hampshire.  Compl. ¶¶ 108-09.[12]  Nor does it "easily identify" anyone else.  The addresses appear to encompass, among other things, a number of commercial properties, including a chiropractor's office and apartment buildings.[13]  Plaintiffs do not even allege—and could not—that the GPS coordinates included in ¶¶ 24-25 reflect the actual home or business address of any specific unidentified users who conducted the "dynamic analysis" at the time they purportedly accessed news reports on the Apps.  *See id.* ¶¶ 24-25.

The First Circuit's decision in *Yershov* is of no help to Plaintiffs.  It provides no basis to conclude that any individual GPS disclosure can easily or reliably identify a specific individual at the time they request specific video content.  Rather, *Yershov* relied on the express—and extreme—hypothetical assumption that "146" GPS disclosures over time that all identified the same residential and workplace address could be a reliable static indicator of the person who lived and worked at those addresses.  820 F.3d at 486.  That assumption has no place in this case, where the allegations do not support it, and in fact contradict it.  Mobile apps are by nature designed to be used on the go and in a variety of locations, including public locations and places frequented by other people.  GPS location only indicate where a device is at a given moment in time, which can change throughout a day (or week, or month).  Given these realities, geolocation

---

[12] Although Plaintiffs broadly allege that in theory, "[p]recise geolocation can be used by anyone to uniquely identify a person" *id.* ¶ 40, they do NOT allege that it is possible to do so from the specific geohashes alleged in the Complaint.

[13] All of this information is readily ascertainable from the information and websites incorporated by reference into the Complaint by going to the very Google map embedded there and searching for the business names listed there and zooming in or out and examining "street view" as needed.  Alternatively, the longitude and latitude included in ¶¶ 24-25 can be placed into publicly available online calculators.  In either case, any addresses found do not lead to specifically identifying any individual alleged to have been using either of the Apps, let alone a Plaintiff.

is not sufficient to "easily identify" *an individual person* checking a weather report or reading a news update on an HTV mobile App at any given time.  Plaintiffs admit as much when they provide two different GPS locations that they allege to correspond with a single individual (reflected on pp. 8-9 of the Complaint), yet provide no basis to "easily identify" that individual. This is far from the extreme example cited by the *Yershov* court.  On the facts alleged, the geolocation enabled by Plaintiffs on their phone and purportedly shared with Braze and DoubleClick are not PII within the meaning of the VPPA.

### c)    *Other alphanumeric identifiers*

Plaintiffs' attempt to equate alleged disclosures of certain alphanumeric identifiers (a "Braze ID" to Braze, and an "Advertising ID" or "AAID" to DoubleClick) by the HTV Apps with the types of "easily identifying" disclosures relied upon by the *Yershov* court similarly fails. In *Yershov*, the court's decision was based on very different—and patently incorrect—facts.[14] There, the plaintiff alleged that the Android ID/AAID "remains constant" and that the AAID was tied to a specific *user*, not just a device.  820 F.3d at 484 n.1 (noting that the plaintiff specifically alleged that "Android IDs . . . are unique both to a specific device and user, such that where a device has multiple users, each user appears as a separate device.").  Here, in sharp contrast, Plaintiffs correctly acknowledge that neither is true:  rather, an AAID attaches "to a device", not a user, and is "resettable", not persistent.  Compl. ¶¶ 47-48; *see also* Google Play Console Help, Advertising ID, https://support.google.com/googleplay/android-developer/answer/6048248?hl=en#:~:text=The%20advertising%20ID%20is%20a,continue%20to%20monetize%20their%20apps (last visited 7/17/23) ("The advertising ID is a unique, user-

---

[14] Many of the allegations relied upon by the *Yershov* court were later disclaimed as never supported, and the complaint was voluntarily dismissed.  *See supra* pp. 19-20.

resettable ID. . . . It enables users to reset their identifier or opt-out of personalized ads . . . within Google Play apps."). Plaintiffs (or any device user) can also opt out of sharing AAID entirely. *See, e.g.*, *id.*; Google Authorized Buyers Help, Target mobile apps with IDFA or AAID, https://support.google.com/authorizedbuyers/answer/3221407?hl=en (last visited 7/17/23).[15]

Plaintiffs' allegations with respect to disclosures to Braze are similarly deficient. Despite their conclusory allegation that Braze IDs "*can*" include "names, email addresses" and other information (Compl. ¶ 52 (emphasis added)), Plaintiffs do not allege any facts to support this claim, and the specific facts alleged with respect to transmissions from the HTV Apps show that as allegedly transmitted, these IDs are no more than a string of seemingly random numbers and letters. *Id.* ¶ 24. No ordinary person would be able to identify anyone, let alone a Plaintiff, from the number, and Plaintiffs do not allege that Braze could identify them. As a result, neither the Braze ID nor the AAID are PII under the VPPA.

