IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELE SAUNDERS and RICHARD HAYDEN, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>HEARST TELEVISION, INC.,<br><br>*Defendant.* | No. 1:23-cv-10998-RWZ |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO <u>DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Television Inc.*

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1
ARGUMENT ............................................................................................................. 2
I. Defendant Hearst Television Is Not a Video Tape Service Provider. ............................... 2
II. Plaintiffs Are Not "Consumers" Within the Meaning of the VPPA. ................................ 4
III. The Information Allegedly Shared with Braze and DoubleClick Is Not "Personally Identifiable Information" Within the Meaning of the VPPA. ........................................... 5
IV. Plaintiffs Have Not Alleged Knowing Transmission or Actual Damages. ..................... 11
V. The Alleged Disclosures Fall Within the "Ordinary Course of Business" Exception. ... 12
VI. Plaintiffs' Reading of the VPPA Would Be Barred by the First Amendment. ............... 13
CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. Boston Globe Media Partners LLC*,
No. CV 21-10810, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ....................3

*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022) ....................2, 3

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ....................14

*Buechler v. Gannett Co.*,
No. CV 22-1464, 2023 WL 6389447 (D. Del. Oct. 2, 2023) ....................3

*Cain v. Redbox Automated Retail, LLC*,
981 F. Supp. 2d 674 (E.D. Mich. 2013) ....................13

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980) ....................14

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ....................14

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ....................6, 7

*Daniel v. Cantrell*,
375 F.3d 377 (6th Cir. 2004) ....................13

*Director, Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*,
514 U.S. 122 (1995) ....................12

*Doe v. Chao*,
540 U.S. 614 (2004) ....................12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................9

*Exeltis USA Inc. v. First Databank, Inc.*,
520 F. Supp. 3d 1225 (N.D. Cal. 2021) ....................14

*Ghanaat v. Numerade Labs, Inc.*,
No. 23-CV-00833, --- F. Supp. 3d ----, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ....................3, 4

*In re Hulu Priv. Litig.*,
No. C 11-03764, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ............ 12

*Lamb v. Forbes Media LLC*,
No. 22-CV-06319, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ............ 4, 5

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ............ 3

*Louth v. NFL Enters. LLC*,
No. 21-CV-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ............ 8, 9, 13

*Melvin v. NextEra Energy Seabrook, LLC*,
No. CIV.09-CV-249, 2010 WL 520889 (D.N.H. Feb. 10, 2010) ............ 10

*Robainas v. Metrpolitan Life Insurance Co.*,
No. 14-CV-9926, 2015 WL 5918200, (S.D.N.Y. Oct. 9, 2015), ............ 12

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ............ 9

*Salazar v. Paramount Glob.*,
No. 22-CV-00756, 2023 WL 4611819 (M.D. Tenn. July 18, 2023) ............ 3

*Sellers v. Bleacher Report, Inc.*,
No. 23-CV-00368, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ............ 3, 4, 11

*Soto-Torres v. Fraticelli*,
654 F.3d 153 (1st Cir. 2011) ............ 9

*Stark v. Patreon, Inc.*,
No. 22-CV-03131, --- F. Supp. 3d ---, 2023 WL 2090979 (N.D. Cal. Feb. 17, 2023) ............ 14, 15

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) ............ 6

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) ............ 10

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ............ *passim*

**Statutes**

18 U.S.C. § 2710 ............ 3, 8

## INTRODUCTION

Plaintiffs' opposition to defendant Hearst Television Inc.'s motion to dismiss only underscores why their Amended Complaint ("AC") fails to state a claim under the Video Privacy Protection Act ("VPPA") for the purported disclosure by HTV of various forms of strings of numbers and letters (in the form of device IDs, "geolocation" hashes, or email addresses) not alleged to be connected to any individual's name. While the Amended Complaint is replete with conclusory allegations, hypotheticals, and characterizations, it fails to allege any actual facts plausibly stating the basic elements of a VPPA claim.

