**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MICHELE SAUNDERS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HEARST TELEVISION, INC.,

Defendant.

Case No. 1:23-cv-10998

Hon. Richard G. Stearns

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Dated: July 12, 2024

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice*)
Victoria X. Zhou (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........ 1

ARGUMENT ........ 5

I. No Dispute Exists Regarding Request For Production No. 20 ........ 5

II. There Is No Real Dispute As To Request For Production No. 25 ........ 8

III. Defendant's Motion Should Be Denied As To Request No. 24 Because Plaintiff Need Not Disclose The Identitites Of Or Non-Testifying Experts And The Request Seeks Privileged Communications ........ 11

IV. Defendant's Discovery Requests Are Not Relevant Or Proportional Because Defendant's Own Documents Bear Out The Accuracy Of The Dynamic Analysis ........ 17

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*,
622 F.2d 496 (10th Cir. 1980) ........ 12

*Beaton v. SpeedyPC Software*,
2017 WL 11625792 (N.D. Ill. June 20, 2017) ........ 15

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
314 F.R.D. 85 (S.D.N.Y. 2016) ........ 16

*Gonzalez v. RXO Last Mile, Inc.*,
2022 WL 22269209 (D. Mass. Dec. 12, 2022) ........ 16

*Hoffman v. Owens-Illinois Glass Co.*,
107 F.R.D. 793 (D. Mass. 1985) ........ 15

*In re PolyMedica Corp. Sec. Litig.*,
235 F.R.D. 28 (D. Mass. 2006) ........ 14

*In re Porsche Automobil Holding SE*,
985 F.3d 115 (1st Cir. 2021) ........ 16

*Lexington Luminance LLC v. Feit Elec. Co.*,
2020 WL 10052401 (C.D. Cal. June 12, 2020) ........ 16

*Maquet Cardiovascular LLC v. Abiomed, Inc.*,
627 F. Supp. 3d 54 (D. Mass. 2022) ........ 18

*Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
293 F.R.D. 244 (D. Mass. 2013) ........ 4, 14, 15

*OTR Transp., Inc. v. Data Interfuse, LLC*,
2022 WL 296056 (N.D. Ill. Feb. 1, 2022) ........ 16

*Plymovement Corp. v. Air Tech. Sols., Inc.*,
43 F.R.D. 139 (D.N.J. 2007) ........ 13

*Puerto Rican Am. Ins. Co. v. Burgos-Diaz*,
2010 WL 11565544 (D.P.R. Aug. 5, 2010) ........ 12

*Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*,
108 F.R.D. 304 (D.P.R. 1985) ........ 12, 14

*Rebarber-Ocasio v. Feliciano-Munoz*,
2022 WL 2004606 (D.P.R. June 6, 2022) ........................................................................ 12

*Santos v. Rando Mach. Corp.*,
151 F.R.D. 19 (D.R.I. 1993) ......................................................................................... 12

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024) ..................................................................... 1

*U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC*,
268 F.R.D. 614 (N.D. Cal. July 12, 2010) ....................................................................... 13

*United States v. Kovel*,
296 F.2d 918 (2d Cir. 1961) ......................................................................................... 14

*Whittingham v. Amherst Coll.*,
164 F.R.D. 124 (D. Mass. 1995) .................................................................................... 17

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........................................................................................... 1

*Zeiger v. WellPet LLC*,
2018 WL 3208160 (N.D. Cal. June 29, 2018) ................................................................ 15

**RULES**

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 18

Fed. R. Civ. P. 26(b)(3) ............................................................................................... 13

Fed. R. Civ. P. 26(b)(4)(C) ........................................................................................ 13, 4

Fed. R. Civ. P. 26(b)(4)(D) ....................................................................................... passim

**OTHER AUTHORITIES**

WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2032 (3d ed. 2024) .......................................... 13

Plaintiff Michele Saunders ("Plaintiff") respectfully submits this Opposition to Defendant Hearst Television, Inc.'s ("Defendant") Motion to Compel Discovery (ECF No. 47) (the "Motion" or "Mtn.").

**INTRODUCTION**

Plaintiff's response to Defendant's Motion can be summarized in a single sentence: what are we doing here?

