IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELE SAUNDERS and RICHARD HAYDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>*v*.<br><br>HEARST TELEVISION, INC.,<br><br>Defendant. | No. 1:23-cv-10998-RWZ |

**DECLARATION OF ANDREA R. BUTLER**

I, Andrea R. Butler, declare the following pursuant to 28 U.S.C. § 1746:

1. I am over the age of 18 and fully competent to make this Declaration. I am admitted *pro hac vice* in this matter to practice before this court.

2. I am Senior Counsel with The Hearst Corporation and represent defendant Hearst Television Inc. ("HTV") in this matter.

3. I make this Declaration in support of HTV's Opposition to Plaintiff's July 23, 2024, Motion to Compel (ECF No. 53) to place certain documents and information before the Court.

4. I have personal knowledge of the facts set forth herein.

5. On February 16, 2024, HTV served its Rule 26(a) Initial Disclosures on Plaintiff. HTV identified Michael Rosellini, its Senior Vice President for Digital Services, as a person with relevant knowledge.

6. Attached hereto as Exhibit A is a true and correct copy of Plaintiff's First Set of Requests for Production to Defendant (the "Requests"), dated February 16, 2024.

7. Attached hereto as Exhibit B is a true and correct copy of Plaintiff's First Set of Interrogatories to Defendant (the "Interrogatories"), dated February 16, 2024.

8. Attached hereto as Exhibit C is a true and correct copy of HTV's Responses and Objections to the Requests (the "Document Responses"), dated March 18, 2024.

9. Attached hereto as Exhibit D is a true and correct copy of HTV's Responses and Objections to the Interrogatories (the Interrogatory Responses), dated March 18, 2024. (Because we erroneously served two copies of HTV Responses to Document Requests on that date, it was not until after our meet and confer that we corrected this error and sent the Responses to Interrogatories on March 26.) HTV identified Michael Rosellini in its answers to Interrogatories 1, 2, 3, and 6. To date, Plaintiff has not noticed a deposition of Mr. Rosellini.

10. Defendant's counsel (the undersigned and Kristen Hauser) and Plaintiff's counsel (Y. Kopel and M. Roberts) met and conferred for approximately one hour each on March 26 and April 3, 2024 regarding Defendant's Document Responses and Interrogatory Responses.

11. Following those conversations, the parties continued to confer via email. Attached hereto as Exhibit E is an email chain between Plaintiff's counsel and Defendant's counsel from February 16, 2024 through April 17, 2024. On April 8, 2024, Plaintiff's counsel (M. Roberts) represented that HTV could "construe each of [Plaintiff's] requests for 'all documents' as 'documents sufficient to show.'" Ex. E at p. 9. On April 10, 2024, I set forth HTV's positions on open items from the parties' conversations, including identifying Mr. Rosellini in response to Interrogatories 11, 13 and Gabe Travers in response to Interrogatory 7, and agreeing to produce documents sufficient to show in response to several Requests. Ex. E at pp. 6-8. Specifically in response to Requests 9-12, 17, 18, Defendant offered to produce contracts between HTV and Braze or Google relating to the subject matter of the litigation. Ex.

E at p. 7. On April 12, 2024, Mr. Roberts accepted those offers and wrote that disputes were resolved. Ex. E at 3-5.

12. On April 15, Mr. Kopel responded to the email chain, writing that he "took a further look at [HTV's] discovery responses and [] conversations with Max [Roberts]" and that Plaintiff would "require ESI" as to Requests 9-12, 17, 18 unless HTV would "not dispute" that "disclosures were made knowingly and for marketing/advertising purposes". Ex. E at 2. In response, on April 17, 2024, I invited Plaintiff's counsel to propose ESI search terms for Requests 9-12, 17, 18 for HTV's consideration. Ex. E at 1.

13. In March and April 2024, the parties also met and conferred concerning the ESI Protocol that the Court so ordered on April 22, 2024 (ECF No. 40). During those negotiations, counsel for Plaintiff proposed a section regarding "Data Preservation" containing provisions whereby the parties would "exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., . . . :marketing manager." Attached hereto as Exhibit F is a true and correct copy of a March 26, 2024, Email from Mr. Roberts to Kristen Hauser attaching Plaintiff's proposal. *See* pp. 12-13. The parties did not include that section or provision in the final protocol. *See* ECF No. 40.

