IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELE SAUNDERS and RICHARD HAYDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARST TELEVISION, INC.,<br><br>Defendant. | No. 1:23-cv-10998-RGS<br><br>Hon. Richard G. Stearns |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Television Inc.*

## TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTS & DISCOVERY REQUESTS AT ISSUE .......... 4

ARGUMENT .......... 10

I. Plaintiff Is Not Entitled to Conduct Her Own Review of HTV's Emails. .......... 10

A. The lack of responsive emails is an expected consequence of Plaintiff's Requests. .......... 11

B. The number of non-responsive emails that hit upon the search terms is a natural consequence of the broad search terms. .......... 13

C. Plaintiff's proposed remedy is improperly drastic, especially in relation to HTV's good-faith offers to Plaintiff. .......... 14

II. Plaintiff's Request to Produce "Emails to Which the Jira Tickets Were Attached" Should be Denied. .......... 17

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Rockford v. Mallinckrodt ARD Inc.*,
326 F.R.D. 489 (N.D. Ill. 2018)....................16

*EEOC v. Baystate Med. Ctr., Inc.*,
No. 16-CV-30086, 2017 WL 4883453 (D. Mass. Oct. 30, 2017) ....................16

*Garner v. Amazon.com, Inc.*,
No. C21-0750RSL, 2023 WL 6038011 (W.D. Wash. Sept. 15, 2023)....................15, 17

*In re Insulin Pricing Litig.*,
No. 23-MD-3080, 2024 WL 2808083 (D.N.J. May 28, 2024) ....................14

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-02420, 2015 WL 833681 (N.D. Cal. Feb. 24, 2015) ....................16

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
337 F.R.D. 610 (D.N.J. 2020)....................16, 17

*Nilon v. Nat.-Immunogenics Corp.*,
No. 12-CV-00930, 2014 WL 12570898 (S.D. Cal. Oct. 27, 2014) ....................19

*Taylor v. Shutterfly, Inc.*,
No. 18-CV-00266, 2020 WL 5232607 (N.D. Cal. Sept. 2, 2020) ....................16

*U.S. for Use & Benefit of M. Frank Higgins & Co. v. Dobco Inc.*,
No. 22-CV-9599, 2023 WL 5302371 (S.D.N.Y. Aug. 17, 2023)....................14

**Other Authorities**

*Configure email notifications*, Atlassian, https://support.atlassian.com/jira-cloud-administration/docs/configure-email-notifications/ (last visited July 30, 2024) ....................19

Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Sedona Conf. J. 1 (2018) ....................15

Defendant Hearst Television Inc. ("HTV") submits this memorandum in opposition to Plaintiff's motion under Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37.1 for an order compelling Defendant HTV to (a) produce all non-responsive documents that hit upon search terms agreed to by the parties and (b) conduct a new email search, with new email custodians, for notifications related to more than 200 JIRA tickets produced by HTV in this case.

**INTRODUCTION**

Plaintiff says she does not "trust" HTV's counsel's assertion that certain of her discovery requests did not yield responsive emails, after HTV's counsel used agreed-upon search terms and then manually reviewed the results for emails responsive to the document requests Plaintiff drafted. She therefore seeks a court order requiring HTV to produce the non-responsive emails so that she may conduct her own review. She also seeks judicial intervention on a new category of emails that she never requested—namely, automatically generated emails that purportedly sent the same JIRA tickets HTV has already produced to Plaintiff. Neither relief is appropriate, especially in light of HTV's extensive discovery productions to date, undersigned counsel's vast efforts in reviewing documents to comply with HTV's discovery obligations, and Plaintiff's transparent strategic motivation to extend discovery and get a second bite at the apple.

Plaintiff's motion to compel does not reflect any deficiency in the document review conducted to date, but rather, Plaintiff's desire to extend discovery and prolong this case. Plaintiff's counsel has expressly indicated that they want to interpose two additional steps in the litigation at this late stage, which would be assisted by the additional discovery sought in this motion: First, the motion explicitly seeks a "do over" with respect to the ESI protocol the parties agreed to in April 2024 and the search terms that Plaintiff chose in May 2024. Mot. 9 (indicating that a random sample would permit Plaintiff to "craft more informed search terms"); *id.* at 11. Second, Plaintiff's counsel has indicated an intent to amend the complaint and change or

supplement the named plaintiff. Just days ago, Plaintiff's counsel informed HTV that they "are concerned about [Saunders's] ability to continue in her role" and are considering seeking leave to substitute or add a new named plaintiff. *See* Declaration of Andrea R. Butler dated July 30, 2024 ("Butler Decl.") ¶¶ 39, 45 & Ex. P. This announcement was strategically timed well *after* Plaintiff's deposition and *after* HTV provided Plaintiff's counsel with data showing that—contrary to Plaintiff's theory of liability alleging that HTV unlawfully disclosed Plaintiff's information through the HTV Apps (Am. Compl. ¶ 106)—Plaintiff never provided an email address to any HTV App.[1] )This motion to compel—filed several weeks after Plaintiff first informed HTV it was forthcoming—is a tactic to buy time to identify a new class representative and further extend discovery.

