**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHARLES THERRIEN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:23-cv-10998-RGS |
| v. | Hon. Richard G. Stearns |
| HEARST TELEVISION, INC. | ORAL ARGUMENT REQUESTED PURSUANT TO LOCAL RULE 7.1(d) |
| Defendant. | |

# DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Television Inc.*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The HTV Mobile Apps and HTV's Use of Braze and Google. ..... 3

B. Plaintiff's Proposed "Common" Class Evidence. ..... 4

*1. Geolocation* ..... 4

*2. Email Addresses* ..... 5

*3. Mobile Advertising IDs* ..... 7

*4. Article URLs and Article IDs* ..... 8

C. Vallina-Rodriguez Report and Deposition. ..... 9

III. LEGAL STANDARD ..... 10

IV. ARGUMENT ..... 11

A. Plaintiff's Proposed Classes Cannot Be Identified Without Individualized Fact Finding & Therefore Are Not Ascertainable or Administratively Feasible. ..... 11

*1. Plaintiff's Class Definitions and Proposed Mechanism for Administration.* ..... 12

*2. Plaintiff's mechanism to identify App users does not satisfy First Circuit requirements.* ..... 14

*3. Proceeding as a class action would not otherwise satisfy First Circuit requirements for administrative feasibility & would impermissibly require affidavits in violation of HTV's Seventh Amendment rights.* ..... 18

B. Plaintiff Has Not Met His Burden of Showing That a Class Action Will Generate Common Answers, or that Individualized Issues Will Not Predominate. ..... 20

C. Class Treatment is Not Superior to Individual Litigation. ..... 23

D. Plaintiff Has Not Met His Burden of Showing He is Typical of the Class. ..... 24

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AF Holdings LLC v. Doe*,
No. CV 12-07388, 2012 WL 12906122 (C.D. Cal. Oct. 2, 2012) .......... 16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 20, 23

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
12 F.4th 81 (1st Cir. 2021) .......... 20

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) .......... 11

*Castano v. The Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .......... 24

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 19, 20

*Crosby v. Social Sec. Admin. of U.S.*,
796 F.2d 576 (1st Cir. 1986) .......... 15

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) .......... *passim*

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*,
331 F.R.D. 675 (S.D. Fla. 2019) .......... 16

*In re Hulu Priv. Litig.*,
No. C 11-03764, 2014 WL 2758598 (N.D. Cal. June 17, 2014) .......... 11, 15, 23

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......... 3

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) .......... 20

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015) .......... 10, 11

*Kent v. SunAmerica Life Ins. Co.*,
190 F.R.D 271 (D. Mass. 2000) .......... 15

*Kirkman v. N.C. R.R. Co.*,
220 F.R.D. 49 (M.D.N.C. 2004) ....................16

*Lankford v. Carnival Corp.*,
No. 12-24408-CIV, 2014 WL 11878384 (S.D. Fla. July 25, 2014) ....................16

*Loughlin v. Vi-Jon, LLC*,
No. 20-cv-11555, --- F. Supp. 3d ----, 2024 WL 1347092 (D. Mass. Mar. 29, 2024) ....................12

*Manson v. GMAC Mortg. LLC*,
283 F.R.D. 30 (D. Mass. 2012) (Stearns, J.) ....................21

*Mantha v. QuoteWizard.com, LLC*,
No. CV 19-12235-LTS, 2024 WL 3912459 (D. Mass. Aug. 16, 2024) ....................11

*Martinez v. D2C, LLC*,
No. 23-21394-CIV, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ....................14

*Matamoros v. Starbucks Corp.*,
699 F.3d 129 (1st Cir. 2012) ....................14

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ....................23

*Schonton v. MPA Granada Highlands LLC*,
No. 16-12151, 2019 WL 1455197 (D. Mass. Apr. 2, 2019) ....................20

*Smilow v. S.W. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003) ....................17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................25

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ....................20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................10, 11, 20, 21

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000) ....................20

*Xavier v. Philip Morris USA Inc.*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011) ....................18

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ....................9, 12, 19, 23

# I. INTRODUCTION

Plaintiff seeks to certify a class with an extraordinary definition:

> [A]ll persons in the United States that (i) downloaded one of the Class Apps onto their mobile phone, (ii) enabled location permissions for the Class App **for at least 250 sessions**, and (iii) watched **at least ten (10) videos** between May 5, 2021 and April 16, 2024 (the "Class Period").

Memo. of Law in Supp. Mot. to Certify Class ("Mot.") 1 (emphasis added).[1] In a dramatic departure from earlier definitions, Plaintiff no longer seeks to represent individuals who used a Hearst Television Inc. ("HTV") mobile application ("App") for only one or 20 or 249 sessions, or those who watched only two videos, or any other flavor of App usage. *Compare* Second Am. Compl., ECF 79 ("SAC") ¶ 120 *with* ECF 22 ¶ 128; ECF 1 ¶ 118; ECF 76 at 1. In doing so, Plaintiff concedes that (i) even HTV, the purported "Videotape Service Provider", does not know the identity of its App users; (ii) the data sharing at issue in this case is in fact inherently *protective* of App users' privacy, and (iii) even *attempting* to identify potential class members and establish any violation of the Video Privacy Protection Act ("VPPA") would require this Court to compel the use of data not in HTV's possession or control and, even then, still engage in highly individualized inquiries.