### d) *None of the identifiers are alleged to have permitted identification of Plaintiffs.*

Plaintiffs undoubtedly have attempted to tailor their allegations to fit their reading of the First Circuit's decision in *Yershov*. But the facts alleged do not fit *Yershov*, a decision explicitly tied to the very specific allegations made there. 820 F.3d at 489.

As an initial matter, *Yershov* is not binding precedent because the case ended when plaintiff stipulated to facts indicating the court never had jurisdiction over the case from the start.

---

[15] It is well-established that the court can take notice of publicly-available documents. *See, e.g.*, *Brown*, 525 F. Supp. 3d at 1061 (documents that appear on Google's websites are "proper subjects for judicial notice") (collecting cases); *see also United States v. Vega-Rivera*, 866 F.3d 14, 20 (1st Cir. 2017) (taking notice of Google map); *Mayhall on behalf of D.M. v. Amazon Web Servs. Inc.*, No. C21-1473, 2022 WL 2718091, at *4 (W.D. Wash. May 24, 2022) (taking notice of Customer Agreement and "Data Privacy FAQ" where "both appear on publicly available websites and the facts included are not subject to reasonable dispute"), *report and recommendation adopted*, No. 21-CV-01473, 2023 WL 2728292 (W.D. Wash. Mar. 31, 2023). Such documents are also incorporated by reference in the Complaint, which describes Plaintiffs as downloading the HTV Apps onto their Android devices and purports to describe certain features of DoubleClick and App use on those devices.

Following the First Circuit's decision and reinstatement of plaintiff's claims in that case, the parties engaged in discovery. Throughout the process, there were questions as to plaintiff's ability to support his allegations. *See, e.g.*, Mem. of Law in Opp'n to Mot. for Ext. of Time, *Yershov v. Gannett*, No. 14-cv-13112 (D. Mass. Mar. 27, 2017) ("*Yershov* docket"), ECF No. 73. Ultimately, the plaintiff stipulated that he ***did not have*** evidence to support the most basic allegations of his complaint (upon which the First Circuit relied): that defendant "disclos[ed] his PII—in the form of the title of the videos he watched [on the USA Today App], his unique Android ID, and his GPS coordinates—to third party analytics company [Adobe Systems Inc.]" that permitted Adobe to "identif[y] Yershov and attribute[] his video viewing records to an individualized profile of Plaintiff Yershov in its databases." ECF No. 83, *Yershhov* docket (stipulation of dismissal with prejudice) (citing *Yershov* Compl. ¶ 42). The very facts the *Yershov* plaintiff disclaimed in his stipulation of dismissal were the very same facts relied upon by the First Circuit in ruling on the motion to dismiss before it. *See supra* at 15-18. In other words, the *Yershov* plaintiff *never had* Article III standing at all to bring his claims (let alone a cause of action under the VPPA), the facts alleged were *always* hypothetical, the claim was not properly before the court. and there was never a justiciable controversy to begin with, rendering the First Circuit's decision advisory at best.[16] *See, e.g.*, *In re Fin. Oversight & Mgt. Bd. for P.R.*, 919 F.3d 638, 646 (1st Cir. 2019) ("In the absence of an actual controversy, federal courts cannot issue advisory opinions."); *Wang v. N.H. Bd. of Registration in Med.*, 55 F.3d 698, 702 (1st Cir. 1995) ("We decline the invitation to provide an advisory opinion on a claim for which there is no evidentiary support in the appellate record.").[17]

---

[16] The stipulation of dismissal in *Yershov* demonstrates that it was not a case of subsequent facts rendering the case moot, but rather that the facts giving rise to an alleged claim *never existed in the first place*.

[17] *Cf. Nationstar Mortg. LLC v. Nelson*, No. 14-CV-00507, 2015 WL 3885361, at *2 (D. Me. June 24, 2015) ("If Nationstar did, in fact, lack standing to bring a foreclosure complaint, then a judgment on that claim would not have

Moreover, as noted *supra* pp. 9-12 and notes 8 and 11, if *Yershov* were read as broadly as Plaintiffs would like, it would be out of step with every other appellate court (and most district courts) to have considered claims like Plaintiffs'. *Yershov*'s assumption that particular GPS disclosures and AAIDs are static indicators that can "easily identify" individuals is also contrary to the way GPS and AAIDs work in practice (and common sense in the context of a mobile application, not to mention the very articles relied upon by Plaintiffs in their Complaint). *See supra* at 15-19. Moreover, that assumption was based on the extreme example of 146 geolocation data points that all pointed to the same person's home and work and no place else. But the VPPA requires assessing PII at a given point in time—that of a particular disclosure.