- Plaintiffs do not allege that HTV is engaged in the type of business or has the type of *quid pro quo* relationship with Plaintiffs to make HTV a Video Tape Service Provider ("VTSP") or Plaintiffs "consumers" under the VPPA.
- Plaintiffs do not allege that either Plaintiff (or anyone else) would be "easily" identified from the information shared. Plaintiffs' allegations demonstrate that none of email, geolocation, or other alphanumeric "identifiers" would do so in this case.
- Plaintiffs confuse the injury required for alleging standing with the allegations of actual damages necessary to sustain a claim, and admit that neither suffered any actual damages—a defect independently fatal to their claim.
- Plaintiffs affirmatively allege facts showing that the VPPA's "ordinary course of business" exception—which was not addressed in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016)—applies, making this a compelling case for dismissal on the basis of that exception alone.

Plaintiffs' only hope of wedging their claims into existing case law is to ask this Court to ignore the substantial differences between the factual allegations here and those before the First Circuit in *Yershov*, and to ask this Court to read *Yershov* as broadly as possible to account for those differences. *Yershov* itself cautions against doing either. Regardless of whether the Court would reach the same conclusions today (Mem. of Law in Supp. of Mot. to Dismiss the Am. Compl., ECF No. 26 ("Br.") 19-21), this Court should decline to expand that decision beyond the specific facts relied upon by the First Circuit, particularly since those facts were later proven inaccurate or otherwise disclaimed. Br. 15-18, 20. In any event, Plaintiffs' description of the

factual allegations of their Amended Complaint as "identical" to those in *Yershov* ignores at least three significant differences between the *Yershov* allegations and those at issue here:

- First, the *Yershov* court relied on allegations that sharing of email, device ID, and geolocation information was *required* to view videos on the app in finding that plaintiff had met his burden of alleging that he was a "subscriber" under the VPPA. 820 F.3d at 485 (plaintiff was unable to prevent disclosure of his GPS location), 489. There is no such allegation here. Plaintiffs affirmatively allege the opposite: that they used the Apps prior to enabling geolocation services or providing an email. AC ¶¶ 106, 112, 128-30.
- Second, the *Yershov* court relied on allegations that the recipient of the information at issue—Adobe—had in its possession preexisting personalized information (including names) that Adobe could use *at the time of receipt* to identify a named individual. 820 F.3d at 484-85. There is no such factual allegation here. Instead, Plaintiffs speculate as to what Braze and DoubleClick might be able to do in some circumstances, but do not allege, *e.g.*, that either entity actually has *names* that they *will* be able to use to identify Plaintiffs. Plaintiffs' conclusory allegations to the contrary are insufficient to withstand dismissal.
- Third, the *Yershov* court relied on (incorrect) allegations that an Android ID identified a specific individual, not a device, and the ID would vary depending on the device's user. 820 F.3d at 484 n.1; Br. 18. There is no non-conclusory allegation here that the Braze or AAIDs identified a specific *individual*, or that such IDs will vary depending on who is actually using a device.

For all these reasons, the Amended Complaint should be dismissed.

## ARGUMENT

### I. Defendant Hearst Television Is Not a Video Tape Service Provider.

Contrary to Plaintiffs' suggestion (Pls.' Opp. to Def.'s Mot. to Dismiss ("Opp.") 3) in *Yershov*, the court was not presented with and did not address whether the defendant was a Video Tape Service Provider ("VTSP") under the VPPA; for purposes of the motion before it, it assumed it to be the case since it was not challenged.[1] *Yershov*, 820 F.3d at 485 n.2; *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314 (D. Mass. 2022) (First Circuit did not analyze whether

[1] Given the pleading deficiencies in the Amended Complaint, this Court need not decide whether or not *Yershov* should be treated as binding (Opp. 2-3). Regardless of how the First Circuit might treat *Yershov* if similar issues are before it again, that the *Yershov* plaintiff disclaimed the same facts relied upon by the First Circuit in ruling on the motion to dismiss before it is a reason to, at a minimum, apply the decision cautiously on the very different facts alleged here. *See* Br. 15-18, 20.

Gannett was a VTSP "because Gannett did not challenge that element of the claim"). As a result, nothing in *Yershov* speaks to what, if anything, makes a local news broadcaster a VTSP under the statute. The text of the VPPA should be the starting point, and it requires that to be a "video tape service provider", a person must be "***engaged in the business***" of "rental, sale, or delivery" of "prerecorded video cassette tapes or similar audio visual ***materials*** . . . ." 18 U.S.C. § 2710(a)(4) (emphases added). Plaintiffs do not argue that HTV sells or rents prerecorded video content (let alone that covered by the VPPA). They argue only that HTV's delivery of the news via online video, some of which is prerecorded, makes it a VTSP. Opp. 3-5.