Prior to filing this action, Plaintiff's counsel commissioned a "dynamic analysis," which tested "what information (if any) was disclosed when a user watches a video on one of" Defendant's mobile applications. First Amended Complaint ("FAC") ¶¶ 16, 18. As the Court is aware, the dynamic analysis found:

> Hearst discloses to Braze the user's email address and location at the time she watched the video, as well as a unique video ID associated with each video the user watched and data showing that the video was watched. Similarly, in addition to the user's AAID, Hearst discloses to Google a user's geolocation, the title and ID of each video she watched, and data showing that the video was watched.

*Saunders v. Hearst Television, Inc.*, --- F. Supp. 3d ---, 2024 WL 126186, at *2 (D. Mass. Jan. 11, 2024). To be clear, the dynamic analysis did not determine whether this information was "reasonably and foreseeably likely" to reveal which users were watching which specific videos. *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). It only demonstrated this information was being transmitted in the first place.

Of course, Plaintiff needed to conduct the dynamic analysis to learn what information was being transmitted because she does not have access to the inner workings of Defendant's business and mobile applications. The same cannot be said for Defendant. Defendant contracted for Google's and Braze's services, Defendant incorporated Google's and Braze's software into

its mobile applications, and Defendant configured which information it wanted to transmit to Google and Braze. Further, because Defendant built its mobile applications, it has access to the mobile applications' source code and is able to review what transmissions were occurring just by looking at the source code.

In other words, Defendant's own documents tell Defendant *everything* Plaintiff was able to learn from the dynamic analysis. For that reason, Defendant sending discovery requests related to the dynamic analysis—which, essentially, ask Plaintiff to tell Defendant what Defendant already knows the answer to—is a little silly.

Nonetheless, Plaintiff has produced copious documentation related to the dynamic analysis. This includes (i) the results of the dynamic analysis (*i.e.*, the recorded transmissions in their entirety), including the information transmitted to Google and Braze, (ii) the settings for the device[1] used in the dynamic analysis, (iii) other information related to the device used to conduct the analysis, (iv) the precise location and advertising ID of the device used to conduct the dynamic analysis (viewable in the produced transmission), (v) the videos watched on the WCVB and WMUR Apps for the dynamic analysis (viewable in the produced transmission), and (vi) the e-mail address disclosed during the dynamic analysis (viewable in the produced transmission). Defendant also knows the identity of Plaintiff's testifying expert because he examined Defendant's source code, and Defendant can look up details about him on publicly available websites. Further, the instructions for the dynamic analysis are set forth in the FAC. FAC ¶¶ 17-18 ("The private researchers analyzed two of the Apps, WCVB 5 and WMUR 9, finding

[1] Defendant contends Plaintiff only produced the settings for one of the devices used in the dynamic analysis. MTC at 6. As Plaintiff's counsel informed Defendant's counsel at Plaintiff's deposition, only one device was used to test both the WCVB and WMUR apps (albeit, two different e-mail addresses were imputed into the apps to further distinguish the results).

identical results. … The researchers tested what information (if any) was disclosed when a user watches a video on one of the Apps.”).

To say Plaintiff has complied with her discovery obligations—again, just to tell Defendant something *it already knows to be true*—is an understatement. And while Plaintiff will be producing an expert report in this litigation that might add additional color to the dynamic analysis, no report exists at this time.[2] Thus, to the extent Defendant wants additional information about the dynamic analysis itself, it is asking Plaintiff to create work product that does not currently exist.

With that background in mind, the Court should deny Defendant's Motion. *First*, Defendant asks the Court to compel Plaintiff to respond to Request for Production No. 20, which asks for documents corroborating various allegations in the FAC. But *Plaintiff has already agreed to respond to Request No. 20*. Butler Decl. Ex. B at 14. Specifically, Plaintiff has produced hundreds of pages of documents that are currently within her possession, custody, or control, and will produce further documentation if and when it comes into her possession. There is no actual dispute as to this Request.

*Second*, Defendant asks the Court to compel Plaintiff to respond to Request for Production No. 25, which asks for documents related to the dynamic analysis. But, given the extensive documentation related to the dynamic analysis that Plaintiff has already produced, it is unclear what documents Defendant believes Plaintiff is withholding that have not already been produced. So, again, what real dispute is Defendant asking the Court to litigate?