14. HTV produced the Terms of Use and Privacy Notices for its news apps covering a two-year period on April 19, 2024, and the applicable contracts with Braze and Google (including from Mr. Rosellini's files), along with screenshots from its Braze user interface pertaining to the email address that Plaintiff listed in her April 19, 2024 response to one of HTV's Interrogatories, on May 3, 2024.

15. On April 26, 2024, Plaintiff's counsel (V. Zhou) sent an email to HTV's counsel

attaching proposed search terms. Attached hereto as Exhibit G is a true and correct copy of the April 26, 2024 email and the proposed search terms. The proposed search terms were as follows:

1. Braze AND ("API" OR "SDK" OR update OR contract! OR agree! OR version OR v! OR integrat! OR program OR code OR vendor OR process! OR function OR test! OR backend OR front end OR frontend)
2. (Google OR Doubleclick) AND ("API" OR "SDK" OR update OR contract! OR agree! OR version OR v! OR integrat! OR program OR code OR vendor OR process! OR function OR test! OR backend OR front end OR frontend)
3. "geohash"
4. "current_zip" OR ("current" /5 "zip!")
5. ("email" AND "user_id") OR ("email" AND ("user" /3 "id"))
6. "email" AND "attribute!"
7. "latitude" /10 "longitude"
8. "ll_accuracy"
9. "content_url" OR ("content" /4 "url")
10. "altitude" AND "latitude" OR "longitude"
11. "videoName!" OR ("video" /s "name" OR "title")
12. "videoId" OR "COID" OR "artid"
13. "AAID"
14. "ADID"
15. (AAID OR ADID) AND (device OR user OR identif! OR filter OR client)
16. User /7 "ID"
17. ("Michele" OR "Saunders" OR michelesaunders2@gmail.com OR 617-413-5871) w/20 (complaint OR suit OR court OR case OR litig! OR action OR class)
18. ("VPPA" OR "video privacy") AND (law! OR case OR urgent OR statute OR regul! OR appl!)

16. Attached hereto as Exhibit H is a true and correct copy of an email chain between Plaintiff's counsel and Defendant's counsel from April 26, 2024 through May 9, 2024. On May 8, 2024, HTV's counsel (K. Hauser) proposed slight modifications to Plaintiff's proposed searches 1, 2, 6 and 11 and agreed to review search results within the Class period and produce documents responsive to Requests 9-12, 17, 18. Ex. H at pp. 1-2. Plaintiff's counsel (Y. Kopel)

made two slight counterproposals. *Id*. The parties agreed to modify search 1 by removing the term "v*", search 2 by reducing proximity to "w/50" and removing the term "v*", search 6 by reducing proximity to "w/40", and search 11 to clarify and reduce proximity. *Id.* at pp. 1-2.

17. The final agreed-upon search terms were

1. Braze AND ("API" OR "SDK" OR update OR contract! OR agree! OR version OR integrat! OR program OR code OR vendor OR process! OR function OR test! OR backend OR front end OR frontend)
2. (Google OR Doubleclick) w/50 ("API" OR "SDK" OR update OR contract! OR agree! OR version OR OR integrat! OR program OR code OR vendor OR process! OR function OR test! OR backend OR front end OR frontend)
3. "geohash"
4. "current_zip" OR ("current" /5 "zip!")
5. ("email" AND "user_id") OR ("email" AND ("user" /3 "id"))
6. "email" w/40 "attribute!"
7. "latitude" /10 "longitude"
8. "ll_accuracy"
9. "content_url" OR ("content" /4 "url")
10. "altitude" AND "latitude" OR "longitude"
11. "videoName!" OR ("video" /5 ("name" OR "title"))
12. "videoId" OR "COID" OR "artid"
13. "AAID"
14. "ADID"
15. (AAID OR ADID) AND (device OR user OR identif! OR filter OR client)
16. User /7 "ID"
17. ("Michele" OR "Saunders" OR michelesaunders2@gmail.com OR 617-413-5871) w/20 (complaint OR suit OR court OR case OR litig! OR action OR class)
18. ("VPPA" OR "video privacy") AND (law! OR case OR urgent OR statute OR regul! OR appl!)