HTV has already provided extraordinary discovery in this case. To wit, HTV has produced (among other documents):

- Every version of the source code for its mobile news and weather apps (the "Apps" or "HTV Apps"), without any limitation as to its relevance, for May 2021 through May 2024. This includes more than 100 versions of the source code used to integrate Braze and Google Ad Manager ("GAM") into the Apps, which HTV made available for review by Plaintiff's expert for a total of seven days.
- More than 2.4 million lines of data, reflecting data stored by HTV in its Braze database. This includes all Braze IDs for which the database had any email or geolocation data associated with any of the 28 HTV Apps since May 8, 2021, and for which the database indicated that a video played in the App. (This data was produced in response to Requests 5-8 and Interrogatory 5.)
- More than 200 "ticket" summaries and descriptions (with certain other metadata) covering an eight-year period from a review of over 4,000 "tickets" in an IT support system, known as "JIRA," used to communicate among computer engineers and others, along with other documents stored in the Atlassian system. This was done to respond to Document Requests 1, 3, and 4, for which Plaintiff agreed that HTV could produce only "documents sufficient to show" in lieu of conducting any email searches.

---

[1] The timing of the request to add or substitute a plaintiff—only *after* HTV's production of emails and other data contained within Braze—despite Plaintiff Saunders's longstanding illness, suggests that Plaintiff's counsel has used data produced by HTV pursuant to the Protective Order entered in this case (ECF No. 41) improperly. *See* Butler Decl. ¶ 39. HTV intends to seek appropriate relief from the Court.

- Copies of all applicable HTV contracts with Braze or Google/Doubleclick.
- Copies of all HTV Privacy Notices and Terms of Use for a two-year period.

HTV's lawyers also conducted a manual review of 6,036 documents that resulted from applying search terms provided by Plaintiff to determine which, if any, were responsive to six specific document requests for which the parties agreed on an email search.

Plaintiff also fails to accurately describe what HTV has already offered in the meet-and-confers that preceded this motion.

- *First*, HTV offered to re-review the documents it had designated "non-responsive" if Plaintiff provided guidance as to what criteria, beyond the requests themselves, she believes should be used to determine whether emails are responsive to the document requests at issue. Plaintiff has declined to provide any guidance as to just what she believes was deficient about HTV's review, other than conclusory assertions that she finds it "dubious." (Mot. 8.) In other words, Plaintiff is relying on wishful thinking that her perfect documents must exist, and that they would be found using the search terms requested. There is no support in the facts or the law for the extraordinary relief Plaintiff's counsel seeks: to conduct their own review of HTV's documents on a fishing expedition for interesting documents or "to craft more informed search terms" (Mot. 9).
- *Second*, HTV offered to provide Plaintiff with exactly the information she now seeks to compel via intervention of the Court: the identities of individuals associated with the JIRA tickets produced (including, the ticket creator, owner, developer, reviewer, and to the extent the information remains available, the names of additional individuals who would have received automatically generated notifications with respect to those tickets). Even though Plaintiff contends that she needs the new JIRA-notification emails only to identify individuals with potential "knowledge," she has declined HTV's offer. She instead seeks another re-do of her prior discovery agreements, and to have the Court order HTV to now conduct a broader email search than Plaintiff agreed months ago would be sufficient in this case.

Plaintiff's real motivation for her Motion is buried on pages 9 and 11 of her brief: regret that search terms *she proposed* have not yielded the documents she, for unidentified reasons, believes "must" exist. Plaintiff is asking this Court to let her start over: to provide her access to all of the emails hitting on broad search terms without regard to whether they are responsive so that her counsel may "craft more informed search terms" (Mot. 9) and then force a new email

search on HTV with those "new search terms" (Mot. 11) and new custodians (Mot. 11-12). She provides no precedent for such an extreme request.

Permitting Plaintiff the extraordinary relief she requests on these facts in the absence of any showing of wrongdoing on the part of HTV and based on nothing more than her counsel's hunch or dissatisfaction with their own decisions and drafting would set an untenable precedent for future litigants to seek similar relief whenever they are dissatisfied with discovery results and the facts of a case. Plaintiff's motion to compel should be denied.

## FACTS & DISCOVERY REQUESTS AT ISSUE

***Document Discovery***

Plaintiff served her first Requests for the Production of Documents and First Interrogatories on February 16, 2024. Butler Decl. ¶¶ 5-6, Exs. A, B. In March, Defendant objected and responded to the requests and interrogatories, including by identifying Micheal Rosellini as a witness.[2] *Id.* ¶¶ 8-9, Exs. C, D. In addition to the specific document requests described in Plaintiff's motion, Plaintiff's requests and interrogatories included overbroad definitions, sought the source code that powers and instructs the behavior of Defendant's mobile applications (the "HTV Apps" at the center of the case), the identities of individuals knowledgeable about HTV's use of technologies provided by Braze and Google, details and data about the HTV Apps' users, and any consent obtained from app users. *Id*. Exs. A-D.

The parties met and conferred about Defendant's objections to Plaintiff's discovery requests on March 26 and April 3, 2024. Butler Decl. ¶ 10. Following those meetings, on April 8,

[2] During March and April 2024, the parties also negotiated an ESI Protocol, which was ultimately entered by the Court in this matter. Plaintiff's counsel did not seek to negotiate the issue of who HTV's custodians should be as part of that process (in fact, the parties decided against a provision that would have provided a process by which Plaintiff could identify those custodians by role—such as "marketing manager"—and data sources she believed would have relevant information). Butler Decl. ¶ 13, Ex. F at 12-13.