It is Plaintiff's burden to prove that certifying a class is both appropriate under Rule 23 and administratively feasible. Among other things, to do so he must *prove* that when the HTV Apps transmitted geolocation (*i.e.*, latitude and longitude) that data uniquely and actually identified each specific class member. Plaintiff's "expert" concedes that this cannot be done using Plaintiff (or any single individual) as a representative example. Nor can it be done using common evidence in HTV's possession. Instead, only an individual assessment of each user's

---

[1] Plaintiff also seeks to represent two subclasses: one of Class members who also provided an email address to the Apps at the time of onboarding (the "Email Subclass"), and a second of Class Members who downloaded the Apps onto an Android device and "did not limit ad tracking" while using the Class Apps (the "AAID Subclass").

data can determine whether that user's geolocation information is sufficient to uniquely identify that class member and whether the transmitted information reveals that the class member *requested or obtained specific video material*. Plaintiff proposes that this Court undertake that individual assessment by, first, reverse engineering individual names of anonymous App users for whom HTV has at least 250 geolocation data points spanning a sufficiently long period of time; then, [redacted] (not identified in Plaintiff's Rule 26(a) Disclosures and not in the possession of HTV or its vendors); and then, [redacted], including testimony from each individual identified. *See infra* Parts II.C & IV.A.1. The First Circuit does not permit such an unprecedented exercise.

Class actions that entail "a line of thousands of class members waiting their turn to offer testimony and evidence on individual issues" are prohibited. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018). Plaintiff's proposal would force class members (if found) to not just stand in line, but navigate a veritable maze to try to prove that they are class members and that they have any claim. Indeed, the original class representative dropped out to avoid just such a "mini-trial". ECF 72 ¶ 19. Class-wide relief would require a trial for *every* putative class member. Plaintiff has proposed no method to de-anonymize HTV data on a class-wide basis, and thus no way to even identify potential class members, short of [redacted]—something that neither HTV, Braze, nor Google is alleged to have ever done—and then [redacted]. *See infra* Part IV.A. Nor has he proposed how VPPA claims could be *tried* on a class-wide basis using common evidence. *Id*. The Court would need to hold tens of thousands of trials on the circumstances of each putative class member's use of the Apps, their video viewing history, and

more. *See, e.g.*, *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("The point of the VPPA . . . is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos.").

Such as procedure is fundamentally incompatible with the VPPA, the requirements of Rule 23, and First Circuit law. Plaintiff cites no case in which a court sanctioned, let alone undertook, such an exercise. And it is not the superior method of proceeding here, where App users can proceed on an individual basis and avoid the complicated and privacy-*invasive* processes proposed by Plaintiff. The evidence about the only putative class members deposed to date—each of whom Plaintiff's expert has characterized as [redacted]—illustrate the folly of certification here. *See infra* Part II.B&C & IV.B&C. Class certification must be denied.

## II. BACKGROUND

### A. The HTV Mobile Apps and HTV's Use of Braze and Google.

HTV broadcasts local news and weather programming in 28 local markets and offers station-specific mobile phone Apps. Decl. of Michael Rosellini (attached to the Decl. of Andrea Butler ("Butler Decl.") as Ex. F) ¶¶ 5-6. The Apps provide live news and weather feeds and articles that may contain no video content, a single video, or multiple videos (with live or replayed content). *Id.* ¶ 7. No user is required to provide geolocation, email, or any other information to download or use the Apps or to view any content. *Id.* ¶¶ 8-9; Deposition & Errata Sheet of Michael Rosellini (Butler Decl. Exs. C & D) 52:2-24, 158:25-159:9, 110:12-20. Geolocation, email, or "Mobile advertising IDs" (as used herein, "AAIDs") are not collected automatically. Rosellini Decl. ¶¶ 10-12. Instead, users can choose to give HTV permission to use their location or email and to share their AAIDs for advertising. *Id.*; Deposition of Charles Therrien (Butler Ex. B) 93:15-98:8; Mot. 3-4.

To send push and email updates, HTV uses a software-as-a-service provider called Braze, which stores the information (including some geolocation and email) needed for those updates. Rosellini Decl. ¶¶ 13-16, 20. Braze acts entirely on HTV's behalf and cannot share HTV user data with others. *Id.* ¶¶ 22-23; *see also* Butler Decl. Ex. I §§ 3.4, 6.3. If a user permits HTV to use geolocation data "always" or when using the app, such data is sent to Braze when an App is "foregrounded" on a user's phone, even if no articles are accessed or videos viewed. Rosellini Dep. 118-120; Mot. 3-4. Users can enable or disable sharing geolocation data or AAID at any time. Rosellini Decl. ¶¶ 10-12. HTV does not have a record of when they do so. *Id.* ¶ 19, 32; Mot. 20. Braze does not store name or address. Rosellini Decl. ¶ 24.

HTV uses a third-party, Google Ad Manager ("GAM"), to serve advertisements that make free news and weather content possible. Rosellini Decl. ¶ 29; Rosellini Dep. 17:4-9, 18:24-19:21 & Errata. As described *infra* Part II.B.3, if permissioned, GAM uses AAIDs of App users to do so. Plaintiff has submitted no evidence that any data from HTV is retained by GAM, let alone for how long. *See* Dep. of Narseo Vallina-Rodriguez ("Vallina Dep.") (Butler Decl. Ex. E) at 318:13-17; Mot. 21; *see also infra* n.3.

B. <u>Plaintiff's Proposed "Common" Class Evidence.</u>

*1. Geolocation*

Plaintiff defines all class and subclass members by reference to those who had geolocation enabled in the Apps for at least 250 sessions. Mot. 1. He provides no methodology to de-anonymize that data to actually identify all individual class members.[2] Vallina-Rodriguez

---

[2] As used by Vallina-Rodriguez, [redacted] The latter, which is the subject of many of the papers on which Vallina-Rodriguez relies, [redacted]. Rep. ¶¶ 43-44, 48 & Subsections VII.A and VII.B. In order to "identify" class members under First Circuit law (and to prove a claim on the merits), "de-anonymization" is required, and HTV will use "identify" to mean "de-anonymize".

concedes that [redacted]. Instead—based solely on a review of academic literature positing an untested methodology—he opines that [redacted]. Even then, according to his literature review, [redacted]. Rep. of Narseo Vallina-Rodriguez ("Report" or "Rep.") (Butler Decl. Ex. J) Part VII & ¶ 84; Vallina Dep. 256:11-257:16, 258:14-259:7. Plaintiff claims the data needed for such analysis is stored by HTV in its Braze database.[3] Mot. 21. But the degree of, *inter alia*, [redacted]. Rep. ¶¶ 63, 65; Vallina Dep. 272:25-273:4, 375:2-8; Rosellini Dep. 56:19-57:14; 125:2-11; Rosellini Decl. ¶¶ 10-11, 19. And the processes by which geolocation data is sent to Braze and GAM differ (Mot. 2-8); there is no evidence of what was sent to GAM. *See supra* p.4.