Finally, *Yershov* is distinguishable on its facts. The extreme hypothetical facts upon which *Yershov*'s dictum was based are absent here, as are *any* actual facts that indicate an individual could be "easily identified." *See* discussion, *supra*. Moreover, despite attempting to allege that geolocation, email, and a Braze or AAID *could* be shared (if affirmatively enabled in the case of geolocation and email) and the inclusion of many pages of allegations speculating about what Braze and DoubleClick "*may*" be able to do with such information, Plaintiffs do not allege that either Braze or DoubleClick actually used the information purportedly shared by HTV to identify specific individuals who viewed specific video content on the Apps—let alone that they did so and could identify Plaintiffs. *See* Compl. ¶¶ 63-85. This is in sharp contrast to the allegations in *Yershov*, where the plaintiff alleged that "Adobe *was* able to identify *Yershov* and link the videos he had viewed to his individualized profile maintained *by Adobe*." 820 F.3d at 484-85 (emphasis added). There are no such allegations here.

---

preclusive effect."); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir. 1992) (statements not essential to determination of legal question before the court are dicta: "[d]ictum constitutes neither the law of the case nor the stuff of binding precedent")."

*Wilson v. Triller* is instructive in its analysis of allegations similar to those in Plaintiffs'

Complaint.  In *Wilson*, the district court examined the allegations of the complaint before it

through the lens of *Yershov* and found they came up short:

> While the complaint alleges what sort of information *could* be included on a user's profile and then ultimately disclosed to the third parties, it contains no allegation as to what information *was actually included* on Wilson's profile nor how that information could be used by a third party to identify Wilson. Indeed, the complaint lacks any allegation that would allow the Court to infer a "firm and readily foreseeable" connection between the information disclosed and Wilson's identify, thus failing to state a claim under the VPPA even assuming the broader approach set out in *Yershov.*

598 F. Supp. 3d at 92 (emphases added) (citations omitted).  Here, Plaintiffs' allegations require

the Court to make greater inferential leaps:  the linkages required between the data allegedly

disclosed to Braze and to DoubleClick (each of which disclosures must be assessed separately

from one another) and the ability to identify either Plaintiff, are simply "too uncertain, or too

dependent on too much yet-to-be-done, or unforeseeable detective work . . . ."  *Yershov*, 820

F.3d at 486.[18]  Plaintiffs do not allege that either Braze or DoubleClick actually combined

information from HTV with their own on-hand information, or had the capacity to do so if they

wished.  As noted *supra*, neither the Court nor anyone else would be able to take the information

provided by Plaintiffs on pages 7-9 of the Complaint and identify with any confidence a specific

individual who allegedly viewed the referenced content.  In short, Plaintiffs' allegations make

plain that here "[a]n unrelated third party equipped with the information purportedly disclosed by

[Defendant], and nothing more, could not identify [Plaintiff]."  *Robinson*, 152 F. Supp. 3d at 184.

---

[18]  As one district court noted, "[w]hatever the impact of modern digital technologies on the manner in which personal information is shared, stored, and understood by third parties . . . the Court cannot ascribe such an expansive intent to Congress in enacting the VPPA.  It would render meaningless the requirement that the information identify a specific person as having rented or watched specific videos, as all information would, with some work, be identifying, and would transmute a statute focused on disclosure of specific information to one principally concerned with what third parties might conceivably be able to do with far more limited disclosures." *Robinson*, 152 F. Supp. 3d at 181.

As a result, Plaintiffs have failed to meet their burden under Rule 12(b)(6) of alleging facts giving rise to any plausible inference that it was reasonably and foreseeably likely that the disclosures at issue would "easily" identify a Plaintiff.