None of the cases Plaintiffs cite involve the delivery of only local news and weather reports, or otherwise provide guidance for the distinct facts of this case. In *Buechler*, for example, in finding that Gannett was a VTSP, the court relied on the fact that, in addition to providing video content on its website, Gannett did so *via a paid subscription service*. *Buechler v. Gannett Co.*, No. CV 22-1464, 2023 WL 6389447, at *2 (D. Del. Oct. 2, 2023); the same is true of *Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, --- F. Supp. 3d ----, 2023 WL 5738391, at *1 (N.D. Cal. Aug. 28, 2023). There are no such allegations here. In *Ambrose*, the Court, without any analysis, found only that allegations that the Boston Globe distributed "various types of video content"—not limited to local news and weather reports—*pursuant to a paid subscription* sufficed at the pleading stage. *Ambrose v. Boston Globe Media Partners LLC*, No. CV 21-10810, 2022 WL 4329373, at *1-2 (D. Mass. Sept. 19, 2022); the same was true in *Belozerov* and *Ghanaat*.[2] These decisions, which are not binding on this Court and are based on

---

[2] In *Belozerov*, the Court treated the issue of Gannett's status as a VTSP predetermined without analyzing the issue. 646 F. Supp. 3d at 314. Similarly, whether defendant was a VTSP was not presented in *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022). *See also Salazar v. Paramount Glob.*, No. 22-CV-00756, 2023 WL 4611819, at *12 (M.D. Tenn. July 18, 2023), *appeal docketed*, No. 23-5748 (6th Cir. Aug. 21, 2023) (finding *WebMD* "unpersuasive" because "the court . . . did not engage in any meaningful statutory interpretation of the VPPA"). In *Sellers v. Bleacher Report, Inc.* (Opp. 4), the court noted that precisely of what constituted a VTSP in

different allegations, shed no light on the proper outcome here, where the type of video content is limited and there are no allegations of paid (or even registered) access of any kind.

## II. Plaintiffs Are Not "Consumers" Within the Meaning of the VPPA.

In attempting to wedge their allegations into *Yershov* and away from the bulk of cases rejecting claims that plaintiffs are "subscribers" under similar facts, Plaintiffs misrepresent the facts and holding of *Yershov* and their own allegations. Contrary to Plaintiffs' suggestion that *Yershov* held that merely "downloading an app" makes someone a "subscriber" within the meaning of the VPPA (Opp. 5), the *Yershov* court found (based on allegations that were subsequently disavowed), that the plaintiff in that case had alleged that "[t]o use the App, [Plaintiff] did indeed ***have to provide*** Gannett with personal information, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections." *Yershov*, 820 F.3d at 489 (emphasis added).[3] There are no such allegations here. The *Yershov* court further analogized the allegations before it as equivalent to allowing plaintiff to "receive instant delivery of videos *in exchange for* his name and address . . . ." *Id*. (emphasis added). Again, there are no allegations that Plaintiffs were required to provide any information to either download the app or view prerecorded video content on the app. Plaintiffs allege only that *at some point after downloading the app*, one of them provided an email for other purposes, and each enabled geolocation. AC ¶¶ 106, 112. There is no allegation that providing such

---

the context of providing news content had not been decided by the Ninth Circuit, but "the federal government has argued that it does not apply to 'news organizations, advocacy groups, or other entities whose mission is to publicize information of public import.'" No. 23-CV-00368, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (citation omitted). The *Sellers* court decided that on the allegations before it with respect to a *sports* website, whether the defendant was a VTSP was a factual issue. Finally, in *Ghanaat* and *Lamb* (as in many of the cases upon which Plaintiffs rely), the court ultimately dismissed the case for failure to adequately allege that plaintiffs were "subscribers" under the VPPA. *Lamb v. Forbes Media LLC*, No. 22-CV-06319, 2023 WL 6318033, at *14 (S.D.N.Y. Sept. 28, 2023); *see also* Part II.