*Third*, Defendant asks the Court to compel Plaintiff to respond to Request for Production No. 24, which asks for documents related to the “private research company” that conducted the

[2] Plaintiff intends to file any expert reports simultaneously with her motion for class certification, which is due on September 6, 2024 (more than a month before the expert disclosure deadline).

dynamic analysis. This is the *only* real dispute at issue in the Motion and it should be resolved in Plaintiff's favor. Defendant knows the identity of Plaintiff's testifying expert and can look up information about him on publicly available websites. The identities of the non-testifying experts, however, are protected by Fed. R. Civ. P. 26(b)(4)(D), and the broadly worded Request sweeps in privileged communications with testifying and non-testifying experts alike. *See* Fed. R. Civ. P. 26(b)(4)(C); *Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 248 (D. Mass. 2013). Defendant has also not demonstrated "exceptional circumstances" or a "substantial need" for this information when it can get everything it needs from Plaintiff's testifying expert and *its own documents*.

*Finally*, even putting aside Plaintiff's other arguments, Defendant's discovery requests are not relevant or proportional to the case. Defendant cannot, in good faith, dispute that the transmissions recorded in the dynamic analysis (*i.e.*, that geolocation, e-mail addresses, and other identifiers were passed to Google and Braze) actually occurred; Defendant's own documents and source code bear that out.[3] Defendant is certainly free to argue these transmissions do not give rise to a VPPA claim, but the dynamic analysis only goes to whether the transmissions occurred at all. Thus, because the accuracy of the transmissions cannot reasonably be disputed, further discovery regarding the dynamic analysis will not shed light on any disputed issues in this case.

For the following reasons, Defendant's Motion should be denied in full.

---

[3] During meet and confer conversations, Plaintiff's counsel requested Defendant's counsel to confirm whether Defendant was still disputing that the transmission of these identifiers occurred. Defendant refused to say one way or the other, instead answering evasively that it was still disputing the "elements" of Plaintiff's claim.

## ARGUMENT

### I. NO DISPUTE EXISTS REGARDING REQUEST FOR PRODUCTION NO. 20

Defendant asks the Court to order Plaintiff to produce "[a]ll Documents concerning or providing substantiation for the allegations in the Amended Complaint, including, without limitation, Paragraphs 16, 18, 35, 38, 39, 50, 61, 63, 75-84, 85-95, 106, 110-11, 116-17." MTC at 4; *see also* Defendant's Request for Production No. 20. What Defendant glosses over is, in response to this Request, Plaintiff *agreed* to "produce responsive, non-privileged documents in her possession, custody, or control, if any." Butler Decl. Ex. B at 14. The only caveat to this response was that "Plaintiff reserves the right to supplement her response to this Request once further discovery has occurred." *Id.* Specifically:

| ALLEGATION(S) IN THE FAC | WHAT PLAINTIFF HAS PRODUCED |
|---|---|
| "In January 2023, Plaintiffs' counsel retained a private research company to review the Apps and conduct a dynamic analysis. A "dynamic analysis" records the transmissions that occur from a user's device." FAC ¶ 16 | Plaintiff has produced documents related to the dynamic analysis, as described in the Introduction, *supra*. |
| "The researchers tested what information (if any) was disclosed when a user watches a video on one of the Apps. The analysis revealed Defendant disclosed information to third parties sufficient to identify specific Class Members and the specific videos they watched." FAC ¶ 18. | Plaintiff has produced documents related to the dynamic analysis, as described in the Introduction, *supra*. Expert discovery—although nothing currently in Plaintiff's possession, custody, or control—will establish the information disclosed is sufficient to identify specific Class Members and the specific videos they watched and will be produced. |
| "An email address is a unique string of characters which designate an electronic mailbox. As industry leaders, trade groups, and courts agree, an ordinary person can use an email address to uniquely identify another individual. Indeed, there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address." FAC ¶ 35. | Plaintiff has produced the publicly available documents cited in the footnotes to the FAC. Expert discovery—although nothing currently in Plaintiff's possession, custody, or control—will shed further light on these facts and will be produced. |