19. Plaintiff's counsel did not identify or ask HTV to identify additional custodians in the search term proposal or the negotiation communications.

20. On June 21, I attended the deposition of Plaintiff Michele Saunders in Boston.

HTV counsel Kristen Hauser also attended and conducted the examination of Ms. Saunders.

21. On June 25, 2024, in response to an inquiry from Plaintiff's counsel (M. Roberts), Ms. Hauser reported that Hearst "reviewed any email hits" and that "there were no responsive documents to [Plaintiff's] requests." A true and correct copy of that email chain dated June 25, 2024, between Mr. Roberts and Ms. Hauser is annexed hereto as Exhibit I.

22. On June 28, in response to a follow up inquiry from Plaintiff's counsel asking whose emails were searched and a hit report, I told Plaintiff's counsel (M. Roberts) that HTV's email custodians were Michael Rosellini and Gabe Travers (who had departed from HTV and for whom the company no longer had emails), and that there were over 6000 search term hits in Mr. Rosellini's emails. A true and correct copy of that email chain dated June 27-28, 2024 between me and Plaintiff's counsel (M. Roberts) is annexed hereto as Exhibit J. To be more precise, which may not have been clear from my email, application of the search terms resulted in a review set that included 6,036 emails including their family members, where one or more of the search terms appeared in 5,022 of the 6,036 documents.

23. HTV's review comprised a manual document-by-document review by HTV counsel of each of the 6,036 documents returned by application of the search terms in Mr. Rosellini's emails and OneDrive files. HTV used Requests 9-12, 17, 18 (as set forth in Exhibit A hereto, and as modified only by certain definitions the parties agreed to) as the sole criteria to determine whether any individual document was responsive.

24. Hearst (including HTV) has for many years had a document retention policy that includes a 60-day email autodelete.

25. On July 9, 2024, Kristen Hauser and I met and conferred with Plaintiff's counsel concerning HTV's search term review. HTV counsel explained that HTV's lawyers had

conducted a document-by-document manual review of all 6000+ hits using the Requests 9-12, 17-18 themselves to determine responsiveness, that a document would need to relate to the use of Braze or GAM in the HTV Apps and relate to the "disclosure" (broadly defined) of "Personal Information and Video Information", and that HTV did not apply any additional "relevancy" criteria. The undersigned gave examples of how and why Plaintiff's search terms were inapplicable, that the search terms would have captured, for example, documents relating to products other than the HTV Apps, or documents concerning technical issues with, *e.g.*, the Apps appearance in the Google Play Store. During that conversation, Mr. Roberts proposed that HTV produce all of the 6000+ documents that had been coded "not responsive" or a random sample thereof for Plaintiff's counsel to conduct their own review. HTV declined that request and counsel stated that they were unaware of any authority requiring HTV to do so. I asked Mr. Roberts, however, to provide HTV with the authority on which they were basing their request, along with whatever sampling protocol they were proposing.

26. On July 10, 2024, Plaintiff's counsel (V. Zhou) provided authority they believed supported Plaintiff's position; they did not include a sampling proposal or methodology for HTV to consider. A true and correct copy of that July 10, 2024, email from Plaintiff's counsel (V. Zhou) to HTV's counsel is annexed hereto as Exhibit K (listed attachments intentionally omitted).

27. On July 11, I informed Plaintiff's counsel by email that I did not believe the cited authorities were applicable to the facts here, memorialized our conversation from July 9, and reminded Plaintiff that HTV had not conducted any additional "relevance" determination in reviewing documents, but instead had used Plaintiff's own requests (as only modified by agreements with respect to certain definitions) to determine responsiveness. I explicitly offered

to consider re-reviewing the non-responsive documents if Plaintiff's counsel could provide some explanation of the standard that it believed HTV should have applied in reviewing search term hits (which it had not done to date), or how HTV's review should be broader. A true and correct copy of the July 11 email chain between Plaintiff's counsel (M. Roberts, V. Zhou) and myself is annexed hereto as Exhibit L. Plaintiff's counsel did not provide any proposed criteria and responded that same day that the parties were at an impasse and would move to compel all of the non-responsive emails. *Id.*

28. I have reviewed the hit counts for the search terms provided by Plaintiff's counsel for use in this case, and by way of example, one of the search combinations Plaintiff relies on in her motion--"Braze AND (API OR SDK …)"—returned only 711 hits; the search "(Google OR Doubleclick) w/50 (API OR SDK …)" returned 3618 hits. Emails related to the three JIRA tickets cited by Plaintiff in her motion to compel do not appear within the documents that HTV counsel reviewed.