Plaintiff's counsel represented in an email to HTV's counsel that Plaintiff would accept "documents sufficient to show" for any document requests seeking "all documents" about a subject. *Id*. ¶ 11, Ex. E at 9. On April 10, 2024, HTV's counsel set forth HTV's positions for the various items that remained open after the meet and confers, and, given the modified definitions agreed to by the parties, identified Gabe Travers as an additional witness with knowledge as to some of the information sought in response to Interrogatory No. 7.[3] *Id*. ¶ 11, Ex. E at 6-9. For requests 9-12, 17, 18, Defendant offered to produce contracts between HTV and Braze or Google relating to the subject matter of the litigation. *Id*. Ex. E at 7. On April 12, 2024, Plaintiff's counsel accepted those offers and wrote that disputes were resolved. *Id*. at 3-5. Nonetheless, on April 15, different counsel for Plaintiff recanted that agreement and demanded that HTV conduct a search of emails for Requests 9-12, 17, 18 seeking (i) communications with Braze or Google and (2) purposes for implementing certain technologies, all related to the transmissions of video information and personal information. *Id*. ¶ 12, Ex. E at 2. Despite the parties' earlier agreement that no general ESI (or even just email) review would be required, in a meet and confer telephone call on April 17, 2024, Defendant's counsel invited Plaintiff to propose ESI search terms. *Id*. The parties reached agreement on search terms on May 9. *Id*. ¶¶ 15-17, Exs. G, H. At no time did Plaintiff's counsel ask HTV to search any custodians other than the two it had identified as knowledgeable in March and April—Mike Rosellini (who had also been identified in HTV's Rule 26 initial disclosures) and Gabe Travers—or otherwise seek to engage with respect to ESI custodians or repositories. *Id*. ¶ 19.

[3] Plaintiff suggests—without citation or support—that because Mr. Travers is a former employee, HTV should have identified another custodian to "replace" him. Mot. 3 n.1. Plaintiff does not explain why HTV should have avoided identifying Mr. Travers. Nor does she justify her assumption that someone else exists with the same knowledge as Mr. Travers on the topics she sought. Moreover, Plaintiff did not take issue with HTV's original objection to the Interrogatory in question, which specifically objected to identifying "all persons" with knowledge.

Following this process, HTV searched for and provided discovery in multiple ways:

***1. Email Searches:*** Based on the agreements among counsel, the only Requests for which HTV agreed to conduct an email search were Requests 9-12 and 17-18:

> **Request No. 9**: All documents—including but not limited to contracts—exchanged between Hearst Television, Inc. and BRAZE relating to the use and integration of BRAZE's software development kits, application programming interfaces, or other BRAZE technology relevant to the receipt, storage, or processing of PERSONAL INFORMATION and VIDEO INFORMATION on each of Defendant's APPS. [4]

> **Request No. 10**: All communications between Hearst Television, Inc. and BRAZE relating to the use and integration of BRAZE's software development kits, application programming interfaces, or other BRAZE technology relevant to the receipt, storage, or processing of PERSONAL INFORMATION and VIDEO INFORMATION on each of Defendant's APPS.

> **Request No. 11**: All documents—including but not limited to contracts—exchanged between Hearst Television, Inc. and GOOGLE relating to the use and integration of GOOGLE's software development kits, application programming interfaces, or other GOOGLE technology relevant to the receipt, storage, or processing of PERSONAL INFORMATION and VIDEO INFORMATION on each of Defendant's APPS.

> **Request No. 12:** All communications between Hearst Television, Inc. and GOOGLE relating to the use and integration of GOOGLE's software development kits, application programming interfaces, or other GOOGLE technology relevant to the receipt, storage, or processing of PERSONAL INFORMATION and VIDEO INFORMATION on each of Defendant's APPS.

> **Request No. 17**: All documents and communications concerning the purpose(s) for which Defendant disclosed APP users' PERSONAL INFORMATION and VIDEO INFORMATION to BRAZE.

> **Request No. 18**: All documents and communications concerning the purpose(s) for which Defendant disclosed APP users' PERSONAL INFORMATION and VIDEO INFORMATION to GOOGLE.

HTV's counsel searched for emails responsive to these requests by *first*, using the search terms provided by Plaintiff to narrow the universe of potentially responsive documents; and *second*,

[4] "PERSONAL INFORMATION and VIDEO INFORMATION" appears to be the term that Plaintiff uses to attempt to capture the definition of "personally identifiable information" under the VPPA.

manually reviewing each email that hit upon Plaintiff's search terms for responsiveness to any of Requests 9-12, 17-18. Butler Decl. ¶¶ 22, 23.

***2. Other Corporate Documents and App Source Code:*** In April and early May, HTV produced its relevant privacy policies and terms of use, its contracts with Braze and Google, and, pursuant to Rule 26, screenshots from its Braze user interface pertaining to the email address proffered by Plaintiff. *Id.* ¶ 14. It thereafter made the *complete* source code for the HTV Apps available to Plaintiff and her expert, accommodating each of her experts' requests. *Id.* ¶¶ 31, 32, 36, Exs. M, N, O. Following Plaintiff's questions concerning the version of the source code that had been made available, HTV made all 100+ versions of the HTV mobile app source code for the period May 2021-May 2024 available. *Id.* ¶ 36, Exs. M, O.