*2. Email Addresses*

Plaintiff seeks to represent a subclass of App users whose email addresses were transmitted to Braze. Mot. 1. Despite having all applicable emails, Vallina-Rodriguez was not asked to conduct any analysis to support his theory that [redacted]. Rep. ¶¶ 67, 88 ([redacted]), 89 (same), 90-91, Figs. 13-15 ([redacted]

[3] Fact discovery in this case is closed and Plaintiff did not seek that information for any app users other than Saunders. He did not seek *any* discovery from GAM, claiming it would be inappropriate to do so prior to class certification (Mot. 21-22); he chose not to test his theory by seeking information from GAM relating to Saunders (as he did from Braze), despite the clarity of the schedule in this case. As a result, there is nothing beyond speculation that a class may be certified based on transmissions to GAM. Vallina Dep. at 319:5-12.

[redacted]) & pp. 41-42, Figure 16 ([redacted]); Vallina Dep. 129:17-130:3, 159:25-160:2. His own informal attempt to [redacted] is not in evidence; what's more, he says he [redacted]. Vallina Dep. 300:18-304:08. Plaintiff has offered no evidence as to the accuracy or reliability of the [redacted] admitting that [redacted]." Rep. ¶¶ 67 ([redacted]), 91, 107; Vallina Dep. 263:18-264: 11, 313:12-314:17, 339:4-340:15. And the actual record relied upon by Plaintiff is sparse at best: [redacted]. *See, e.g.*, Vallina Dep. 224:12-225:7, 227:16-22, 232:20-233:11, 235:25-237:20, 309:11-23; Rep. ¶ 102; Therrien Dep. 38:17-23; Rep. of Christian Dippon (Butler Decl. Ex. H) ¶ 56; Rosellini Decl. ¶ 17. Plaintiff has provided no basis to believe that each remaining email can be tied to a specific individual using a common method. *See, e.g.*, Vallina Dep. 224:12-226:22, 300:3-305:9.

Plaintiff's own email addresses illustrate the limitations of his proposed "method". One is [redacted]. Therrien Dep. 38:17-23. (Plaintiff and his expert disagree on how common it is to [redacted]. Plaintiff [redacted] (*id.* at 60:24-61:10), while Vallina-Rodriguez [redacted] (Vallina Dep. 310:19-22, *see also id.* 179:12-180:23, 311:3-9). The other, [redacted]. Therrien Dep. 48:12-50:2.[4] Former

[4] Rosellini also makes email and other information public for professional reasons; he lives with his wife, and he works from home some days. Rosellini Dep. 6:6-22, 7:3-5, 176:3-14, 186:22-188:15, 189:9-22 & Errata.

Plaintiff Saunders's email [redacted] is another example: it could belong to *any* Michele Saunders, [redacted]. Dep. of Michele Saunders (Butler Ex. A) 35:23-36:5. Plaintiff has not met his burden of demonstrating that purported email "lookup services" or anyone else would be able to accurately and reliably identify, *e.g.*, *which* "Michele Saunders" is *in fact* associated with the email address; this is true even if (contrary to any evidence) her email were accompanied by geolocation data that placed the email's user in [redacted], or at the [redacted] where Saunders lived during parts of the Class Period. *See* Saunders Dep. 29:4-31:16, 35:23-36:5, 88:3-6; Vallina Dep. 263:18-22, 313:12-15.

*3. Mobile Advertising IDs*

Plaintiff also seeks to represent a subclass of Android device users whose "mobile advertising IDs" (known as "AAIDs")—a string of numbers and letters designed to be shared with advertisers—were transmitted in addition to geolocation. Rosellini Dep. 73:8-74:8 & Errata; Rep. at 13, 87. The Apps send an AAID to GAM only if a user has granted the required permission, among other conditions. Rosellini Dep. 74:19-76:14 & Errata. An AAID is not associated with a name or address, only a device. Rosellini Decl ¶ 12; Rosellini Dep. 73:24-74:8; Decl. of James Vint (Butler Decl. Ex. G) ¶ 9. Users may reset, permanently delete, or "opt out" of having app developers share their AAID. Vint Decl. ¶¶ 9-11, 14 Vallina Dep. 318:18-319:4. The devices produced by Therrien and Saunders in discovery show that [redacted]. *See* Vint Decl. ¶¶ 21-29; Therrien Dep. 32:11-33:33, 109:1-5; Saunders Dep.75:14-76:11, 77:6-18, 94:1-7.

Plaintiff concedes that Braze never *receives* AAIDs (Mot. 20-21) and there is no evidence that GAM *retains* any AAIDs. Vallina Dep. 318:13-17; Rosellini Dep. 144:9-11 Errata; Mot. 21. As noted *supra* n.3, Plaintiff did not use discovery to seek any of the "evidence" he now asks this

court to assume exists. In other words, there is no way of knowing which putative class members had AAID enabled and shared with GAM, and when, so as to be members of the proposed subclass. Nor is there any evidence that GAM has any information that would connect users' AAIDs to other personal information sufficient to identify the individual who watched specific video content. Simply stating, without any citation to the record, that "Google was notified . . . what those specific videos were" (Mot. 7), does not make it so. *See also* Rosellini Decl. ¶ 31.