### 2. The information disclosed does not identify "specific video materials requested or obtained."

In addition to easily identifying a specific "consumer", the information disclosed must *connect* the consumer to *specific video material* the consumer *requested or obtained*. 18 U.S.C. § 2710(a)(3); *Yershov*, 820 F.3d at 486. By its plain language, the VPPA is concerned with revealing an individual's specific interest, as reflected by a request for or receipt of "specific video materials." If the information purportedly disclosed reveals, *e.g.*, only that someone visited a particular website, and does not reveal whether they were interested in specific video content on that website, the VPPA is not implicated. *See Martin v. Meredith Corp*., No. 22-cv-4776, 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023); *see also* S. Rep. at 12 (VPPA not violated by disclosing "whether a [ ] person patronized a [video store] . . . on a particular date").

Plaintiffs have not met the threshold requirement of showing that HTV disclosed information linking them to specific video material they requested. Instead, Plaintiffs point to what they describe as "captures" of transmissions in Compl. ¶ 24 (Braze) and ¶ 25 (DoubleClick). In the case of DoubleClick, this includes a website URL, characterized by Plaintiffs as a "VideoName", and a string of numbers characterized as a "VideoID." For Braze, this includes only a string of numbers identified in the capture as "COID." Neither indicates the specific video content a specific consumer requested or obtained. First, a URL linking to a news story—which may or may not include accompanying video content—at most indicates a request for the news story, and not a "*request* for *specific video* material." *Id.* ¶ 14 (alleging that the videos on the Apps only "supplement[] the written content"), ¶¶ 24-25; *Martin*, 2023 WL

2118074, at *3-4 (dismissing complaint despite general allegations that video title was shared where specific allegations revealed "only webpage titles [shared]": "merely disclosing the name of the webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage").  It is a far cry from disclosing that a judge rented a copy of "Citizen Kane" on video tape.

Second, Plaintiffs acknowledge that in order to determine which online news article (or "video" as Plaintiffs characterize it) is sent to Braze, the "recipient" would need to know the specific call letters of the station plus the COID (Compl. ¶ 58)—but they do not allege that any HTV station's call letters were even disclosed to Braze (or that Braze knows or can distinguish specific HTV stations from "Hearst Television" generally based on the information received). Even under Rule 12(b)(6)'s liberal pleading standard, these allegations are simply too tenuous and require too many inferential steps to meet Plaintiffs' burden.

### E.    Plaintiffs Have Not Alleged Knowing Transmission.

Any disclosure of PII is actionable only if it was made "knowingly" by defendant.  This requires allegations that a defendant *knew* that a third party would actually link information it already possessed with other information conveyed and become aware that a particular person had in fact purchased a particular video.  *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1096 (granting summary judgment where the connection would be established, if at all, by an act of the recipient); *see also Bernardino*, 2017 WL 3727230, at *9.  "[T]he knowledge element of the VPPA violation is intertwined with the definition of PII.  If Barnes & Noble did not think it was conveying PII, then there could be no knowledge of the conveyance, regardless of whether it knew what Facebook might do with the information."  *Bernardino*, 2017 WL 3727230, at *9.

-24-

Here, Plaintiffs do no more than conclusorily allege that "it is abundantly clear that [HTV] intentionally and knowingly discloses to Braze and Google, . . . its users' personally identifiable information."  Compl. ¶ 86 (emphasis omitted).  Plaintiffs plead no facts to support that bare conclusion, let alone that HTV thought it was conveying PII.  And the facts that are alleged demonstrate that any connection between the information allegedly disclosed and any individual's identity would be done, if at all, only by Braze or DoubleClick.  *See, e.g.*, Compl. ¶¶ 59, 62. This is not sufficient under the VPPA.

### F.    Plaintiffs Have Not Alleged Actual Damages.

Finally, the VPPA provides a cause of action only where an individual is able to allege (and ultimately prove) "actual damages."  18 U.S.C. § 2710(c)(2); *see also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 n.1 (7th Cir. 2014) (distinguishing "actual damages" requirement from harm required for Article III standing); *Bernardino*, 2017 WL 3727230, at *7 (noting, in denying preliminary injunction, possibility that "a jury values *the harm from providing the DVD purchase information to Facebook's database* at a higher amount" (emphasis added)); *Doe v. Chao*, 540 U.S. 614 (2004) (requiring actual damages under Privacy Act);[19] *cf. In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (analyzing similar language under 815 Ill. Comp. Stat. 505/10a(a), and finding "[t]he actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" (citations omitted)); *Dyer v. Capital One, N.A.*, 496 F. Supp. 3d 554, 562 (D. Mass. 2020) (dismissing RESPA claim for failing to allege actual damages); *Williams v. Litton Loan Servicing*, No. CA 10-11866, 2011 WL

---

[19] The VPPA was modeled on the Privacy Act.  *See* S. Rep. at 8.  Under the Privacy Act, "actual damages" require allegations of "special damages for proven pecuniary loss."  *F.A.A. v. Cooper*, 566 U.S. 284, 298 (2012); *Berry v. FBI*, No. 17-CV-143, 2018 WL 3468703, at *3 (D.N.H. July 17, 2018) ("[C]ourts routinely dismiss claims for damages under the Privacy Act that fail to allege any discernible pecuniary injury") (collecting cases), *aff'd*, No. 18-1926, 2020 WL 13065178 (1st Cir. Feb. 27, 2020).