[3] This is how every other case—including those relied upon by Plaintiffs—has read *Yershov*. *See, e.g.*, *Lamb*, 2023 WL 6318033, at *13 (dismissing complaint for failure to allege "subscriber") (citations omitted); Br. 9-11.

information was required to download the app or to view any content (let alone prerecorded video content) on the app. This is not sufficient under *Yershov* or any other case, even under the most lenient pleading standard, to adequately allege that Plaintiffs are "subscribers" within the meaning of the VPPA. As the *Lamb* court held, to "qualify as a subscriber under the VPPA, a plaintiff must allege more than either having (1) merely downloaded a free mobile app, or (2) merely signed up for a free email newsletter unrelated to her video viewing." 2023 WL 6318033, at *12 (citation omitted). The *Yershov* court emphasized that its holding should not be read overly broadly and was tied to the very specific allegations in that case. That decision should not be extended to this case, in which there is no allegation that any exchange of any information ***was necessary*** to view video content, or even to use the HTV Apps at all.

### III. The Information Allegedly Shared with Braze and DoubleClick Is Not "Personally Identifiable Information" Within the Meaning of the VPPA.

Plaintiffs claim that HTV has asked this Court to apply an "incorrect legal standard" to determine whether the information allegedly disclosed is "personally identifiable information." Opp. 6-7. In doing so, they not only ask this Court to ignore the need for the information to identify a specific "customer" (and not just a device) and the First Circuit's explicit directive that the information must do so "easily" (820 F.3d at 486), they elide the very real differences between their own allegations and those at issue in *Yershov*. They also concede that the information they allege HTV disclosed would *not* easily identify either Plaintiff.

That the *Yershov* court required the information disclosed to "easily" identify the actual person who requested the video content is not a stretch: that is exactly what the court said and what it means to be "reasonably and foreseeably likely" to disclose the identity of a person. *Yershov*, 820 F.3d at 486. As *Yershov* and many other courts have recognized, if too many steps are required to tie an actual person to the request for video content, the statute does not apply.

Br. 22. *Yershov* helpfully provided examples of what would meet its standard (whether dubbed "easily" or "reasonably and foreseeably") short of an actual identifying name, including a social security number if provided to the government. *Id.*; Br. 12. Plaintiffs' suggestion that simply identifying a "specific video" that *someone* watched would suffice (Opp. 7-14), does not meet the standard in the First Circuit or anywhere else. None of the purported "identifiers" relied upon by Plaintiffs are even alleged to *actually identify* a Plaintiff or anyone else.

***Email***

Plaintiffs argue that an email address alone is "reasonably and foreseeably likely to identify an individual." Opp. 7, citing AC ¶ 35. But there is nothing in the Amended Complaint to suggest that any emails provided to HTV would identify any individual. There is not even a factual allegation that the email purportedly provided by Saunders to HTV would easily identify *her*, or that the email addresses that are alleged to have been transmitted to Braze (*see* AC ¶ 24) identify any specific person, whether on their own or combined with other information allegedly disclosed.[4] To the contrary, Plaintiffs instead allege that an email address "designate[s] an electronic mailbox" (*id.* ¶ 35), *not* a specific individual. These pleadings doom Plaintiffs' claim.

As a matter of law and as AC ¶ 24 (the only "content" of an email address alleged) illustrates, an email address is not in itself necessarily sufficient to identify a specific person within the meaning of the VPPA. The Eleventh Circuit in *United States v. Hastie*, 854 F.3d 1298 (11th Cir. 2017) (Opp. 7-8), did not hold as much. *See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019) (distinguishing *Hastie* and noting that "the court did not hold that email

[4] Saunders filed this action using her real name, and if her email truly is claimed to identify her, including so much of that email as would demonstrate that would hardly have been a further intrusion into her privacy. Opp. 8. Of course, Plaintiffs do not allege (or argue) that the email addresses they *do* include (AC ¶ 24) identify any real person—presumably because they used email addresses *that would not do so*, thus illustrating that an email address is not inherently identifying of a specific person.