| ALLEGATION(S) IN THE FAC | WHAT PLAINTIFF HAS PRODUCED |
|---|---|
| "Geolocation is considered precise when it provides street level accuracy. Defendant discloses such precise geolocation here. Specifically, Defendant discloses to Google via the DoubleClick API users' geolocation with more than three decimal places of accuracy, meaning Google could identify users within forty feet of their actual location. Defendant's disclosure of geolocation to Braze is even more precise: the geolocation disclosed by Defendant to Braze via the Braze API is sufficient to identify users within a 5×5-meter space. In either case, the level of precision constitutes precise geolocation." FAC ¶ 38. | Plaintiff has produced the publicly available documents cited in the footnotes to the FAC. Expert discovery—although nothing currently in Plaintiff's possession, custody, or control—will shed further light on these facts and will be produced. |
| "The precise geolocation data sent to Braze is sent both un-hashed (as latitude and longitude) and hashed (i.e., a "geohash"). However, the 'geohashing' is mere smoke and mirrors. Using publicly available websites, an ordinary person can turn geohashed data into a user's precise location. For instance, if an ordinary person enters the geohashed data from the above-pictured transmission to Braze—9q9p91tre—into a publicly available website, the user's precise location is displayed in latitude, longitude, and on Google Maps." FAC ¶ 39. | Plaintiff has produced the publicly available documents cited in the footnotes to the FAC. Defendant's Motion to Dismiss the FAC also identified the location of the tester. ECF No. 26 at 16. Expert discovery—although nothing currently in Plaintiff's possession, custody, or control—will shed further light on these facts and will be produced. |
| "Because an AAID creates a record of user activity, this data can create inferences about an individual, like a person's political or religious affiliations, sexuality, or general reading and viewing preferences. These inferences, combined with publicly available tools, make AAIDs an identifier that sufficiently permits an ordinary person to identify a specific individual." FAC ¶ 50. | Plaintiff has produced the publicly available documents cited in the footnotes to the FAC. Expert discovery—although nothing currently in Plaintiff's possession, custody, or control—will shed further light on these facts and will be produced. |

| ALLEGATION(S) IN THE FAC | WHAT PLAINTIFF HAS PRODUCED |
|---|---|
| "By disclosing the video ID, Defendant discloses information that would permit an ordinary person—let alone sophisticated marketing and analytics companies like Braze and Google—to identify the specific video that has been requested or obtained." FAC ¶ 61. | This is a legal argument. Plaintiff provided examples in the FAC—which Defendant is free to verify itself—of looking up the specific video watched by the user using the video ID or content ID. FAC ¶¶ 58-59. Documents concerning Braze and Google—which are in Defendant's or Braze and Google's possession, custody, or control—are likely to shed further light on this issue. Defendant's document production to date has been limited. |
| "By disclosing the video's subject matter, Defendant also discloses information that would permit an ordinary person to identify the video materials or services that a user has requested or obtained." FAC ¶ 63. | This is a legal argument so there are not documents regarding this allegation. |
| Various allegations concerning Braze. FAC ¶¶ 75-84. | Plaintiff has produced the publicly available documents cited in the footnotes to the FAC. Documents concerning Braze and Google—which are in Defendant's or Braze and Google's possession, custody, or control—are likely to shed further light on this issue. Defendant's document production to date has been limited. |
| Various allegations concerning Google and DoubleClick. FAC ¶¶ 85-95. | Plaintiff has produced the publicly available documents cited in the footnotes to the FAC. Documents concerning Braze and Google—which are in Defendant's or Braze and Google's possession, custody, or control—are likely to shed further light on this issue. Defendant's document production to date has been limited. |

| ALLEGATION(S) IN THE FAC | WHAT PLAINTIFF HAS PRODUCED |
|---|---|
| "In or about 2021, Plaintiff Saunders downloaded the WCVB 5 App on her Android phone. Plaintiff Saunders uninstalled in the WCVB 5 App in or about April 2022, and reinstalled the WCVB 5 App in or about January 2023. Between 2021 and April 2022, Plaintiff Saunders provided her e-mail to the WCVB 5 App, and also enabled geolocation and push notifications. When Plaintiff Saunders re-installed the WCVB 5 App on her Android phone in or about January 2023, she only enabled geolocation." FAC ¶ 106. | Plaintiff has produced information—agreed to by the Parties—from an image of her phone that goes to these allegations. Defendant also has its own records reflecting Plaintiff's use of the WCVB 5 App, which Defendant has produced to Plaintiff. |
| Allegations concerning Defendant's alleged disclosures to Braze and Google of Plaintiff's information, what information was disclosed, and whether Plaintiff Saunders could be identified. FAC ¶¶ 110-111. | Plaintiff has produced documents related to the dynamic analysis, as described in the Introduction, *supra*. Defendant also has its own records reflecting Plaintiff's use of the WCVB 5 App—including a user profile for Plaintiff with Braze—which Defendant has produced to Plaintiff. Expert discovery—although nothing currently in Plaintiff's possession, custody, or control—will establish the information disclosed is sufficient to identify Plaintiff and the specific videos she watched and will be produced. |
| Allegations concerning Defendant's alleged disclosures to Braze and Google of former Plaintiff Richard Hayden's information, what information was disclosed, and whether Plaintiff Hayden could be identified. FAC ¶¶ 116-117. | Plaintiff Hayden voluntarily dismissed his claims and is no longer proceeding with the action. Further, Plaintiff's counsel no longer represents Plaintiff Hayden. Nonetheless, the documents Plaintiff has or will produce are likely to go to these allegations as well. |

Thus, there is no dispute as to this request. Plaintiff has produced documents responsive to this Request, and will produce any other documents responsive to this Request when they come into her possession, custody, or control.