29. As I explained to Plaintiff's counsel during our July 9 meet and confer, among the documents captured by Plaintiff's search terms are communications with Google for the Google Play Store about HTV's use of four-letter station call sign. Other types of documents returned by the search terms, by way of a few examples only, include emails about the use of Braze or Google in products other than the HTV Apps, documents about the use of Braze or Google for purposes unrelated to the HTV mobile apps, and documents that mention, *e.g.*, the word "Google" in links to documents in Google Drive, and sensitive internal communications on a variety of other topics—including other products and vendors and potential new products and business relationships not responsive to the Requests.

30. Separate from the requested ESI search, on June 5 and 24, 2024, HTV produced

over 250 JIRA ticket descriptions, summaries and other data fields (including created and updated dates) and three Confluence documents from its Atlassian suite, which was searched and reviewed (after a reasonable investigation) by HTV counsel for documents sufficient to show in response to Requests 1, 3, 4 (some of which were also responsive to Requests 9-12, 17, 18). Atlassian is an IT support system that includes the JIRA ticketing system and Confluence repository, which technical teams use to log their work. HTV conducted a broad search of this repository, not limited to Plaintiff's proposed ESI search terms or to the class period. (As part of that review, HTV counsel reviewed an additional 4000 documents dating back to at least 2017). *See also* Ex. L at p. 1

31. To respond to Request 2 seeking source code for HTV's mobile apps, HTV permitted inspection by Plaintiff's expert and counsel's representative of a single complete (and unredacted) version of its Android and IOS (Apple iPhone) HTV Apps source code at its offices in New York from May 28-31, 2024, pursuant to the terms of the Confidentiality Order. ECF No. 41. During the inspection, Plaintiff's expert sought additional and previously unspecified software tools to assist in his review of the source code. To accommodate his requests, HTV provided an additional computer terminal and software tools with which to review the code.

32. After the inspection, Plaintiff's counsel raised questions about what they described as an observed "refactoring" in the source code and requested a stipulation or the opportunity to review a different version of the source code. A copy of an email chain between Plaintiff's counsel and HTV's counsel dated June 17-19, 2024, reflecting Plaintiff's request is annexed hereto as Exhibit M. HTV agreed to make available to Plaintiff's expert the requested additional version of the source code during the week requested (July 22-24). Ex. M at 1.

33. On July 15, 2024, Plaintiff's counsel (M. Roberts) initiated a new conversation

about Defendant's document production including about custodians from whose files documents were produced, whether HTV would be producing developer documentation in response to Requests 3-4, and seeking emails notifications of JIRA tickets automatically generated by the Atlassian system. A true and correct copy of an email chain dated July 15-22 between Plaintiff's counsel (M. Roberts) and HTV's counsel (K. Hauser) is annexed hereto as Exhibit N.

34. In the July 15-22 communications, Ms. Hauser informed Mr. Roberts that, as reflected in the data fields provided to Plaintiff, the produced documents were not sourced from any custodian's files, but rather from central repositories, like Atlassian, and that developer documentation was made available to HTV via Braze and Google's websites. Ex. N. at 6-7, 10-11, 15-16. She pointed to numerous examples in HTV's production so indicating, including the Braze contract, offered to collect the weblinks appearing in the produced document and create a new document for Plaintiff with those links, and informed Mr. Roberts that it would be burdensome to search across multiple custodians in O365 emails for JIRA auto-notifications (rather than obtain that information directly from the JIRA system itself). Ex. N at 6-7, 10-11, 15-16. She also offered provide Plaintiff with additional fields from JIRA identifying the individuals associated with the work described in the produced tickets. *Id.* at 7, 11. Plaintiff declined all of HTV's offers. *Id.* at 1, 4. Of note, the ESI protocol requires HTV to produce certain metadata fields "to the extent that they are available" that are standard in email ESI, like custodians, email to/from, email sent date. ECF No. 40 at 9-10. HTV's investigation indicated that the JIRA ticketing system does not have those or other fields; however, HTV nonetheless produced the ticket summaries, ticket names, ticket IDs, creation dates and updated dates.