***3. Documents Stored in the "Atlassian" IT System:*** Defendant separately searched for documents responsive to Plaintiff's discovery requests, including Requests 3-4 (seeking documents about the implementation of the mobile apps), and Requests 9-12, 17, 18 that are the subject of Plaintiff's motion, within its Atlassian suite. Atlassian is an IT support system that includes the JIRA ticketing system and Confluence repository, which technical teams use to log their work. HTV conducted a broad search of this repository (including over 4000 documents), not limited to Plaintiff's proposed ESI search terms or to the class period. *Id.* ¶ 30. HTV produced over 250 responsive documents from those sources on June 5 and 24. *Id.*

***4. Data from HTV's Braze API:*** Finally, on July 19, Defendant produced over 2.4 million rows of data from its Braze database to Plaintiff. This data encompassed all 28 HTV Apps, including all Braze IDs for which HTV had an email address or geolocation data and a notation indicating a video had played. *Id.* ¶ 37. Despite the comprehensiveness of that data for

all HTV App users, Plaintiff's email address (as provided by her counsel) does not appear in the dataset.[5] *Id.* ¶ 38.

On June 28, in response to questions from Plaintiff about Defendant's ESI document production and which custodians had been reviewed, HTV reported that it had searched for emails for the two individuals it identified in April in its interrogatory responses, one of whom is a former employee and for whom it no longer had emails. *Id.* ¶¶ 21-22, Exs. I, J. The parties met and conferred with respect to HTV's email production on July 9, during which counsel for HTV explained that they had conducted a document-by-document manual review for responsiveness using the criteria of the Requests themselves—including that a document would need to relate to the use of Braze or GAM in the HTV Apps and relate to the "disclosure" (broadly defined) of "Personal Information and Video Information", but did not apply any additional "relevancy" criteria. *Id*. ¶ 25. HTV also provided examples of non-responsive documents among the search-term "hits": that the search terms captured, for example, documents relating to products other than the HTV Apps, or documents concerning technical issues with, *e.g*., the Apps appearance in the Google Play Store. *Id*. Counsel for Plaintiff asked if HTV would produce all documents coded "non-responsive" (or a sample thereof) so that Plaintiff could conduct its own review. HTV declined that request and asked Plaintiff to provide authority supporting her request, along with whatever sampling protocol she would propose. *Id*.

[5] The records produced confirm that HTV does not have any data or information showing that Plaintiff ever provided her email address to the WCVB mobile app, which Defendant's counsel confirmed on July 29. Butler Decl. ¶¶ 38, 45. And in prior briefing, Plaintiff's counsel acknowledged that neither email nor geolocation nor device identifiers are sufficient to identify the names of their "consulting experts". ECF No. 50 at n.1 (two different email addresses, but one device, were used by "non-testifying experts"), 4 (arguing that HTV can "look up" information about the testifying expert identified by Plaintiff, but identities of "non-testifying experts . . . are protected" from disclosure), 9-10 (noting that non-testifying experts "precise geolocation" was transmitted, but that "the identities of Plaintiff's non-testifying experts are clearly privileged").

On July 10, 2024, Plaintiff's counsel provided HTV with authority that it believed supported its request that HTV turn over all documents that its counsel had deemed "non-responsive" so that Plaintiff's counsel could conduct their own review. Butler Decl. ¶ 26, Ex. K. They did not provide any proposed sampling methodology. *Id.* On July 11, HTV responded with an explanation for why it believed the cited authority was inapposite or supported HTV's position. *Id*. ¶ 27, Ex. L. It reminded Plaintiff that HTV had not conducted any "relevance" determination in reviewing documents, but rather, had used Plaintiff's own requests (as only modified by agreements with respect to certain definitions) to determine responsiveness. It explicitly offered to consider re-reviewing the non-responsive documents if Plaintiff could explain the standard that she believed HTV should have applied in reviewing search term hits, or how HTV's review should be broader. *Id*. ¶ 27, Ex. L. That same day, Plaintiff declined to provide any criteria for HTV's own re-review, informed HTV that Plaintiff believed the parties were at an impasse, and said Plaintiff would be moving to compel HTV to produce all non-responsive emails. *Id*.

On July 15, however, Plaintiff began a lengthy back-and-forth covering other aspects of Defendant's document production. Butler Decl. ¶¶ 33, 34, Ex. N. On July 19, in response to these further email exchanges with Plaintiff's counsel relating to discovery issues, and in light of the fact that Plaintiff had not yet moved to compel production of HTV's non-responsive emails, HTV reminded Plaintiff of its offer to conduct additional review of the non-responsive documents if Plaintiff provided some basis or standard to apply. *Id*. ¶ 35, Ex. N. at 7. Plaintiff again declined to do so. *Id*. To date, Plaintiff's counsel has provided no explanation for why they think that documents on the requested topics *must* exist, particularly during the time frame of the

email search. Plaintiff issued a second set of document requests to Defendant on July 12, to which responses and objections are due on the last day of the discovery period. *Id*. ¶ 43.