*4. Article URLs and Article IDs*

Plaintiff assumes that any video content accessed on an HTV App qualifies as "prerecorded" under the VPPA and can be identified from a URL or "content" or "article" ID. These assumptions are incorrect. ***First***, it is undisputed that the Apps do not transmit the title of any video. Rather, the transmission comprises the URL or random "ID" (a number) associated with *the article* selected by the App user. Mot. 7; Rosellini Dep. 81:5-10, 86:19-87:2; Therrien Dep. 121:14-122:12. Nor is the "video count" function in Braze tethered to any specific article or content identifier; it merely records that a video played without regard to the content. Rosellini Decl. ¶ 25-27. ***Second***, many of the articles available on the HTV Apps do not contain *any* video, and some contain *more than one* video. Rosellini Decl. ¶ 7. As a result, a third party cannot infer from a URL, Article ID, or Content ID if an article contains a video or whether a user watched any video within an article (let alone which of multiple videos). Plaintiff himself [redacted]. Therrien Dep. 121:14-122:12, 132:1-13. Plaintiff offers no means by which he could connect the number of videos viewed with any specific video title he (or anyone else) "requested or obtained". ***Third***, even when an article includes a video, the HTV Apps contain both live and prerecorded content. Rosellini Dep. 10:22-11:4; 11:25-12:5; Rosellini Decl. ¶ 7. Thus, even if a video were viewed and a video count registered, that does not mean that the user requested or obtained a "prerecorded video" as required by the VPPA.

C. Vallina-Rodriguez Report and Deposition.

The Report offers three entirely speculative opinions in support of class certification. As set forth in more detail in the accompanying Motion to Strike, none of these opinions is based on any analysis of data produced in discovery or otherwise available in this case.

- ***First***, that the HTV data held within the Braze database [redacted]. Rep. at 1, 15.
- ***Second***, that it is [redacted] *Id*. at 1, 33.
- ***Third***, that it is [redacted]. *Id*. at 1, 45.

Most significantly, the Report is notable in what it does not do: provide the Court with any method by which it can reliably identify class members and connect them with video content. *See generally* Motion to Strike. Instead, Vallina-Rodriguez opines that using the HTV data held within Braze to [redacted], admitting that he did not [redacted]. Rep. ¶ 74. Nor does he state exactly how he would do so if he had the relevant data. He concedes that it would not be possible without engaging in the sort of extended, multi-step analysis, using outside data sources, that would be insufficient for the merits under *Yershov* and for Rule 23 under *In re Asacol*. *See infra* Part IV.A; Vallina Dep. 256:11-14, 277:13-281:4. Even assuming the accuracy and applicability of [redacted]—which the Court need not do—Vallina-Rodriguez acknowledges that, at best, those studies argue that (1) [redacted], (2) [redacted]

[redacted], and (3) [redacted]. He acknowledges that any [redacted]. Rep. at 22 ¶¶ 61, 63, 67; Vallina Dep. 277:13-281:4. He dismisses any actual evidence in this case (whether geolocation or email) that calls these studies or his opinion into doubt as [redacted]. Vallina Dep. 118:4-8, 178:23-179:11, 310:19-22, 351:9-353:4, 224:16-225:7.

Vallina-Rodriguez's opinion that [redacted] is even more speculative (*see, e.g.*, ¶¶ 89-99). He provides no method for determining which potential class members had AAID sharing enabled or when, and he has [redacted] Dep. 318:13-17. He admits that [redacted] (or [redacted], Rep. ¶ 88), so that from the perspective of HTV and GAM, such information is ***not*** personally identifying. *See also* Rosellini Decl. ¶ 12. Having failed to determine whether such data even exists by requesting it during discovery, Plaintiff invites the Court to join in his speculation. There is no evidence in the record that GAM (or Braze or HTV) actually uses any [redacted] that he suggests could be used to [redacted]

## III. LEGAL STANDARD

Plaintiff bears the burden of "affirmatively demonstrat[ing] his compliance with [Rule 23]." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because Plaintiff seeks to certify a Rule 23(b)(3) class, this Court must perform a rigorous analysis to determine whether Plaintiff has proven that the proposed class meets the four "threshold" requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and Rule 23(b)(3)'s two additional requirements of predominance and superiority. *In re Nexium Antitrust*

*Litig.*, 777 F.3d 9, 17 (1st Cir. 2015). Plaintiff must also satisfy, by a preponderance of the evidence, Rule 23's implicit requirement that the class is "currently and readily ascertainable based on objective criteria." *In re Nexium*, 777 F.3d at 19 (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)); *see also Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2024 WL 3912459, at *4 (D. Mass. Aug. 16, 2024). A court may certify a class only if it "is satisfied, after a rigorous analysis," that all of Rule 23's prerequisites have been met. *Dukes*, 564 U.S. at 350-51. This "rigorous analysis" will "[f]requently" include "some overlap with the merits of the plaintiff's underlying claim." *Id*.

## IV. ARGUMENT

### A. Plaintiff's Proposed Classes Cannot Be Identified Without Individualized Fact Finding & Therefore Are Not Ascertainable or Administratively Feasible.

Plaintiff cannot meet his burden of demonstrating that the class proposed in this case is ascertainable or that litigating this as a class would be administratively feasible. Ascertainability is an implicit requirement of Rule 23 and requires a court to determine whether identifying class members and adjudicating class-wide claims is "administratively feasible" using "objective criteria", and "protective of defendants' Seventh Amendment and due process rights". *In re Nexium*, 777 F.3d at 19; *see, e.g.*, *In re Hulu Priv. Litig.*, No. C 11-03764, 2014 WL 2758598, at *13, *23 (N.D. Cal. June 17, 2014) (denying class certification in VPPA case where class not ascertainable and common issues did not predominate). "At the class certification stage, the court must be satisfied that, prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members." *In re Nexium*, 777 F.3d at 19.