3585528, at *4 (D. Mass. Aug. 15, 2011) (same); *St. Louis Heart Ctr. v. Nomax*, 899 F. 3d 500, 503-05 (8th Cir. 2018). The need to prove actual damages is reflected in the legislative history as well. It notes that "[t]he civil remedies section puts teeth into the [VPPA], ensuring that the law will be enforced by individuals *who suffer as the result of* unauthorized disclosures. It provides that an individual *harmed* by a violation of the Act may seek compensation in the form of actual and punitive damages, equitable and declaratory relief and attorneys' fees and costs." S. Rep. at 8 (emphasis added).

Plaintiffs do not even attempt to allege that they have suffered actual damages resulting from the alleged disclosures. *See, e.g.*, Compl. ¶¶ 128-37 (Count 1). There is no allegation that either Plaintiff suffered any pecuniary loss. Moreover, by alleging they chose to enable location services even though it was not required for them to use the App (and view videos on the App), Plaintiffs admit that any purported damages were caused by their own actions.

### G. The Purported Disclosures Alleged in the Complaint Fall Within an Exception to Liability under the VPPA.

The VPPA provides several exemptions to liability even when "personally identifying information" about specific video materials is disclosed. Disclosures "incident to the ordinary course of business of the video tape service provider" are permitted. 18 U.S.C. § 2710(b)(2)(D)-(E); S. Rep. at 14; *see Bernardino*, 2017 WL 3727230, at *8. These include, *inter alia*, "order fulfillment" and "request processing", which the legislative history makes clear includes disclosures to "computer services" and others "for marketing to [the video tape service provider's] customers." S. Rep. at 14. Here, the *only* disclosures alleged in the Complaint are *admitted* to be in connection with "marketing" or "customer engagement" and the third parties to which information was allegedly disclosed are described as "third parties" engaged "to assist with Defendant's marketing . . . efforts", including to conduct "real-time targeted marketing

campaigns . . . ."  Compl. ¶¶ 22, 26-30, 32-34 (alleging ways Braze and DoubleClick are used to market to App users).  As a result, the VPPA's "ordinary course of business" exception applies on the face of the Complaint and provides an independent basis for dismissal.  *See, e.g.*, *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (dismissal based on affirmative defense proper where "facts establishing the defense are clear from the face of the complaint as supplemented by 'matters fairly incorporated within it and matters susceptible to judicial notice.'"); *Tassinari v. Salvation Army Nat'l Corp.*, 610 F. Supp. 3d 343, 360 (D. Mass. 2022) (dismissing claim based on statutory exemption applicable on face of complaint).

## II.    Plaintiffs' Reading of the VPPA Would Be Barred by the First Amendment.

As discussed above, the VPPA is narrowly tailored to protect a very specific privacy interest and Plaintiffs have failed to allege any violation.  There is thus no need to consider the constitutional implications of Plaintiffs' claims.  However, if Plaintiffs' overbroad reading of the VPPA were credited, it would not only do violence to the statute, it would run headlong into the First Amendment and could not survive constitutional scrutiny as applied.

### A.    The VPPA Is a Content-Based and Speaker-Based Restriction on Speech.

Hearst's challenged communication of data is fully protected by the First Amendment. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 558-60 (2011); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 965 (9th Cir. 2012) (compilations of information are non-commercial speech "entitled to full First Amendment protection"); *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1230 (N.D. Cal. 2021) ("collection of . . . consumer information" is non-commercial speech).

The VPPA is a content-based restriction on speech.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."); *see also*

*Sorrell*, 564 U.S. at 558-60 (law governing commercial and other uses of "records containing prescriber-identifiable information" is content-based); *Stark v. Patreon, Inc*., No. 22-CV-03131, 2023 WL 2090979, at *9 (N.D. Cal. Feb. 17, 2023) (VPPA is a content- and speaker-based regulation of speech).  The VPPA restricts disclosure of specific information and applies only to certain speakers, both defined by statute.