addresses categorically identify an individual, only that they *often* did, and they often did so only because of their content, not their inherent nature as email addresses" (emphasis omitted)). An email address is not inherently identifying of a specific person, let alone one who requested a specific video. Thus, in *Dancel*, the Seventh Circuit held that a username was not sufficient to identify a specific individual for purposes of a right of publicity statute. "The [statute] . . . requires more . . . . It demands that an attribute, even a name, serve to identify an individual. And not just *an* individual but '*that* individual,' the one whose identity is being appropriated." *Id*. at 1009 (the fact that usernames are unique "does nothing to answer the question whether any given username identifies that specific individual who is behind that username and its associated account"). Although some privacy laws may explicitly define personal information to include email, the VPPA, like the right of publicity statutes at issue in *Dancel* (and as *Yershov* ruled), demands more: to be actionable under the VPPA, the information disclosed must identify the specific individual requesting video content to the receiving party with as much specificity and certainty as a social security number would identify someone to the government. There is no allegation that Plaintiff Saunders's emails (or those included in AC ¶ 24) do so.

***Geolocation***

Plaintiffs take issue with HTV relying on Plaintiffs' own allegations to demonstrate that geolocation does not identify any individual in this case. Opp. 9. It is Plaintiffs who alleged the geolocations purportedly shared and how to determine the associated location. *E.g.*, AC ¶ 39. *Yershov's* reliance on different, less specific geolocation allegations notwithstanding, Plaintiffs cannot now complain when it is pointed out that their own allegations of geolocation contradict their conclusory statements (and those of the *Yershov* court) about geolocation's ability to "reasonably and foreseeably" identify a specific individual who obtained specific video content.

Plaintiffs' argument also makes plain that it is not possible for geolocation to do so here, because Plaintiffs *admit* that it would take a "multitude of coordinates", potentially over years, to be able to even begin to have a chance of identifying an individual (Opp. 10).[5] As Plaintiffs also acknowledge, the VPPA is concerned with tying *particular* requests for *particular* prerecorded video to *particular* people. 18 U.S.C. § 2710(a)(3). Here, the only specific factual allegation about geolocation disclosed in connection with any specific video content is a single point—not hundreds. Despite Plaintiffs' attempt (without any supporting factual allegations) to suggest it identifies a specific person in a single room (Opp. 10), using the very tools they *do* allege demonstrates that is simply not true. Br. 16-17. The *Yershov* court assumed and its decision demands that if geolocation is to be relied on as PII under the VPPA, it must be reasonably and foreseeably likely (that is, "easily") to identify the person who requested a specific video. That is not the case on the facts specifically alleged here. Br. 15-18.

***Device IDs***

The other information allegedly disclosed here also does not mirror that in *Yershov*. Opp. 7, 11-12. In *Yershov*, the court relied on the fact that the plaintiff there alleged that the Android ID identified not a device, but a specific individual, and would vary if different individuals used the same device. 820 F.3d at 484 n.1; Br. 18. The Amended Complaint explicitly alleges that the Android ID is resettable, and *Louth* notwithstanding, Plaintiffs provide no basis for this Court to infer that even if it was not, either DoubleClick or Braze could identify these Plaintiffs (and

[5] Plaintiffs do not specify how many videos they watched while geolocation was allegedly enabled. Of course, were Plaintiffs' theory to be credited, it would not be until months had passed and multiple videos watched at multiple locations, that there would be any potential violation of the VPPA at all. This only underscores the weakness of Plaintiffs' theory (and that of the *Yershov* court were Plaintiffs correct about the breadth of that ruling).

not just a device), using only a string of numbers.[6] Opp. 12. This is far from a "distinction without a difference", and Plaintiffs' allegations here are far from "identical." Opp. 12.

Nor do Plaintiffs provide any legal support for their contention that they need only allege what Braze and DoubleClick might be *capable* of doing with the information disclosed. Opp. 13. *Yershov* explicitly rejected such an approach. 820 F.3d at 486; *see also Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181 (S.D.N.Y. 2015). Plaintiffs needed to provide factual, non-conclusory, allegations not only that Braze and DoubleClick had the technical *ability* to identify Plaintiffs as having requested or obtained specific videos, but sufficient information as well.[7] *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017). In *Yershov*, the allegations were more than hypothetical: the plaintiff alleged that "Adobe *was* able to identify *Yershov* and link the videos he had viewed to his individualized profile maintained *by Adobe*," including "*name*, address, [and] phone number . . . ." 820 F.3d at 484-86 (emphases added). There are no such allegations here. While Plaintiffs argue that they have alleged that the Braze ID "***is*** linked to '***names*** and email addresses' and ***is*** associated with the user profiles of the consumers whose information Braze collects" (Opp. 12 (emphases added)), the cited paragraphs do *not* address Braze at all and do not allege that Braze (or anyone else) actually has the *names* of Plaintiffs or any other users or any other independently identifying information that would permit them to identify either Plaintiff using only an Android or Braze ID *at the time of receiving*