## II. THERE IS NO REAL DISPUTE AS TO REQUEST FOR PRODUCTION NO. 25

Defendant asks the Court to order Plaintiff to produce "[a]ll Documents relating to the analysis (whether "dynamic" or otherwise) of the WCVB and WMUR Apps, as described in the Amended Complaint." MTC at 4; *see also* Defendant's Request for Production No. 25. As

noted in the Introduction, *supra*, Plaintiff has already produced (i) the results of the dynamic analysis, including the information transmitted to Google and Braze, (ii) the settings for the device used in the dynamic analysis, (iii) other information related to the device used to conduct the analysis, (iv) the location and advertising ID of the device used to conduct the dynamic analysis, (v) the videos watched on the WMUR and WCVB Apps for the dynamic analysis, and (vi) the e-mail address disclosed during the dynamic analysis. Defendant also knows the identity of Plaintiff's testifying expert and can look up details about him on publicly available websites. Further, the instructions for the dynamic analysis are set forth in the FAC. FAC ¶¶ 17-18 ("The private researchers analyzed two of the Apps, WCVB 5 and WMUR 9, finding identical results. … The researchers tested what information (if any) was disclosed when a user watches a video on one of the Apps."). Finally, while Plaintiff will be producing an expert report in this litigation, no report exists at this time, so there is no report for Plaintiff to produce.

Thus, the question is, what exactly does Defendant believe Plaintiff is withholding that is responsive to this request? The answer is either "nothing" or clearly privileged information. *See* Argument § III, *infra*.

Defendant argues Plaintiff provided "no documents indicating the instructions provided to those conducting the analysis, the identity of the individuals who conducted the analysis, or documents showing any details about how the analysis was conducted, including where the researchers were, physically and geographically." MTC at 5. *First*, as to documents showing "where the researchers were, physically and geographically," the transmissions show exactly that because the researchers' precise geolocation was transmitted to Braze and Google. Indeed, plugging in the geohash from the transmission to Braze into a publicly available website pins the researchers to the exact room in a house (FAC ¶ 39), and Defendant looked up the address of this

location for its Motion to Dismiss briefing. ECF No. 26 at 16 ("The precise geolocation information provided … indicates the device(s) that sent GPS signals to Braze and/or DoubleClick may have been located in or around 1306 to 1314 Solano Avenue in Albany, California.")

*Second*, as to documents "indicating the instructions provided to those conducting the analysis," again, the FAC provides exactly this. FAC ¶¶ 17-18 ("The private researchers analyzed two of the Apps, WCVB 5 and WMUR 9, finding identical results. … The researchers tested what information (if any) was disclosed when a user watches a video on one of the Apps."). There are no further documents to produce.

*Third*, as to documents "showing any details about how the analysis was conducted," Plaintiff has produced the settings for the phone that the analysis was conducted on, and the transmissions show what videos were viewed. Plaintiff's forthcoming expert report will likely contain more details about how the analysis was conducted, but again, *that document does not currently exist*. Defendant is asking Plaintiff to create work product to respond to a discovery request.

*Fourth*, as to "the identity of the individuals who conducted the analysis," the identities of Plaintiff's non-testifying experts are clearly privileged. Fed. R. Civ. P. 26(b)(4)(D); *see also* Argument § III, *infra*.

*Finally*, Defendant also states this request encompasses "other information relevant to the ability of emails, geolocation, and other 'identifiers' to actually identify potential class members." MTC at 6. The dynamic analysis does not have anything to do with whether "emails, geolocation, and other 'identifiers' [] actually identify potential class members." The dynamic analysis only shows what information was being passed between Defendant's mobile

application and third parties. And, while Plaintiff intends to submit an expert report on the ability of these identifiers to actually identify specific class members, no such report exists at this time. Thus, there are no documents related to the dynamic analysis that go to this category.