35. Ms. Hauser also reminded Mr. Roberts of HTV's July 11 offer to provide it with criteria or a protocol for a re-review of the ESI search term hits. Ex. N at 7. Plaintiff's counsel

again did not provide any such criterial. *Id.* at p. 4

36. On July 12, Plaintiff requested another fact stipulation concerning HTV's mobile app source code; in the alternative, it asked that HTV make available all versions of the source code in place from May 2021-May 2024. A copy of a July 12 email chain from Plaintiff's counsel (M. Roberts) to HTV counsel is annexed hereto as Exhibit O. On July 16, I responded that HTV would not enter into a stipulation, but that it would make all versions of the source code available as requested the following week, when Plaintiff's expert was already scheduled to visit per the parties' June 19 agreement. Ex. M at 1. Plaintiff's expert and/or Plaintiff's counsel's representative visited HTV's offices on July 23-26 to review the over 100 versions of HTV's source code made available to them.

37. As previously agreed with Plaintiff's counsel, to respond to Plaintiff's Document Requests 5-8 and Interrogatory 5, on July 19, 2024, HTV produced over 2.4 million rows of data from its Braze API listing Braze IDs, email addresses, geolocation data and video playing notations for its 28 HTV station mobile apps for app sessions anytime during the two years prior to the filing of the Complaint.

38. The email address Plaintiff identified in her Interrogatory Responses, *michelesaunders2@gmail.com*, does not appear in that data set. HTV's counsel had previously represented to Plaintiff's counsel during their July 9 meet and confer that HTV did not have any records indicating that Plaintiff ever provided her email address in the WCVB mobile app.

39. On July 26, Plaintiff's counsel informed HTV that they "are concerned about [Saunders's] ability to continue in her role". Counsel also indicated that they were considering seeking leave to add or substitute a new named plaintiff. A true and correct copy of the July 26 email from Plaintiff's counsel (Y. Kopel) to HTV's counsel is annexed hereto as Exhibit P.

40. On July 2, 2024, Plaintiff served a notice of deposition subpoena for Gabe Travers setting a deposition date of July 30, 2024. On July 29, Plaintiff's counsel informed HTV's counsel Mr. Travers had not been serve, and that the deposition was not going forward on July 30.

41. On July 2, 2024, Plaintiff noticed the deposition of HTV senior executive Roger Keating. I have informed Plaintiff's counsel on multiple occasions that Mr. Keating does not have knowledge relevant to the allegations in the Amended Complaint (or to the use of Braze in the HTV Apps more generally) and was simply the designated signatory for certain HTV contracts. (At no time have Plaintiffs asked that Mr. Keating be added as an ESI custodian.) I asked that they consider withdrawing his deposition notice; to date, they have declined. That deposition is scheduled to go forward on August 9.

42. Plaintiff served a 30(b)(6) deposition notice on HTV on July 9 and a notice of document and deposition subpoena for third-party Braze on July 12, which she reserved on July 15. HTV identified Michael Rosellini as its 30(b)(6) witness and that deposition is scheduled for August 6. To date, Plaintiff has not noticed a subpoena to Google.

43. On July 12, Plaintiff served a second set of requests for production, to which responses and objections are due August 12, 2024.

44. On July 26, Plaintiff noticed a deposition subpoena to David J. Rosenthal for August 12. Plaintiff's counsel described Mr. Rosenthal as an individual whose name Plaintiff's expert had seen in the source code.

45. In a meet and confer conversation on July 29, 2024 among counsel (A. Butler, K. Hauser, M. Greenfield, Y. Kopel, M. Roberts, V. Zhou), Mr. Kopel acknowledged that it had become apparent from documents produced by HTV that Plaintiff did not provide her email

address to HTV through the WCVB mobile app and that she did so through WCVB's website, and that Plaintiff's counsel likely would be seeking to amend the Amended Complaint to add an additional or substitute plaintiff.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of July 2024.

*/s/ Andrea R. Butler*
Andrea R. Butler

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 30, 2024.

*/s/ Andrea R. Butler*
Andrea R. Butler