***Depositions***

Plaintiff issued her first two deposition notices on July 2, 2024, a subpoena notice for Gabe Travers, the former employee HTV identified in April, and Roger Keating, a senior HTV executive who appears to be noticed merely for his role as the designated signatory for certain HTV contracts (his signature appears on the Braze contract produced by HTV in early May). *Id.* ¶¶ 40-41. Plaintiff has *never* noticed a deposition of Michael Rosellini, the individual HTV first identified in its Rule 26(a) disclosures in February 2024. *Id*. ¶ 9. On July 9 and 12, respectively, with only a month remaining until the fact discovery deadline, Plaintiff noticed the 30(b)(6) deposition of HTV and a document and deposition subpoena for third-party Braze; it re-noticed the Braze subpoenas on July 15, 2024. *Id*. ¶ 42. It has never noticed a subpoena to Google. *Id*. HTV's 30(b)(6) deposition is scheduled for August 6. *Id*.

Most recently, on July 26, Plaintiff's counsel revealed that they were concerned about Plaintiff's ability to continue as lead plaintiff in this case and that Plaintiff's counsel may seek to add or substitute a new (but as-yet-unidentified) plaintiff. *Id*. ¶¶ 39, 45, Ex. P. That same day Plaintiff's counsel served a subpoena notice for an individual located in Philadelphia whose name they represented was included in the HTV Source Code. The deposition is noticed for August 12, the last day of discovery in this case. *Id.* ¶ 44.

## ARGUMENT

### I. Plaintiff Is Not Entitled to Conduct Her Own Review of HTV's Emails.

Plaintiff accuses HTV of failing to produce responsive emails after HTV's counsel manually reviewed 6,000 documents for responsiveness. Based on that accusation, Plaintiff asks the Court to order HTV to turn over emails that its counsel determined are non-responsive. In the

alternative, if Plaintiff can't get her first choice of receiving all non-responsive emails, she seeks a sample of them. The Court should not credit Plaintiff's accusation and should deny her requested relief for three reasons: (1) it is unsurprising that no responsive emails were identified in light of Plaintiff's actual, narrow document Requests; (2) the universe of 6,000 emails reviewed by HTV's counsel—a universe obtained by applying Plaintiff's chosen search terms—encompassed all manner of non-responsive (and irrelevant) documents; (3) Plaintiff's requested relief is improper in light of HTV's good-faith offers to re-review the emails if Plaintiff suggested a different standard for the review.

**A. The lack of responsive emails is an expected consequence of Plaintiff's Requests.**

Plaintiff believes responsive emails *must* exist among the 6,000 emails that HTV's counsel manually reviewed, purely based on her instinct that any alternative explanation "defies belief." Mot. 7. After all, she writes, the initial universe of documents reviewed reflected the hits on the search terms that Plaintiff asked HTV to use, which Plaintiff tailored to find the documents she hoped to receive when making her Requests. In so arguing, Plaintiff avoids confronting her actual Requests, and selectively describes the searches she asked HTV to conduct.[6] *See* Mot. 3. To read Plaintiff's Motion, one would think that Plaintiff had sought *all* emails relating to the integration of Braze and "Doubleclick" (now known as Google Ad Manager, or "GAM"). That is clearly what she intends to suggest by including only a select example of search terms used to the Court. But that is not the case. As set forth above, Plaintiff

[6] To be clear, HTV did *not* have 6000 hits on the one requested set of search terms (Braze or Google and a variety of other alternative terms) that Plaintiff referenced on page 3 of her motion. Butler Decl. ¶¶ 21-23, 28. That string includes the only search terms that Plaintiff identified as something she believes "must have" hit on responsive documents. The requested search terms also included terms such as "video /5 name" regardless of whether "Braze", "Google" or any other narrowing terms were also included. *Id.* ¶ 18.

herself limited the Requests for which HTV agreed to an email search in at least three important ways that Plaintiff glosses over:

- *First*, each of Requests 9-12 and 17-18 *as drafted* was limited to only *certain communications* about the use of Braze and "DoubleClick"/Google Ad Manager (commonly known as "GAM").
- *Second*, the Requests *as drafted* were limited to those uses of Braze and GAM for receipt, storage, or processing of "PERSONAL INFORMATION and VIDEO INFORMATION", terms defined by Plaintiff, and included information about *both* Personal Information, (*e.g.*, email, geolocation, or certain other data points) *and* Video Information (*i.e.*, content identifiers such as a "video ID").
- *Third*, the Requests *as drafted* were limited overall to, *e.g.*, those narrow uses *in the HTV Apps*.
- *Finally*, the requests were even *narrower*, in ways that make the lack of responsive documents even less surprising. For Requests 9-12, the Requests sought only those documents *exchanged between* HTV and each of Braze and Google (Requests 9 and 11) or communications *between* HTV and each of Braze or Google about the integration and use of Braze or Google on the above topics (Requests 10 and 12), or documents concerning *the purposes for which* HTV disclosed the "Personal Information" and "Video Information" of users of the HTV Apps.

Plaintiff's counsel has *never* provided any explanation to HTV or the Court as to why they expect that any such documents should exist in the 2021-2023 period subject to email review.[7]

Given these narrow Requests, one would not expect many of the emails to be responsive even if they include one or more of the search terms. For example, emails that include the words "Braze" and "SDK", would not likely be responsive because (1) they do not address the use of the Braze SDK ***in the HTV Apps***, or (2) they do not address the use of the Braze SDK in connection with sharing information like email or geolocation along with some form of content identifier that comprise the definition of "Video Information" used in the Requests or (3) they do not reflect either an exchange or communication *with* Braze or Google on the topics described in the Requests, or HTV's purpose in using those tools in the ways described in the Requests.