Plaintiff also has not offered any "reasonable and workable plan for how [the case will be adjudicated] in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." *In re Asacol*, 907 F.3d at 58; *see also*

*Loughlin v. Vi-Jon, LLC*, No. 20-cv-11555, --- F. Supp. 3d ----, 2024 WL 1347092, at *13 (D. Mass. Mar. 29, 2024) (defendant has "the right to litigate its defenses against the claims of each putative class member"). Nor has he indicated how he will execute any plan with the limited discovery he sought in this case. Far from it. Whether to identify potential class members or to establish liability to any individual class member on the merits, Vallina-Rodriguez's Report and testimony illustrate that extensive analysis and individualized fact-finding will be needed, using multiple untested sources of outside data and testimony from individual class members.[5] This is precisely the sort of quagmire that *Asacol* warned against when it found that "[o]ne can only guess what data and documentation may be deemed necessary, what the formula will be, and how the claims administrator will decide who suffered no injury." *In re Asacol*, 907 F.3d at 52. Whatever the First Circuit might have recognized would suffice to *allege* a violation of the VPPA at the pleading stage, on class certification it is Plaintiff's burden to show that the Court can access and process the relevant data and connect it to a unique individual "easily" and without "too much yet-to-be-done, or unforeseeable detective work". *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016); *In re Asacol*, 907 F.3d at 52. That burden is unmet here.

*1. Plaintiff's Class Definitions and Proposed Mechanism for Administration.*

In light of Plaintiff's class definition, a class-wide trial would be impossible, and attempting to identify potential claimants would be a boondoggle. To fit the class definition, an App user must have "**enabled location permissions** for the Class App **for at least 250 sessions"** and "watched **at least ten (10) videos between May 5, 2021 and April 16, 2024** (the 'Class

[5] Here, because whether the data shared with Braze and Google personally identifies a customer is also one of the elements of proof of a VPPA claim, the ascertainability inquiry overlaps with the merits.

Period')". *See supra* p. 1 & Mot. 1 (emphasis added). To be a member of one of the two proposed subclasses, an App use must *also* have provided an email address to an App at the time of onboarding (the "Email Subclass") or downloaded an App onto an Android device and never limited "ad tracking" while using the App (the "AAID Subclass"). *Id*.

Merely stating that "every element of the Class definition is based on objective criteria" (Mot. 20-23) cannot meet Plaintiff's burden. Plaintiff provides no basis for determining, for example, whether and when a potential class member "enabled location permissions" for the HTV App "for at least 250 sessions". Mot. 20; *see also* Mot. 21 (citing none) and Sec. II.A (citing none). Spreadsheets showing the number of App "sessions" initiated by each account and how many videos were supposedly "watched" by an app user cannot suffice because they do not show who *had geolocation enabled* for those sessions (absent any record of when or with what frequency geolocation was enabled or disabled) or whether the 10 or more videos were viewed *during the class period* (because no time stamp is recorded with the "video view" counter). Rosellini Dep. 111:7-18, 160:10-161:13 & Errata; Rosellini Decl. ¶ 18, 25-28; Mot. 21. Plaintiff's expert conceded as much. Vallina Dep. 333:8-10, 324:20-326:19. Nor is there any evidence of the names of those potential class members who may fit the class definition(s). It is undisputed that neither HTV nor Braze nor Google currently has the names of potential class members. Instead, to ascertain who is a class member, and to prove any claim, Plaintiff asks the Court to engage in a complex, hypothetical series of numerous steps (far from "[redacted]" (Rep. ¶ 57)) to *potentially* identify an individual from geolocation data, without having reviewed actual data to confirm that such an exercise would work. *See, e.g.,* Mot. to Strike at 2-3; Rep. ¶¶ 57-59, 63, 64; Vallina Dep. 231:20-232:3, 279:4-12; Dippon Rep. at ¶¶ 27-33. Whether these steps ultimately can identify by name any or all potential class members is entirely speculative. Mot.

to Strike at 8-9; Dippon Rep. Indeed, using Saunders's 78 geolocation points from HTV's data in Braze, Vallina-Rodriguez could not [redacted]. Vallina Dep. 91:8-10, 350:21-352:17.

Plaintiff attempts to brush all this aside by suggesting that, instead of that complex process, the Court can [redacted]—presumably pursuant to court order—purportedly [redacted]. Vallina Dep. 226:11-22, 241:13-20; Rep. ¶¶ 93-94 & Fig. 16 ([redacted]). Although Vallina-Rodriguez cites no evidence that [redacted] (apart from hearsay), he expects the Court (or HTV at the Court's direction) to rely on [redacted] here. Vallina Dep. 292:12-295:13. But there is absolutely nothing in the record other than speculation and hearsay that this is in fact possible, or for what percentage of the HTV data this is likely to result in names, or the accuracy of the resulting information. *See* Mot. to Strike; Dippon Rep. [redacted]. Vallina Dep. at 256:11-14, 279:4-12. Such exercise is beyond what the First Circuit tolerates to ascertain a class or impose liability under the VPPA.

2. *Plaintiff's mechanism to identify App users does not satisfy First Circuit requirements.*

Plaintiff has not met his burden of demonstrating that there is an administratively feasible way for the Court to successfully identify potential class members in this case by name and distinguish injured from uninjured App users by reference to "objective criteria". *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012); *cf. Martinez v. D2C, LLC*, No. 23-21394-CIV, 2024 WL 4367406, at *6 (S.D. Fla. Oct. 1, 2024) (recognizing "barriers to identifying the class members may ultimately prove realistically insurmountable" but assessing ascertainability under lenient 11th Circuit standard). Plaintiff is incorrect in claiming that merely counting the number of geolocation datapoints and video plays is sufficient to "ascertain" class members. Mot. 21. To be ascertainable, the class definition must permit a court to decide, *inter alia*, *who*

will receive notice of a pending class. *See Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D 271, 278 (D. Mass. 2000) (citing *Crosby v. Social Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986)). Here, that requires de-anonymizing users' names, not just determining whether a user "has 250 geolocation points" (evidence of which is not in the record in any event). As set forth above, Plaintiff has provided no reliable way to do so. At best, Vallina-Rodriguez points to [redacted]. *See supra* 10-11; Mot. to Strike 11-12; Dippon Rep. ¶ 43. This would mean that between 8% and 44% of individuals theoretically identified would *not* be class members.