As a content- and speaker-based regulation, the VPPA is subject to strict scrutiny.  *Reed*, 576 U.S. at 164; *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1472 (2022); *Project Veritas v. Schmidt*, No. 22-35271, --- F.4th ----, 2023 WL 4308952, at *8 (9th Cir. 2023).  "Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.  Any curtailment of speech must be "actually necessary" to the restriction imposed.  *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011).  "It is rare that a regulation restricting speech because of its content will ever be permissible."  *Id*. (citation omitted).  But even if intermediate scrutiny applied, the VPPA would not survive review if applied here.

### B.    The VPPA Would Not Satisfy Any Level of Scrutiny as Applied to Hearst's Alleged Speech.

Whatever the merit of Congress's stated interest in protecting privacy when enacting the VPPA (S. Rep. at 5-6), broadening the law's scope to reach HTV's communication of data to Doubleclick or Braze is about as far from "narrow[] tailor[ing]" to protect that interest as one can imagine.  Plaintiffs' overbroad reading would transform the VPPA's targeted aim into a blunderbuss attack on any communications by publishers to facilitate programmatic advertising. There is no compelling state interest in prohibiting such communications.  *Cf.*, *Stark*, 2023 WL 2090979, at *14.  Nor would suppressing the communication of data points that do not clearly identify any individual directly advance any privacy interest, much less to a material degree, and

in a narrowly tailored way. This is particularly true where, as here, the challenged disclosures are non-public, depersonalized data and numbers, and involve no human review or judgment. *See, e.g.*, *Bernardino*, 2017 WL 3727230, at *10 ("Given that no human being ever learned the name of the DVD Bernardino purchased through any disclosure made by Barnes & Noble and that Bernardino herself did not even know her . . . information was shared with Facebook until she was so advised by an expert, this Court agrees that this action concerns an effort to shape policy more than Bernardino's effort to remedy a breach of her privacy.").

Even if HTV's speech were deemed "commercial speech" and the Court chose to apply intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), the VPPA as applied here would not survive review. Plaintiffs' broad rendering of the VPPA is the antithesis of a statute "narrowly drawn" to advance in a "direct and material" way Congress's stated interest in protecting privacy. *United States v. Caronia*, 703 F.3d 149, 164 (2d Cir. 2012) (citing *Central Hudson*, 447 U.S. at 566); *Edenfield v. Fane*, 507 U.S. 761, 767 (1993); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (more than "mere speculation or conjecture" is required) (quoting *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999)); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486-87 (1995) (same); *Ibanez v. Fla. Dep't of Bus. & Prof'l Regul.*, 512 U.S. 136, 143-44 (1994) (same); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416-18 (1993) (same); *accord Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1312 (11th Cir. 2017). This is underscored by the VPPA's exceptions, which permit disclosure of the very same information for some purposes (such as marketing directly to individuals) but not others. *See, e.g.*, 18 U.S.C. § 2710(b)(2); *Reed*, 576 U.S. at 160 (laws that treat some speech "less favorably" than others cannot withstand First Amendment scrutiny); *Sorrell*, 564 U.S. at 572-73 (prohibiting use of

-29-

identifying information for marketing while allowing others to use same information undercut state's professed privacy aim). The VPPA is not "narrowly tailored" to any substantial governmental interest to the extent it can be read to sweep up Hearst's communications unrelated to Congress's aim in enacting the VPPA. *Reed*, 576 U.S. at 163.

Because the VPPA cannot be applied as Plaintiffs urge without violating the First Amendment, the Court should decline Plaintiffs' invitation to give the VPPA an overbroad reading and preserve its proper scope. Otherwise it must decline to apply the statute at all.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: July 19, 2023                           Respectfully submitted,

                                               By:  /s/ Matthew Greenfield
                                               Matthew Greenfield (Mass. BBO No. 684596)
                                               Jonathan R. Donnellan*
                                               Andrea R. Butler*
                                               Kristen Hauser*
                                               *The Hearst Corporation*
                                               Office of General Counsel
                                               300 West 57th Street, 40th Floor
                                               New York, NY 10019
                                               Tel: (212) 649-2484
                                               Fax: (212) 554-7000
                                               matthew.greenfield@hearst.com
                                               jdonnellan@hearst.com
                                               abutler@hearst.com
                                               khauser@hearst.com

                                               *Admitted Pro Hac Vice*

                                               *Attorneys for Defendant Hearst Television Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 19, 2023.

/s/ Matthew Greenfield