[6] *Louth* of course is not binding on this Court, and did not address disclosures made Braze or DoubleClick. Plaintiffs do not allege that either had sufficient information about Plaintiffs (or any other user) to identify the user without the need for extra steps.

[7] The conclusory allegations masquerading as "facts" in ¶¶ 110-111, and 116-117 (Opp. 13) do not meet Plaintiffs' burden under Rule 12(b)(6) of alleging facts supporting a plausible inference that the disclosures here would be reasonably and foreseeably likely to identify a Plaintiff. *See, e.g.*, *Soto-Torres v. Fraticelli*, 654 F.3d 153, 160 (1st Cir. 2011) (certain allegations are "too conclusory to be 'entitled to the assumption of truth.'") (citation omitted).

*the information*.[8] *See* AC ¶¶ 81-82; Br. 18-19. That is the connection and the disclosure required by the VPPA—not that over a period of months, with sufficient data, someone *might* be able to identify an individual, and then connect them back to specific content they may have requested months before. Rule 12(b)(6) does not permit Plaintiffs to re-write their own allegations or to import facts they have not alleged. *See, e.g.*, *Melvin v. NextEra Energy Seabrook, LLC*, No. CIV.09-CV-249, 2010 WL 520889, at *1 (D.N.H. Feb. 10, 2010). Plaintiffs are playing a shell game to distract from the absence of factual allegations supporting a claim.

**"Specific video materials requested or obtained."**

In arguing that their allegations suffice to demonstrate that the information purportedly disclosed identified the specific videos "requested or obtained" (Opp. 15-17), Plaintiffs ignore HTVs actual arguments and whistle past their own allegations that now do not suit them (including the actual "article IDs" they claim were shared). But Plaintiffs cannot escape their factual allegations by pointing to other, self-serving conclusory allegations characterizing those disclosures. Opp. 16 (relying on the conclusory allegations in AC ¶¶ 16, 55, 57 as to what is disclosed, rather than the facts shown in ¶¶ 24-25, 58). The factual allegations demonstrate that despite characterizing the URLs as disclosing "video" content, as demonstrated in AC ¶ 58, just the opposite is true: the content associated with the "article ID" or "videoID" (as Plaintiffs deem it) is not, in fact, merely video, but a news article. Br. 23-24. Nor do Plaintiffs allege that they specifically *requested or obtained* prerecorded video content, and not just weather reports that included video content that they watched, or live weather reports that would not be covered by the VPPA. *See also* AC ¶ 14. This information is presumably entirely within Plaintiffs' control.

[8] Plaintiffs admit as much when they state that "Braze and DoubleClick did not need any additional information to identify Plaintiffs" (Opp. 13; *see also id.* at 14 (attempting to distinguish *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82 (S.D.N.Y. 2022), by arguing that email, geolocation, and device ID alone could identify Plaintiffs)). But Plaintiffs also do not suggest that a device ID or Braze ID would *itself* be sufficient to identify either Plaintiff.

As *Sellers* (relied upon by Plaintiffs) indicates, "[t]o 'request' something is to actively seek it out." 2023 WL 4850180, at *4. Unlike in *Sellers,* here there is no allegation that either Plaintiff actively sought to view prerecorded video content specifically (as opposed to live weather reports), or that that is what they obtained. Alleging that they *watched* "videos concerning local weather updates" (AC ¶¶ 107, 113) is not sufficient.[9] The Amended Complaint should be dismissed on this basis as well.