In conclusion, Defendant incorrectly contends Plaintiff is withholding information. Plaintiff has given Defendant every non-privileged piece of information relied on in the FAC. There is nothing to further produce at this juncture, so there is no real dispute as to Request for Production No. 25.

## III. DEFENDANT'S MOTION SHOULD BE DENIED AS TO REQUEST NO. 24 BECAUSE PLAINTIFF NEED NOT DISCLOSE THE IDENTITITES OF OR NON-TESTIFYING EXPERTS AND THE REQUEST SEEKS PRIVILEGED COMMUNICATIONS

Defendant asks the Court to order Plaintiff to produce "[a]ll Documents relating to the 'private research company' referenced in Paragraph 16 of the Amended Complaint, including, without limitation, all engagement letters, contracts, scopes of work, emails, and correspondence with the private research company or any individuals acting on its behalf." MTC at 4; *see also* Defendant's Request for Production No. 24. As detailed above, Defendant knows the identity of Plaintiff's testifying expert and can look up whatever information it wants about him on publicly available websites. Further, it is unclear why further information about Plaintiff's testifying expert cannot wait until expert discovery, as none of the allegations in the FAC rest on who Plaintiff's testifying expert is. But Defendant's request for information about Plaintiff's *non-testifying experts* and overly broad request for privileged communications should be denied.

*First*, pursuant to Fed. R. Civ. P. 26(b)(4)(D), "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial." Further, "non-testifying experts are subject to a more restrictive discovery standard under

Rule 26(b)(4)(B) than testifying experts." *Santos v. Rando Mach. Corp.*, 151 F.R.D. 19, 21 (D.R.I. 1993). "[W]hile pre-trial exchange of discovery regarding experts" serves multiple uses "at trial, there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course the litigation should take." *Id.* (internal quotations omitted).

Pursuant to this rule, Plaintiff is not required to produce the names of her non-testifying experts. As the Tenth Circuit has held:

> the identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable except as 'provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.'

*Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 503 (10th Cir. 1980) (quoting Fed. R. Civ. P. 26(b)(4)(D)). Courts in this Circuit are in accord. *See*, *e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 311 (D.P.R. 1985) (applying *Ager* and denying Defendants' motion to compel disclosure of experts' identities); *Puerto Rican Am. Ins. Co. v. Burgos-Diaz*, 2010 WL 11565544, at *3 (D.P.R. Aug. 5, 2010) (same); *Rebarber-Ocasio v. Feliciano-Munoz*, 2022 WL 2004606, at *5 (D.P.R. June 6, 2022) (applying *Ager* to dismiss requested discovery because the requesting party "ha[d] not shown that it [wa]s impracticable for [him] to obtain facts or opinions on the same subject by other means") (cleaned up).

It is also of no import that Defendant requested this information through document requests rather than interrogatories or deposition testimony. MTC at 7 ("By its plain language, Rule 26(b)(4)(D) does not limit document discovery."). As courts have held, "holding that Rule 26(b)(4)(B) does not apply [to document requests] would allow an end run around the policies of

the rule." *Plymovement Corp. v. Air Tech. Sols., Inc.*, 43 F.R.D. 139, 144 (D.N.J. 2007); *U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 n.3 (N.D. Cal. July 12, 2010) (collecting cases supporting the proposition that "Rule 26(b)(4)(B)[4] applies with equal force to protect *documents* sought from non-testifying experts") (emphasis in original). Accordingly, Rule 26(b)(4)(D) bars Defendant's document requests to Plaintiff regarding the "private research company."[5]

*Second*, Fed. R. Civ. P. 26(b)(4)(C) states "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications" are protected, "except to the extent that the communications:"

> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii). Yet, Defendant's request not only encompasses privileged communications with Plaintiff's non-testifying experts—which are protected for the reasons set forth above—Defendant's request also lumps in communications with Plaintiff's testifying expert that are privileged (*i.e.*, communications that do not fall within the three enumerated categories). Defendant's request as written is thus overly broad, seeks irrelevant and privileged

---

[4] "[F]ormer Rule 26(b)(4)(B) was renumbered Rule 26(b)(4)(D) when the 2010 amendments regarding expert communications with counsel were added to Rule 26(b)(4)." 8A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2032 (3d ed. 2024).

[5] Even if Rule 26(b)(4)(D) did not apply, Fed. R. Civ. P. 26(b)(3) also protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

information, and should be denied. *See also Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 248 (D. Mass. 2013) ("[T]he outside consultant conducted the forensic review as a representative of the attorney … and materials communicated to the attorney would be protected by the attorney-client privilege."); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (finding the attorney-client privilege "must include all the persons who act as the attorney's agents") (cleaned up).