[7] For example, Plaintiff's counsel has provided no explanation for why they believe emails from the 2021-2023 time period would necessarily include documents about the "purpose" of Braze and Google when those services had been integrated into the Apps many years prior.

Plaintiff could have issued broader document requests (albeit objectionable for overbreadth) if she had sought all documents or communications concerning, *e.g.*, the Braze SDK. Instead, she asked for—and HTV searched for—certain types of communications that she believed were relevant to the claims asserted (and for which Plaintiff claims she needs information as to HTV's "knowledge", Mot. 11): those relating to the apps and the alleged sharing of specified types of information. The fact that Mr. Rosellini has no emails between 2021 and 2023 on the specific topics sought, *e.g.*, the reasons why HTV allegedly used Braze to collect such information, is a natural consequence of the specific requests Plaintiff chose to make.

**B. The number of non-responsive emails that hit upon the search terms is a natural consequence of the broad search terms.**

The search terms Plaintiff drafted sweep up other documents beyond the scope of the narrow Requests (and Plaintiff's claims). Butler Decl. ¶¶ 25, 28, 29. For example, the search terms surfaced HTV's communications with Google for the Google Play Store about HTV's use of four-letter station call signs. *Id.* ¶ 29. They also encompass documents about the use of Braze or Google in products other than the HTV Apps (which Plaintiff acknowledges is not part of this case), communications about potential future uses of Braze or Google, documents about the use of Braze or Google for purposes unrelated to Plaintiff's topics, and documents that mention, *e.g.*, the word "Google" in links to documents in Google Drive. Such documents would not be responsive to Plaintiff's requests. The search terms would encompass, by their nature, communications about other aspects of the Braze and GAM integrations, *etc*. into the Apps—those not related to sharing "personal information and "video information". They similarly would encompass communications *about* the integration of Braze and GAM into the HTV Apps that were not *with* Braze or Google. Such documents would not be responsive to the Requests. And of course, the terms capture sensitive internal communications on a variety of other topics—

including other products and vendors and potential new products and business relationships not responsive to the Requests (and having no possible relevancy to this case). *Id.* ¶ 29. In short, Plaintiff has provided no basis for her assumption that her imagined documents exist or that the criteria applied by HTV to its review—drawn from the requests and definitions provided by Plaintiff—missed any responsive documents. The mere fact that the search terms "hit" on certain emails is not sufficient here. In any event, HTV offered to re-review the documents (or a sample thereof) if Plaintiff were to articulate criteria HTV should have used. Plaintiff declined.

### C. Plaintiff's proposed remedy is improperly drastic, especially in relation to HTV's good-faith offers to Plaintiff.

Based on Plaintiff's hunch that HTV's counsel may have missed a responsive document in its manual review, Plaintiff has gone nuclear: she insists that this Court order HTV to turn over all the documents that its counsel has already marked non-responsive, or in the alternative, send her a sample. While Plaintiff contends that there is precedent to support this approach, neither party has identified any instance in which a Court has required a party to turn over documents already manually reviewed by counsel based on an adversary's supposition that counsel may have missed responsive documents. HTV has done exactly what the Federal Rules require: search the documents identified (in this case, using the search terms that *Plaintiff* chose), to determine if any documents were responsive to the Requests that *Plaintiff* drafted. *See, e.g.*, *In re Insulin Pricing Litig.*, No. 23-MD-3080, 2024 WL 2808083, at *3 (D.N.J. May 28, 2024) (rejecting plaintiff's request to require defendant to produce all "relevant" documents returned by ESI search because "a party's obligation to produce discoverable material . . . arises, with some exception, upon a request pursuant to Rule 34 of the Federal Rules"); *U.S. for Use & Benefit of M. Frank Higgins & Co. v. Dobco Inc.*, No. 22-CV-9599, 2023 WL 5302371, at *4 (S.D.N.Y. Aug. 17, 2023) ("Although there is nothing improper about parties agreeing to produce all

documents generated from an ESI search protocol . . . , the Court will not order an unwilling party to do so."); *see also* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 35 (2018) ("relevant" refers to the scope of discovery and "responsive" refers to information sought in discovery).

In support of her request to let Plaintiff's counsel re-review the work done by HTV's counsel, Plaintiff relies squarely on a single case: *Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2023 WL 6038011 (W.D. Wash. Sept. 15, 2023). But Plaintiff's comparison is far-fetched, and that case bears little resemblance to the facts here. **First**, in *Garner*, Amazon had refused to produce documents that it deemed *either* non-responsive to the discovery requests *or* irrelevant; and the court concluded that Amazon had "used an unreasonably narrow view of what was relevant." *Id.* at *4. Here, in contrast, HTV did not do any further screening besides applying Plaintiff's requests. Butler Decl. ¶ 27. **Second**, the requests in *Garner* sought documents relating to a prior FTC investigation; as a result, there was a specific, articulable basis (unlike here) to believe that responsive documents existed. **Third**, in *Garner*, there had been no document-by-document review by counsel; rather, Amazon had conducted "Technology Assisted Review" ("TAR") of more than 2 million documents. 2023 WL 6038011, at *3. Here, each of the documents that hit on *any* of the search terms provided by Plaintiff was reviewed to see if it was responsive to the requests at issue. Butler Decl. ¶¶ 22, 23, 25. **Fourth, and most important,** the court in *Garner* did not even grant the relief that Plaintiff seeks here. As Plaintiff acknowledges, the court did *not* order Amazon to turn over all non-responsive documents so that Plaintiff would conduct its own review: it permitted Amazon to do so using defined criteria and guidance. 2023 WL 6038011, at *4 (giving Amazon the "choice" to review the documents itself or turn them

over to the plaintiff). To date, Plaintiff has declined to articulate any such criteria or propose guidance, either directly to HTV or to the Court.