Conducting the analysis Plaintiff proposes also would not be administratively feasible. Identifying class members (and proving a VPPA violation) would require Plaintiff to prove that "spatio-temporal" data points identify a consistent residential and secondary address and that there are some names associated with those addresses through a speculative process using information not in HTV's possession. *See* Part IV.A.1 and Mot. to Strike. This would require validation, such as testimony from each putative class member. *Id.*; Mot. 22; Vallina Dep. 277:13-281:4. Plaintiff views no irony in asking this Court to attempt to reverse engineer the identities of HTV App users even though there is no evidence that HTV, Braze, or GAM has ever done so, a fact-finding exercise that would invade individuals' privacy *more* than the data sharing at issue. Even if it were not, a "reverse engineering" theory makes this case ill-suited for class certification. *See In re Hulu*, 2014 WL 2758598, at *21 (recognizing "proof issues that

might exist with multiple disclosures and tying a disclosure to a particular user" but denying class certification on other grounds because actual identities allegedly were disclosed directly).[6]

Class representatives Saunders and Therrien are illustrative of the challenges the Court faces. For example, Plaintiff claims that 75 out of the 78 geolocation points reflect Saunders's home address. Mot. 14. Assuming that is true, that address is a [redacted] (Saunders Dep. 29:4-31:20; 88:3-10), and Vallina-Rodriguez admitted that [redacted]. Vallina Dep. 351:9-352:17. Performing the analysis ex ante without the benefit of Saunders's deposition, the Court would have no way of knowing *who* in that building is portrayed in the data.[7] The same is true of Therrien's home address, the geolocation coordinates of which is not even reflected in the evidentiary record. Therrien Dep. 7:23-8:2, 9:12-15, 10:7-11:11, 41:23-42:10.

The only actual geolocation in the record associated with Therrien's purported App usage purportedly [redacted]. Therrien Dep. 137:21-138:1. Therrien testified that he [redacted]. *Id*. 132:1-13. Absent his testimony, there is no evidence that HTV, Braze, or GAM would be able to uniquely associate Therrien, as opposed to any other [redacted] (or anyone else), with that location. And Plaintiff does not use the WMUR App from his home daily or most frequently; nor does he [redacted]

---

[6] *See also, e.g.*, *In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*, 331 F.R.D. 675, 685 (S.D. Fla. 2019) (expert testimony based on use of "geographic probabilities" to identify potential class members not administratively feasible); *Lankford v. Carnival Corp.*, No. 12-24408-CIV, 2014 WL 11878384 (S.D. Fla. July 25, 2014) (expert methodology not administratively infeasible where it requires comparison to control group); *Kirkman v. N.C. R.R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004) (identifying class members would involve detailed individual inquiry);*cf. AF Holdings LLC v. Doe*, No. CV 12-07388, 2012 WL 12906122, at *1 (C.D. Cal. Oct. 2, 2012) (to establish jurisdiction "a showing that the geo-location tools are accurate in the 'majority' of cases or even that they are 50%–80% accurate is not adequate.").

[7] Of course, neither would HTV, Braze, or GAM at any point in time. *See* Rosellini Dep. at 142:19-144:12 & Errata.

[redacted]. Mot. 14; *see also* Therrien Dep. 8:3-9:8, 20:16-21:24, 52:5-12. 55:4-14; ECF 86 ¶ 3. There simply is nothing to suggest that geolocation data from Plaintiff's App use on its own would meet even Vallina-Rodriguez's criteria to uniquely identify Therrien. The same is true for email (*see supra* Part II.B.2) and AAID (*see supra* Part II.B.3).[8]

Here, unlike the *Smilow* case on which Plaintiff relies (which was not a privacy case and sought to extract only damages information from Defendant's own records), there is no expert opinion or testimony that a computer program could extract all the information needed to identify class members from HTV's data alone. *See Smilow v. S.W. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40-41 (1st Cir. 2003). [redacted]. Vallina Dep. 119:24-120:22, 122:4-13, 123:12-18; Rep. ¶ 79. Moreover, Plaintiff *acknowledges* that there are two variables needed to exclude App users from the class ***for which he has no data***: whether users kept (i) AAID and (ii) geolocation permissions enabled during the class period. Mot. 21. Plaintiff views this as "unproblematic", simply stating without any basis that "Braze and Google *likely* have this information". *Id*. As noted *supra*, this is untrue and unsupported by any evidence sought in discovery or otherwise. It also ignores that the proposed class also is defined in terms of identifying individuals who "watched at least ten (10) videos" *during the almost three-year proposed class period*. Plaintiff elides this important temporal fact in his Motion, stating that the data produced by HTV shows "how many videos were watched by each account". Mot. 21. But the video count information obtained by HTV and maintained within Braze is not time-stamped, and the data upon which Plaintiff relies includes

[8] The testimony necessary to potentially render AAIDs "personally identifying" (and to evaluate whether users had provided the written consent that is a defense to liability) would be similarly burdensome: individual testimony or forensic examination of potential class members' devices would be needed to determine whether and when AAIDs were enabled. And even then, [redacted]. Vint Decl. ¶ 26.

*all* video counts for individuals who used the App within a given period, regardless of whether those "views" were in the Class Period. Rosellini Decl. ¶ 25-27. Because there is no way of knowing what any App user's video count was during the Class Period unless they used the App *only* during the class period, a user's "10 videos watched" could mean that ***none*** of those videos were "watched" during the Class Period. Rosellini Decl. ¶¶ 18, 25-28; Vallina Dep. 324:7-325:12, 326:2-5. In other words, there is no way of identifying who meets the class definition.