## IV. Plaintiffs Have Not Alleged Knowing Transmission or Actual Damages.

In each of the cases relied upon by Plaintiffs in opposition to HTV's motion, the plaintiff alleged that the defendant *knew* that the recipient of video-related information had separate information in its possession that permitted the third party to identify a particular person and that they had actually requested or obtained a particular video. Br. 24-25. As set forth in HTV's opening brief at 11-23 and *supra*, there are no such allegations here. In response, Plaintiffs simply gesture at "the 147 paragraphs" in their Amended Complaint and suggest that they should get discovery. Opp. 17, 19. But the Amended Complaint only *concludes* that "it is abundantly clear that [HTV] intentionally and knowingly discloses to Braze and Google, . . . its users' personally identifiable information." AC ¶ 96 (emphasis omitted). Plaintiffs plead no facts to support that bare conclusion, let alone that HTV thought it was conveying information that either entity would use to identify specific "customers". This is not sufficient.

Finally, in arguing that they need not allege actual damages to survive a motion to dismiss, Plaintiffs confuse the threshold for pleading Article III standing with properly alleging an actionable claim. The Supreme Court has repeatedly recognized that statutory language

[9] Plaintiffs inexplicitly rely on portions of the VPPA Senate Report addressing the "ordinary course of business" exemption to bolster their argument. Opp. 19. To the extent that Plaintiffs are suggesting that a golf shop could be liable under the VPPA for disclosing its customer list if that golf shop sells any golf-related video, that has no support in the case law and Plaintiffs cite none.

giving a claim to someone "aggrieved" by a certain action merely identified "a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (citing *Director, Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126, (1995)). As the *Chao* Court noted, this means that "an individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act." *Id.* As set forth in HTV's moving brief, the same is true under the VPPA, which is modeled after the Privacy Act. Br. 25-26 & n.19. In response, Plaintiffs rely heavily on *In re Hulu*, a case in which the defendant did not even argue that actual *damages* needed to be alleged, only "actual injury." *In re Hulu Priv. Litig.*, No. C 11-03764, 2013 WL 6773794, at *10 (N.D. Cal. Dec. 20, 2013).[10] Plaintiffs now admit the fatal fact that they have not alleged (and do not have) any actual damages; the Amended Complaint should be dismissed.

## V. The Alleged Disclosures Fall Within the "Ordinary Course of Business" Exception.

Regardless of whether Plaintiffs otherwise have stated any claim based on the required elements above, Plaintiffs' own allegations and statements in their Opposition are sufficient to find the VPPA's "ordinary course of business" exception applies and is dispositive here. Plaintiffs acknowledge that the exception covers a broad range of marketing-relating services. Opp. 19. And Plaintiffs affirmatively embrace their allegations that the disclosures here were, as

[10] To the extent the magistrate judge in *In re Hulu* came to or suggested a different conclusion in *dicta*, that decision is not binding on this Court and out of step with Supreme Court guidance. In *Robainas v. Metropolitan Life Insurance Co.*, (Opp. 21), the court not only recognized that "aggrieved" may have different meanings in the context of different statutes, but was addressing basic statutory standing requirements under an insurance statute. No. 14-CV-9926, 2015 WL 5918200, at *7 (S.D.N.Y. Oct. 9, 2015), *aff'd sub nom. Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41 (2d Cir. 2017) (unpublished). And there, plaintiffs alleged that they paid policy premiums that they would not have otherwise paid. In short, *Robainas* provides no insight into pleading requirements under the VPPA.

they describe them, "to assist with Defendant's marketing . . . ." *Id*. (citing AC ¶ 34). But they still maintain, without convincing explanation or support, that their allegations do not fall within the exception for disclosures they themselves describes as relating to "computer services, and similar companies for marketing to their customers" (including services that "would not naturally fit" within what they admit is covered by the exception). *See Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) (exception did not apply to disclosures in a criminal investigation, which "would not naturally fit into this list") (cited at Opp. 19). Neither Plaintiffs nor the cases they cite offer any explanation as to why activities described by Plaintiffs themselves as "marketing" activities should not fall within the very language Plaintiffs embrace. Neither *Louth* nor *Redbox* addressed allegations that the disclosures were used for "marketing", and it appears there were no such allegations in those cases.[11] *See Louth v. NFL Enters. LLC*, No. 21-CV-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022), and *id.*, ECF No. 14 (Am. Compl. dated January 3, 2022); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 688 (E.D. Mich. 2013), and *id.*, ECF No. 1. Once again, Plaintiffs seek to avoid their affirmative factual allegations—and the clear text of the VPPA—in an attempt to wedge themselves into decisions based on very different facts to get to "discovery" without providing the factual support to do so. Opp. 20. The Amended Complaint should be dismissed on the basis of Plaintiffs' own allegations demonstrating application of a clear statutory exception.