*Third*, Defendant contends it has "demonstrated 'exceptional circumstances' to obtain this information" because "[a]bsent the requested discovery, HTV will be deprived of the ability to probe the reliability and validity of essential information on which Plaintiff has expressly relied to support her case and on which she will foreseeably rely in the motion for class certification." MTD at 10 n.3. Defendant also makes the same argument regarding a "substantial need" for the information. *Id*. These arguments do not meet the "heavy burden" Defendant must demonstrate. *P.R. Aqueduct & Sewer Auth. v. Clow Corp*., 108 F.R.D. 304, 310-11 (D.P.R. 1985) (denying motion to compel identities of non-testifying experts).

Plaintiff intends to submit her expert reports simultaneously with class certification, so Defendant will have the benefit of Plaintiff's expert report prior to its opposition to class certification. Further, Defendant knows the name of Plaintiff's testifying expert—which Defendant will be able to depose—and has all the underpinnings of the dynamic analysis that formed the basis for the FAC. In addition, Defendant can confirm the authenticity of the dynamic analysis through its review of its own documents and source code. Argument § IV, *infra*. It is thus unclear why, given all of this evidence at Defendant's disposal, Defendant has a substantial need, or exceptional circumstances warrant the disclosure of, the identities of the non-testifying experts and privileged communications. *In re PolyMedica Corp. Sec. Litig.*, 235

F.R.D. 28, 34 (D. Mass. 2006); *Hoffman v. Owens-Illinois Glass Co.*, 107 F.R.D. 793, 795 (D. Mass. 1985).[6]

*Fourth*, Defendant alleges Plaintiff has waived the privilege of the identities of the individual researchers by using the results the researchers produced in the Amended Complaint. MTC at 8.[7] This does not make sense. Plaintiff did not rely on the identities of non-testifying experts to formulate the FAC, so it is unclear how the privilege was waived. Indeed, if relying on the opinions of non-testifying experts always waived privilege, the exception would swallow the rule. This is directly contrary to holdings from courts in this District. *Massachusetts Mut. Life Ins. Co.*, 293 F.R.D. at 248.

*Fifth*, Defendant's cited authorities either support Plaintiff's arguments or are distinguishable. For instance, in *Beaton v. SpeedyPC Software*, 2017 WL 11625792, at *5 (N.D. Ill. June 20, 2017), the court held the defendant was *not* "entitled to any and all discovery under the sun – SpeedyPC may pursue discovery of information related only to the expert's statements in the Complaint." Defendant cites no specific statement in the FAC. The non-testifying experts' identities are not related to the information relied upon in the FAC, and in any event, Defendant may obtain testimony on these facts from Plaintiff's testifying expert. Likewise, *Zeiger v. WellPet LLC*, 2018 WL 3208160, at *4 (N.D. Cal. June 29, 2018), is distinguishable

[6] Defendant contends one basis for the need for this information is that "the information sought … would go to whether email address or geolocation are sufficient to identify the 'private researchers' in question." MTC at 3 (cleaned up). But Defendant can make the same argument by consulting the records it has about the named Plaintiff. Further, expert testimony by Plaintiff and Defendant will shed light on this issue for the class at large, not the individual circumstances of the non-testifying experts. Thus, Defendant's argument is a shallow attempt at providing justification.

[7] Relatedly, Defendant claims no "work product" protection applies. MTC at 7, 9. Plaintiff is not withholding documents based on the work product doctrine.

because Plaintiff has already provided all the analysis results that were relied upon in the FAC and Defendant does not need the identities of the non-testifying experts to interpret them.[8]

*Finally*, Defendant contends "the individuals who used the WCVB and WMUR Apps as described in the Amended Complaint are at least putative class members, and HTV should be permitted discovery into their identities and facts relating to their use of the Apps." MTC at 6. This is ludicrous. Defendant cites no authority for the proposition that experts—non-testifying or otherwise—can be members of the proposed class. This is akin to saying an attorney becomes a member of the proposed class because, pursuant to the attorney's Rule 11 obligations, he or she downloads the app and watches a video to determine whether there is a good faith basis for the claim. Further, any eventual class would likely exclude any employees or agents of Plaintiff's counsel. Finally, even assuming the veracity of this absurd argument, the First Circuit has instructed courts to "be attentive to the possibility of abuse when discovery is targeted directly or indirectly at passive class members." *In re Porsche Automobil Holding SE*, 985 F.3d 115, 121 (1st Cir. 2021); *see also Gonzalez v. RXO Last Mile, Inc.*, 2022 WL 22269209, at *1 (D. Mass. Dec. 12, 2022) ("Courts in this district are wary of discovery requests directed at absent class members, especially after certification."). Defendant has not made a showing that would permit discovery from these non-testifying experts, even if they are "absent class members" (they are not).