Plaintiff's alternative relief—an order requiring HTV to turn over a sample of documents already reviewed by counsel—relies on cases that are, again, inapplicable. In Plaintiff's principal cases, the parties sought the court's help fashioning appropriate sampling methods when creating Technology-Assisted Review ("TAR") ESI protocols. *See City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 491 (N.D. Ill. 2018); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2015 WL 833681, at *1 (N.D. Cal. Feb. 24, 2015). Plaintiff sought no such process as part of the ESI protocol in this case, and the review here was done manually.

The other cases relied upon by Plaintiff are similarly inapposite. In *Baystate*, for example, the defendant explicitly declined to produce documents responsive to specific requests; the dispute focused on documents that had already been identified as responsive. *EEOC v. Baystate Med. Ctr., Inc.*, No. 16-CV-30086, 2017 WL 4883453, at *4-5 (D. Mass. Oct. 30, 2017). In *Taylor*, the parties disagreed at the start of discovery about which search terms to apply. *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266, 2020 WL 5232607 (N.D. Cal. Sept. 2, 2020). Rather than ordering, as the plaintiff urged, that defendant produce a random sample for plaintiff to review for responsiveness, the court ordered the defendant to provide plaintiff with "representative examples" of what were non-responsive (in that case, documents that referred to "Groupon" that related to deals other than those at issue in the case). *Id.*

In *Valsartan*, the court addressed defendant's violation of a court-ordered ESI protocol by, contrary to the parties' agreement and undisclosed to plaintiffs, conducting only a TAR (and no manual review) on top of the agreed-upon search terms, and taking the position that the TAR "predicted" a large volume of documents to be non-responsive. *In re Valsartan, Losartan, &*

*Irbesartan Prods. Liab. Litig*., 337 F.R.D. 610, 612, 614 (D.N.J. 2020). Defendant refused to conduct any manual review, arguing it would be burdensome. *Id*. at 612. The parties eventually agreed to permit the defendant to use TAR and not a manual review, but disputed whether the plaintiffs should be permitted to review a representative sample of the computer-reviewed documents to "evaluate and validate" the computer platform that would be used for the TAR. *Id*. at 614. When defendant declined to permit this and instead unilaterally undertook to "validate" its work through its own random sampling and continued to refuse to review the non-responsive documents identified as such by its computer model (*id*. at 615), the court ordered, as a sanction for violation of its prior orders, that plaintiffs could review "a relatively small number of documents as part of their validation" of the technology-assisted review.[8] *Id*. at 624.

Although HTV remains open to conducting an additional review of the documents that were designated "non-responsive", Plaintiff has not established any standard to be applied to such review besides the standard that HTV already applied based on the face of Plaintiff's requests. In contrast to *Garner*, for example, where plaintiff provided the court reasons why Amazon would have documents relating to specific prior investigative demands issued by the FTC, *see* 2023 WL 6038011, at *3, here Plaintiff has provided no basis other than speculation and what can best be described as a "feeling" that responsive documents must exist, or an incredulity that they do not.

## II. Plaintiff's Request to Produce "Emails to Which the Jira Tickets Were Attached" Should be Denied.

Reading Plaintiff's Motion, one would think that Plaintiff asked for JIRA to be searched and JIRA tickets to be produced in response to her discovery Requests, or that the JIRA tickets

---

[8] In *In re Valsartan,* the court permitted plaintiffs to review 5,000 documents out of "millions" identified as non-responsive by TAR. *Id*. at 621. This presumably constituted a very small percentage—less than .05% of the total. Here, Plaintiff's proposed sample size of 362 documents would constitute approximately 6% of the total.

produced by HTV were produced in response to requests for which the parties agreed HTV would conduct email searches. As set forth above, the JIRA tickets were produced in response to certain requests for which Plaintiff agreed that HTV could produce only "documents sufficient to show" the requested information (Requests 3, 4, 8, 16, 19 & 20, although some of the tickets may be responsive to Requests 17-18 as well). Butler Decl. ¶ 30. But Plaintiff claims to now need the JIRA email notifications as well because they would purportedly show "knowledge of the transmissions Plaintiff alleges violate the VPPA".[9] Mot. 11. Setting aside the relevance of such information for proving the "knowledge" claimed (and setting aside whether any JIRA ticket shows that any "personally identifiable information" was transmitted to Braze or Google), even assuming Plaintiff's claimed basis for needing the email review she now seeks is genuine, **HTV offered to provide Plaintiff with the information contained within JIRA as to who at HTV received the notifications.** In other words, HTV offered to provide the very information Plaintiff claims to need. It declined to conduct a new email search among additional custodians as unduly burdensome, especially in light of the more readily available source.[10] *See* Butler Decl. ¶¶ 33, 34.