*3. Proceeding as a class action would not otherwise satisfy First Circuit requirements for administrative feasibility & would impermissibly require affidavits in violation of HTV's Seventh Amendment rights.*

Beyond the lack of any administratively feasible way to even ascertain *whose* geolocation, video count, and email or AAID was shared with HTV vendors at all, Plaintiff does not provide any method to identify those potential class members who suffered an injury under the VPPA—*i.e.*, had information that identified them as having obtained specific video content. To meet Plaintiff's burden on class certification and the merits, Plaintiff must demonstrate that geolocation, email, or AAID would identify a specific, named App user *to Braze and/or GAM,* and that the shared data identified what prerecorded video content they obtained in the Apps—the only "personally identifiable information" under the VPPA. He has done none of this, and could do none of this absent actual or affidavit testimony from each of the tens of thousands of individuals (or more) that purportedly make up Class. Mot. 22. This is clear from Plaintiff's heavy reliance on the testimony of Saunders, Therrien, and Mr. Rosellini, and not geolocation data alone. *See, e.g.*, Mot. 14, 19-20. The First Circuit has recognized that proceeding as a class action is not appropriate where it would prevent a defendant from challenging each affiant's testimony, based on the Seventh Amendment and Due Process. *See In re Asacol*, 907 F.3d at 45; *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) (self-

identification by affidavit prohibited where based on "subjective memory" and defendant "would be forced to accept [those facts] without the benefit of cross-examination").[9]

On a motion for class certification, Plaintiff cannot rely on mere plausibility but must demonstrate "through evidentiary proof," *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), a means of assessing for each class member whether that class member's geolocation information was personally identifying (*see supra*) "at the time the video was viewed," *Yershov*, 820 F.3d at 484, and that they in fact accessed "specific [prerecorded] video materials" during the Class Period and not a live newscast or weather report. They would further need to establish that Braze or GAM could identify both them and the specific videos they watched, the circumstances of their consent (or purported lack thereof), and testimony about their use as to whether any of the defenses to liability under the VPPA apply. The VPPA claim pursued by Plaintiff on a class-wide basis therefore would require individualized testimony from each individual identified by the Court after an initial de-anonymization process as a putative class member. This renders class-wide treatment for each of the proposed classes facially infeasible.

In the end, Plaintiff's Motion and the Report invite this Court to speculate as to what *might* be possible by combining the data at issue with other data sources and analyzing it with unidentified "heuristics" and "algorithms." All of which would need to be confirmed by individual testimony from each putative class member, the veracity of which HTV has a Seventh Amendment and Due Process right to contest under *Asacol*.

[9] In *Asacol*, the plaintiff sought to satisfy an injury element through individual affidavits stating whether each class member would have purchased the generic drug. 907 F.3d at 52. The First Circuit rejected this scheme. It found that affidavits would not be able to "secure a favorable summary judgment ruling disposing of the issue" and "would be inadmissible hearsay at trial," resulting in a "fatal gap in the evidence," *id*. at 53, and a "trial in which thousands of class members [would] testify." *Id*. at 57-58. It concluded that it thus was not an "occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act," but rather demonstrated the unsuitability of proceeding on a classwide basis. *Id*. at 53.

### B. Plaintiff Has Not Met His Burden of Showing That a Class Action Will Generate Common Answers, or that Individualized Issues Will Not Predominate.

If, as here, a claim cannot be resolved on behalf of an entire class without examining the circumstances of each class member, Rule 23's commonality requirement bars class certification. *Dukes*, 564 U.S. at 350. If representative proof cannot generate a class-wide answer regarding liability, then the goal of efficiency underlying Rule 23 would be frustrated, and the case would devolve into a series of mini-trials, undue effort, and jury confusion. *Schonton v. MPA Granada Highlands LLC*, No. 16-12151, 2019 WL 1455197, at *10 (D. Mass. Apr. 2, 2019). As a result, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).

Plaintiff also has the burden to satisfy the predominance requirement, which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Satisfying predominance is "even more demanding" than Rule 23(a)'s commonality requirement. *Comcast Corp.*, 569 U.S. at 33. The predominance inquiry begins by identifying common and individual questions, and then weighs whether the individual questions overwhelm the common questions. *See, e.g.*, *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (citations and quotation marks omitted).

Here, even if Plaintiff *could* identify some issues susceptible to common proof, such as whether HTV qualifies as a "video tape service provider" under the VPPA, resolution of these common issues would not "drive the resolution of the litigation," *Dukes*, 564 U.S. at 350, and would not predominate over individual issues. Only individual inquiry can answer the fundamental question of whether the information transmitted was personally identifiable *with respect to each individual class member at the time it was shared*. In other words, "[t]he glue that purports to bind the proposed class," *Manson v. GMAC Mortg. LLC*, 283 F.R.D. 30, 37 (D. Mass. 2012) (Stearns, J.), is the disclosure of personally identifiable information within the meaning of the VPPA. Certification is inappropriate, especially given the predominance of individualized elements of disclosure and personally identifiable information.

As set forth in Part IV.A above, Plaintiff has not met his burden of establishing that common proof will determine a substantive element of his VPPA claim: that HTV gave a third party information about the circumstances of a class member's use of the HTV App, such that they could accurately and uniquely identify that class member from all other persons by name, along with the name of the specific video requested. Plaintiff certainly provides no methodology using common evidence for this element. Vallina-Rodriguez makes this plain: determining whether a transmission was in fact personally identifying cannot be done from the data held by HTV (geolocation and email addresses) alone. It would require considerable effort and multiple data sources, and it likely *still* requires individualized testimony from each putative class member that the information disclosed in fact identified him or her (and specific video content).

To name just a few of the many distinctions among putative class members that would make identification difficult to varying degrees and/or subject them to different defenses:

1. Class members whose home/work are nearby or co-located. Vallina Dep. 211:18-23, 213:15-21 ([redacted].
2. Class members who [redacted] ([redacted]) or whose work ([redacted]) does not involve a single, static workplace. *Id.* at 191:18-192:4 [redacted]; 372:12-22 ([redacted]; Saunders Dep. 32:15-34:10 *see also* Vallina Dep. 362:19-363:5; 231:17-232:19 ([redacted]).
3. Class members who live in multi-floor apartment buildings ([redacted]), university campuses, rural areas, or urban areas. *Id.* at 351:16-352:8 [redacted]); 366:10-18; 201:8-11; 217:13-218:17 [redacted]).
4. Class members who access HTV Apps on a shared device. *Id.* at 180:17-23.
5. Class members who have less than one month of geolocation data. Rep. ¶ 84 ([redacted]).
6. Class members for whom geolocation data was not received by Braze or Google during the Class Period and who therefore may be subject to a statute-of-limitations defense. While the Class Definition requires that each class member played videos "during the Class Period", its 250-sessions requirement is not similarly limited.