## VI. Plaintiffs' Reading of the VPPA Would Be Barred by the First Amendment.

As set forth above, Plaintiffs' opposition only underscores the deficiencies in their pleading; there is therefore no need to consider the constitutional implications of their claims.

[11] HTV has not "conceded" (Opp. 20) anything with respect to the scope of the VPPA, only that the Amended Complaint makes plain that any alleged disclosures—whether relating to analytics or anything else—were in connection with marketing activities. *See also, e.g.*, AC ¶¶ 28, 76 (describing analytical uses solely for marketing).

*See Stark v. Patreon, Inc.*, No. 22-CV-03131, --- F. Supp. 3d ---, 2023 WL 2090979, at *13 (N.D. Cal. Feb. 17, 2023) (finding facial review of constitutionality of VPPA required). But Plaintiffs are wrong in their application of First Amendment law to this case.

Hearst's communication of data is non-commercial speech subject to strict scrutiny and fully protected by the First Amendment. Br. 28.[12] That is particularly true where, as here, the disclosures alleged relate to the provision of a public good—local weather reports. That ads may be included as part of that service does not transform it into commercial speech. *See, e.g.*, *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1232 (N.D. Cal. 2021). But even if intermediate scrutiny were applied as Plaintiffs urge, under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), the VPPA as applied here would not survive review. Br. 29-30.

In order to support a "substantial" government interest, there must be a "long (if heretofore unrecognized) tradition of proscription . . . ." *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 (2011). There is no such history here with respect to the disclosures at issue—viewing of local weather reports. Plaintiffs nonetheless attempt to justify the application of the VPPA under the cloak of protecting "personal privacy." They cite only to a case involving the privacy "of the home" (which nonetheless *struck down* an anti-picketing statute) and to a case (*Boelter*) that, however wrongly decided, involved disclosure of names and addresses, not device ids, geolocation, and other strings of letters and numbers that Plaintiffs admit are several (if not several hundred) steps removed from identifying any specific person. There is simply no evidence of any governmental interest in preventing such information from being shared.

[12] Plaintiffs rely on the "economic interest" test for determining whether speech is commercial speech; that test is one that the Supreme Court has "backed away from treating [ ] as an operative definition." *Stark*, 2023 WL 2090979, at *10 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993)).

Moreover, given its permissive disclosure of such information for marketing and other business purposes, the VPPA would not be narrowly tailored even if there were any state interest in preventing the type of disclosures related to local weather updates. Plaintiffs—again without logic or support—claim that the VPPA is "no more extensive than necessary", inexplicitly because the ordinary course of business exception is *narrow*. Opp. 24. But whether an exception is narrow or broad (and the ordinary course of business exception is far from narrow, *see supra*) is beside the point. The existence only serves to illustrate the lack of tailoring in the context of Plaintiffs' allegations, which venture far beyond Congress's concerns in enacting the VPPA. As the *Stark* court has recognized, the VPPA is not narrowly tailored (or particularly tailored at all) and sweeps up far more than the "private commercial interests" that Plaintiffs' claim Congress sought to protect. 2023 WL 2090979, at *13 (critiquing *Boelter* holding "that any comment that touches on a commercial transaction (like a video rental or purchase) is commercial speech subject to reduced constitutional protection"). Because the VPPA cannot be applied as Plaintiffs urge without violating the First Amendment, the Court should decline Plaintiffs' invitation to give the VPPA an overbroad reading and preserve its proper scope.

**CONCLUSION**

For the reasons set forth herein and in HTV's opening brief, and because Plaintiffs have already had a chance to amend their original complaint following filling of HTV's initial motion to dismiss, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated: October 26, 2023

Respectfully submitted,

By: /s/ Matthew Greenfield
Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Television Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 26, 2023.

/s/ Matthew Greenfield