For each of these reasons, Defendant's Motion should be denied as to Request for Production No. 24.

---

[8] Defendant's other authorities are all distinguishable for the same reason. *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 314 F.R.D. 85, 89-90 (S.D.N.Y. 2016); *OTR Transp., Inc. v. Data Interfuse, LLC*, 2022 WL 296056, at *4 (N.D. Ill. Feb. 1, 2022); *Lexington Luminance LLC v. Feit Elec. Co.*, 2020 WL 10052401, at *10 (C.D. Cal. June 12, 2020).

## IV. DEFENDANT'S DISCOVERY REQUESTS ARE NOT RELEVANT OR PROPORTIONAL BECAUSE DEFENDANT'S OWN DOCUMENTS BEAR OUT THE ACCURACY OF THE DYNAMIC ANALYSIS

Defendant's Motion also glosses over an important point. When Plaintiff's counsel commissioned the dynamic analysis, it was so counsel could determine whether any personal information was being shared with third parties. But Defendant already knew the answer to that question. Defendant developed the mobile applications, contracted with Braze and Google for the provision of services, and configurated what information was disclosed to Braze and Google. Most important, Defendant has access to the source code for its mobile applications, such that Defendant can easily determine what information was being passed to Braze and Google. And as discovery has shown, what the dynamic analysis uncovered accords with what Defendant knew prior to this lawsuit: that geolocation, e-mail addresses, and other identifiers were being passed to Braze and Google. Defendant certainly can dispute that the information disclosed gives rise to a VPPA claim. But what Defendant cannot and will not dispute in good faith is that the transmissions were occurring in the first place.

To put a finer point on it, the dynamic analysis only shows what information was transmitted. And, it cannot be seriously disputed at this juncture that the transmissions referenced in the FAC actually occurred. So, the question is, how is it relevant or proportional for Defendant to request information about what is an undisputed issue in this case? The answer is, it is not relevant or proportional.

*First*, Defendant's requests are not relevant. "Relevant information includes any matter that is or may become an issue in the litigation." *Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995) (cleaned up). But the dynamic analysis is not "an issue" because Defendant cannot dispute its findings (which, again, were only that the transmissions actually occurred).

And whether the transmissions given rise to a VPPA claim is not something covered by the dynamic analysis itself.

*Second*, Defendant's requests are not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Maquet Cardiovascular LLC v. Abiomed, Inc.*, 627 F. Supp. 3d 54, 60 (D. Mass. 2022). Further discovery about the dynamic analysis will not resolve any important issues in the case. Based on Defendant's own documents, own contracts with Braze and Google, and own source code, Defendant cannot dispute the dynamic analysis's findings. And based on those same documents, those same contracts with Braze and Google, and that same source code, Defendant can "discover" the same facts Plaintiff's counsel learned as a result of the dynamic analysis (notwithstanding Defendant already knew those facts).

In sum, Defendant contracted with Braze and Google, configured Braze and Google's software within its own mobile applications, and has access to its own source code. Defendant is fully capable, based on its own documents and source code, of seeing the exact transmissions the dynamic analysis saw, and further discovery about the dynamic analysis will not tell Defendant anything it does not already know to be true. Thus, discovery regarding the dynamic analysis is neither relevant nor proportional to this case.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: July 12, 2024

Respectfully submitted,

By: */s/ Max S. Roberts*
Max S. Roberts

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice*)
Victoria X. Zhou (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*Attorneys for Plaintiff*

**PROOF OF SERVICE**

I am a resident of the State of New York, over the age of eighteen years, and not a party to the within action. My business address is Bursor & Fisher, P.A., 1330 Avenue of the Americas, 32nd Floor, New York, NY 10019. On July 12, 2024, I caused the foregoing document to be served via the Court's CM/ECF system on all counsel of record.

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts and State of New York that the above is true and correct. Executed on July 12, 2024, in New York, New York.

*/s/ Max S. Roberts*
Max S. Roberts