Plaintiff's motion also assumes (without support) that the repository for JIRA tickets is email, and that every JIRA ticket is necessarily attached to an email. *See, e.g.*, Mot. 12. But as Plaintiff's counsel is no doubt independently aware, and as HTV explained to them multiple times during the meet and confer process, that assumption is not correct. JIRA tickets are created

---

[9] Plaintiff submitted JIRA tickets with her Motion, apparently to suggest that the search terms would have raised associated emails and that, therefore Mr. Rosellini, must have associated emails. But in fact, no notifications or other references to those tickets appear in Mr. Rosellini's non-responsive emails. Butler Decl. ¶ 28. Indeed, Pl.'s Ex. 9 is a JIRA ticket created in October 2020, and updated in December 2020—outside the date range of the email search.

[10] As noted, HTV produced JIRA tickets for a much broader time range than it agreed to search Mr. Rosellini's emails; to conduct an email search for notifications relating to the JIRA tickets produced would require not adding multiple custodians, most if not all of whom will be engineers, executives—many of whom may no longer be at the company—but is also speculative given that HTV email is subject to a general 60-day autodelete policy and has been since at least 2016. *See* Butler Decl. ¶¶ 24, 30.

and reside in a different repository (Atlassian), which is an IT environment. Butler Decl. ¶ 34, Ex. N. Notifications of *activity* in the JIRA environment may be sent via email, but Plaintiff has provided no basis to find that the JIRA tickets themselves are attached to such notifications, and as previously explained to Plaintiff, they are not. *Id.* ¶ 34, Ex. N; *see also Configure email notifications*, Atlassian, https://support.atlassian.com/jira-cloud-administration/docs/configure-email-notifications/ (last visited July 30, 2024). HTV did not, as Plaintiff suggests, produce JIRA tickets and somehow withhold "attached emails" or the emails "to which they were attached". Mot. at 12. Instead, HTV searched for JIRA tickets relating to the HTV Apps and the applicable requests from a non-email repository: Atlassian. Butler Decl. ¶ 30. To the extent Plaintiff believes "metadata" other than that provided should have been produced as part of HTV's "documents sufficient to show" production, they could have conferred with HTV about that. Indeed, HTV offered to do just that, and to produce additional fields, including the names of the individuals who ordered the work and worked on each JIRA ticket produced (*e.g.*, the ticket "owner", "developer", "reporter", "assignee" as designated in the JIRA system). *Id.* ¶ 34, Ex. N. Plaintiff declined that offer, insisting that HTV conduct a new email search, apparently across the emails of every computer engineer who ever may have worked on an HTV product, over an 8-year period, in the off chance that there are *notifications* of the JIRA tickets produced. Doing so would be unduly burdensome—and unduly extend discovery in this case—in light of HTV's offer to provide the very information Plaintiff claims to need in a different form. If Plaintiff is genuinely interested in the information solely to be able to prove "knowledge", producing that information from JIRA itself would be far more reasonable and proportionate.[11]

[11] The cases upon which Plaintiff relies are inapposite. They addressed situations where the defendant refused to respond to a discovery request at all based on burden. *See, e.g.*, *Nilon v. Nat.-Immunogenics Corp.*, No. 12-CV-00930, 2014 WL 12570898, at *3 (S.D. Cal. Oct. 27, 2014). That is not the situation here, where the JIRA tickets

Finally, because the Requests for which Atlassian was searched sought information with respect to how, *inter alia*, Braze and GAM have been configured by HTV, HTV searched a broader time frame than the agreed-upon email search encompassed: from 2017 to 2024. What Plaintiff is really asking now is to expand the email searches she agreed to at the start of discovery in this case, as to custodians, time period, and subject matter. Given that many (if not most) of the JIRA tickets pre-date 2022, it is also speculative that email notifications with respect to those tickets would still exist. Butler Decl. ¶ 30. As Plaintiff is already aware, some individuals associated with the JIRA tickets in question—such as Gabe Travers—are no longer employed by HTV, so no emails would exist in any event. It is for these reasons that HTV offered to provide Plaintiff with the information it told HTV (and now argues to the Court) it needed: information from the Atlassian repository that would provide the names of individuals associated with any JIRA tickets for which they wanted additional information. As a result, doing what Plaintiff now seeks—a broad email search—would be unduly burdensome.

**CONCLUSION**

Plaintiff's Motion to Compel should be denied.

---

were produced in response to request for which *Plaintiff agreed* HTV could produce only documents sufficient to show. Plaintiff nonsensically suggests that, because HTV did not provide a declaration with respect to burden, it should be required to conduct a new, broader email search. If Plaintiff believed that to be true, she should have sought additional searches, custodians, and a broader time period during the process of agreeing to an ESI protocol and meeting and conferring with respect to Plaintiff's document requests and HTV's responses in April and May. In any event, HTV has described the burden imposed. *See, e.g.,* Butler Decl. ¶ 34, Ex. N.

Dated: July 30, 2024

Respectfully submitted,

*/s/ Andrea R. Butler*

Andrea R. Butler*
Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Kristen Hauser*
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

*Admitted Pro Hac Vice

*Attorneys for Defendant Hearst Television Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 30, 2024.

*/s/ Andrea R. Butler*
Andrea R. Butler