The putative class members highlighted by Plaintiff illustrate the individualized nature of the relevant facts: different third-party data sources and individual testimony would be needed to even try to de-anonymize the HTV data associated with each person, and each has unique facts that make him or her more or less identifiable. *See supra* pp. 9-10, 13-14, 16-17. As set forth above, Therrien makes [redacted]. Therrien Dep. 7:23-8:2, 10:11-11:10, 20:16-21:24, 48:12-50:2; 52:5-12, 55:4-14, 119:19-121:1, 121:14-122:23; Vint Decl. ¶¶ 21-27. Prior class representative Saunders [redacted]

[redacted]. Saunders Dep. 29:4-31:2, 88:3-10, 106:4-13, 116:8-19, 150:12-23. Distinguishing Therrien, Saunders or those like them from any other [redacted] alone would be impossible absent the sort of "unforeseeable detective work" that would render any "common evidence" not even personally identifiable information under the VPPA. *Yershov*, 820 F.3d at 486.

Such an exercise would necessarily result in the "line of thousands of class members waiting their turn to offer testimony and evidence on individual issues" that the First Circuit prohibits. *Asacol*, 907 F.3d at 51; *see also Yershov*, 820 F.3d at 486. It is also incompatible with the very idea of "PII" as used in the VPPA. As one court observed, "[i]f nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181 (S.D.N.Y. 2015) (dismissing VPPA claim). But that is exactly what Plaintiff proposes: starting with ***250 data points***, over an unspecified period of time (but at least one month) and using some unspecified methodology and additional data sets (from online commercial databases to individual testimony). Such exercise is not consistent with the requirements of Rule 23. *See In re Hulu*, 2014 WL 2758598, at *22 (no "predominance" where subclassing does not address issues of ascertainability and identify class members).

C. Class Treatment is Not Superior to Individual Litigation.

Plaintiff has not demonstrated that class treatment will be superior to individual litigation here. The "nonexhaustive list of factors pertinent" to superiority includes "the interest of members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 615-16 (quoting Fed. R. Civ. P. 23(b)(3)). Here, both of these factors—and others—demonstrate that class treatment is not superior here.

***First***, Plaintiff seeks $2500 in statutory damages for each violation of the VPPA. SAC ¶¶ 133, 138. Plaintiff takes the position that each video view is a violation of the VPPA, and the class definition includes only individuals who watched at least 10 videos. Mot. 1. Although HTV disagrees, Plaintiff apparently believes that each class member is entitled to at least $250,000 for their use of the HTV App. This theory, coupled with the VPPA's allowance of reasonable attorney's fees, provides sufficient incentive for a potential claimant to pursue an individual action. *See, e.g.*, *Castano v. The Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). ***Second***, permitting only individual claims also would be the superior method of protecting HTV App users' privacy and HTV's constitutional rights: it would mean that only those App users who wish to be de-anonymized would pursue a claim, and they could control how and under what circumstances their identities were revealed. If an individual such as Plaintiff believes he has been injured under the VPPA, that claim can be addressed on an individual basis with the individualized proof necessary to try to prove a violation. HTV's Seventh Amendment right to cross-examine each claimant in front of a jury would be preserved. Such individual proceedings would be superior to a class proceeding on these facts.

D. <u>Plaintiff Has Not Met His Burden of Showing He is Typical of the Class.</u>

Finally, Plaintiff's claims are not typical of the class. His own expert admitted that [redacted]. Vallina Dep. 120:23-121:18. And Therrien is not typical for three additional reasons. ***First***, it now appears that he lacks Article III standing to pursue any claim under the VPPA in this Court, both because he [redacted] (Therrien Dep. 81:3-86:1, 95:22-97:19, 115:8-116:17, 119:13-18; ECF No. 68 ¶ 18), and because he does not consider his viewing of WMUR news and weather content to be private. "[U]nder Article III, . . . Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may

sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiff has argued that the VPPA is designed to protect an individual's privacy with respect to what prerecorded videos they watch. But here, Plaintiff testified that he [redacted]. Therrien Dep. 107:7-109:13. Under such circumstances, any theoretical privacy interest reflected in the VPPA is irrelevant: Plaintiff cannot have been concretely harmed if he himself does not treat the information protected as private. "An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)", and therefore lacks standing. *TransUnion*, 594 U.S. at 427-28. ***Second***, Plaintiff's deposition testimony made plain that his experience is sufficiently atypical of other class members as to render him a poor substitute for absent class members. As that testimony illustrates, it is unlikely that the geolocation data purportedly shared with Braze or GAM could have identified Plaintiff on their own, because for most of the Class Period, Plaintiff [redacted]. Therrien Dep.7:23-11:11, 15:5-17:8, 132:1-13, 137:21-138:1; ECF 85 Ex. 36 (HTV 0000633). Vallina-Rodriguez provided no way to determine that that [redacted] and did not try to do so. Vallina Dep. 130:21-131:16. There is no data in the record that would permit him to do so. *Id*. Because he is subject to the fatal defense of lack of standing and other serious defenses, Plaintiff's claims are not typical of the class.

## V. CONCLUSION

For the foregoing reasons, HTV respectfully requests that the Court deny the Motion.

Pursuant to Local Rule 7.1(d), HTV requests oral argument on the Motion.

Dated: November 8, 2024

Respectfully submitted,

*/s/ Matthew Greenfield*

Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen Hauser*
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

*Admitted Pro Hac Vice

*Attorneys for Defendant Hearst Television Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on November 8, 2024.

*/s/ Matthew Greenfield*
Matthew Greenfield