**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHARLES THERRIEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>*v.*<br><br>HEARST TELEVISION, INC.<br><br>Defendant. | Case No. 1:23-cv-10998-RGS<br><br>Leave to file granted on February 13, 2025<br><br>Hon. Richard G. Stearns |

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF SUMMARY JUDGMENT**

Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Television Inc.*

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................2

A. No Reasonable Jury Could Find the Information Disclosed to Braze or GAM Identified Plaintiff and the Specific Video Materials He Viewed. ..........................2

1. Geolocation ........................................................................................ 3

2. Email/AAID ........................................................................................ 3

3. COID/URL/Video Category.................................................................... 5

B. No Reasonable Jury Could Find that HTV Knowingly Disclosed "PII".................6

C. Disclosures to Braze and GAM Were in the Ordinary Course of HTV's Business. ........................................................................................................8

D. The First Amendment Bars Plaintiff's Claim Here. ...............................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484 (1996)........................................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................2

*Burdette v. FuboTV Inc.*,
No. 23 C 10351, 2024 WL 2831466 (N.D. Ill. June 4, 2024)........................................8

*Edenfield v. Fane*,
507 U.S. 761 (1993)........................................10

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)........................................4

*In re Hulu Priv. Litig.*,
No. C 11-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)........................................2, 6, 7

*Mile Road Corp. v. City of Boston*,
345 Mass. 379 (1963)........................................9

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995)........................................10

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024)........................................10

*Smith v. Daily Mail Publ'g Co.*,
443 U.S. 97 (1979)........................................10

*Soitec, SA v. Silicon Genesis Corp.*,
No. 99-10826, 2002 WL 34453284 (D. Mass. Feb. 25, 2002)........................................6

*Sterk v. RedBox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014)........................................8, 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................9

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017)........................................4

*Vives v. Fajardo*,
472 F.3d 19 (1st Cir. 2007)....................2

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015)....................10

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016)....................2, 6

**Statutes**

18 U.S.C. § 2710(a)(3)....................1

## INTRODUCTION

Plaintiff's opposition focuses on geolocation data—but not *his* geolocation data—and theoretical harms of data sharing unrelated to the purpose of the VPPA. But the motion to dismiss stage has passed, and Plaintiff's theories do not account for the undisputed evidence about Therrien. He therefore cannot create a genuine issue of material fact. He admits as much by making two key concessions—[redacted] (Opp. 16) and any identification cannot be done without third party sources (Opp. 1-2. 22, PSOF ¶¶ 76, 144). [redacted]. Nor did HTV disclose any specific video materials related to Therrien. *See infra* Part A. This should end this case: As to Therrien, no reasonable jury could find HTV violated the VPPA. There are additional reasons as well.

This case concerns two independent sets of transmissions—to Braze and to GAM. There is no dispute that Braze is HTV's vendor to fulfill requests for notifications and email updates relating to local news and weather. As a result, the VPPA permits disclosure to Braze. *See infra* Part C. As to GAM, there is no evidence that the information sent was anything but transient, available to GAM for milliseconds. There is no evidence that GAM ever had more than one geolocation for Therrien or that GAM could make any of the connections Plaintiff describes as necessary to (i) identify him and (ii) connect him to specific video materials. *See infra* Part A.

Plaintiff therefore pivots to a new theory: Geolocation need not be capable of revealing users' names to be actionable. Opp. 7. This theory ignores the VPPA's text, which applies only to "information which *identifies a person* as having requested . . . specific video materials . . . ." 18 U.S.C. § 2710(a)(3) (emphasis added). *See infra* Part A. Regardless, Plaintiff points to no evidence that HTV knowingly transmitted PII; HTV did not know Braze or GAM could identify Plaintiff and the specific videos he played from the information sent to them. *See infra* Part B. And Plaintiff

ignores Supreme Court precedent that sets a high bar for restricting even commercial speech consistent with the First Amendment. The VPPA, as applied to Hearst, does not clear that bar. *See infra* Part D.

## ARGUMENT[1]

### A. <u>No Reasonable Jury Could Find the Information Disclosed to Braze or GAM Identified Plaintiff and the Specific Video Materials He Viewed.</u>

Plaintiff acknowledges that a disclosure supports his VPPA claim only if it identifies Therrien alone. Opp. 5. He admits that a [redacted]. DSOF ¶ 185. As *Yershov*, *In re Hulu* and other cases recognize, data other than name and address are PII under the VPPA only if they are disclosed with a way to use that data to identify someone, or if disclosed to someone who *already has* information that could identify the plaintiff. Illustrations in the case law include "[r]evealing a person's social security number to the government," *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016); a referee's description of "No. 12 on the offense," which identifies the player to "everyone with a game program," *id.*; and "disclosing a unique identifier and a correlated look-up table," *In re Hulu Priv. Litig.*, No. C 11-03764, 2014 WL 1724344, at *11 (N.D. Cal. Apr. 28, 2014). Plaintiff's novel conception of PII stretches the term, for instance by including an office location disclosed to someone with no way of knowing who worked in that office. *Compare* Opp. 14 *with* PSOF ¶ 92. And there is no evidence that Braze or GAM could identify *Plaintiff* from geolocation, email (Braze only), or AAID (GAM only).

[1] Submitted herewith is a Reply Statement of Undisputed Material Facts that sets forth HTV's original statements of facts, Plaintiff's responses with HTV's reply ("DSOF"), and Plaintiff's "Additional Facts" with HTV's responses ("PSOF"). As set forth in detail in that Reply, there are no *material* facts *genuinely* in dispute in this case. *See, e.g.*, DSOF ¶¶ 17, 164, 185; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiff cannot rely on inadmissible evidence, "conclusory allegations, improbable inferences, and unsupported speculation" to oppose summary judgment. *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007) (citation omitted).

**1. Geolocation**

It is undisputed that [redacted]. Opp. 2. Even if there were evidence that [redacted] (which there is not), the record provides no hint as to what those locations would show, or that Braze or Google could associate them with Plaintiff. In fact, [redacted] does not identify him under any theory: as Plaintiff admits, it is (at best) [redacted]. Opp. 2, DSOF ¶¶ 79, 81. While Plaintiff argues that [redacted][2] (Opp. 11), the relevant analysis is the opposite: if someone received the data in the record and thereby learned that an individual had used an HTV App from [redacted], the recipient of that information would not know that the user is Therrien.[3] As the Court has recognized, even if the geolocation in evidence showed residence—which it does not—that would not identify Plaintiff, since [redacted]. Opp. 3; DSOF ¶¶ 38-42, PSOF 119-121; *see also* ECF No. 136 at 13. Even if Plaintiff's expert were correct that geolocation can identify a person to the extent it discloses *both* the person's home *and* work address, [redacted]. MSJ 13-15; DSOF ¶¶ 20-33, 38-42, 65-67; PSOF ¶¶ 119-121.

**2. Email/AAID**

Plaintiff falls back on an argument that applies to Braze only: that Braze also received Plaintiff's email. Plaintiff appears to argue both that email is "*per se* identifying under the VPPA"

[2] The VPPA does not protect information about someone's [redacted] (Opp. 3); it only prohibits identifying someone *as having obtained specific video materials.*

[3] Opp. 7-13, which does not analyze any evidence relating to Therrien, is irrelevant and provides no insight into whether a reasonable jury could find the elements of a VPPA claim met here. It could not.

and that email data without geolocation is "incomplete" and *cannot* be used to identify Plaintiff. Opp. 13. Plaintiff is wrong either way.

Plaintiff's argument that an email lets someone "directly contact . . . its owner", is belied by his admissions that [redacted]. DSOF ¶¶ 46, 48. The VPPA purportedly protects a privacy right, which is personal to an *individual*. And the authorities on which Plaintiff relies either opine on what *might* be PII under the VPPA at the pleading stage (*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017)) or in contexts of other statutes with different definitions of "personal information" (and not "personally *identifying* information") (*e.g.*, the CCPA or the DPPA at issue in *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017)). None of these sources stand for the proposition that email is *per se* identifying. *See also* MSJ 19. Academic studies describing the *possibility* of linking email to names (Opp. 14) do not substitute for admissible factual evidence that *Therrien's* email could have been used by Braze to identify *him*. There is none. Instead, Plaintiff relies on [redacted]. Opp. 2; PSOF ¶ 110.

The same is true for AAID and GAM: there is no evidence to permit a jury to find that the AAIDs associated with Therrien's device from the relevant time period (which are unknown, DSOF ¶¶ 58-62, 77) would identify Therrien. Nor is there evidence that GAM, in the moment of temporarily receiving AAID, could have connected to "external data sources", which Plaintiff argues would be necessary to associate AAID with any specific individual.[4] Opp. 14. Plaintiff

[4] Plaintiff's expert testified that [redacted] Butler Decl. Ex. D at 33:16-34:2. There is no evidence that computers at Braze or GAM were capable of taking "network communications" and, *e.g.*, conducting a Google search, providing information to data brokers, or anything else Plaintiff claims would render data "identifying".

argues that an AAID is "unique both to a specific device and user" (Opp. 15 (citations omitted)), but admits that not every AAID on Plaintiff's device belongs to Plaintiff. *See, e.g.*, DSOF ¶ 59.

### 3. COID/URL/Video Category

Plaintiff abandons any argument that HTV shared precise videos Therrien viewed. Opp. 29. He relies instead on HTV's disclosure of article COIDs and URLs. But there is no dispute as to four key facts that prove that neither COIDs nor URLs identify "specific video content", so no reasonable jury could find liability.

- ***First***, Plaintiff admits that a [redacted]. *See, e.g.,* Opp. 20 (acknowledging a single COID is sent "when a consumer accesses an article with multiple videos"); DSOF ¶¶ 105-24, 204-06; PSOF ¶ 16; Butler Decl. Ex. D at 130:17-131:3 (HTV Apps have [redacted]), 131:7-15 [redacted]).
- ***Second***, Plaintiff admits that HTV has, but did not send, [redacted]. Opp. 17; DSOF ¶¶ 105, 115-19, 122-24, 209, 247. That there are instances when the [redacted] (Opp. 20, PSOF ¶ 17) does not contradict the admission that [redacted] (DSOF ¶¶ 205, 206).[5]
- ***Third***, Plaintiff admits he [redacted]. DSOF ¶¶ 24-26. Thus, when HTV transmitted a [redacted] The VPPA protects an individual's privacy with respect to which video materials they have specifically *selected* (whether or not they watched them), but Therrien admits that a COID does not imply that he selected any video content. Imposing liability for this disclosure would read the "specific video materials" language out of the VPPA and distort the statute into one protecting the privacy of individuals' article-browsing history.
- ***Fourth***, Plaintiff's argument that (i) [redacted] Opp. 20) and (ii) disclosures to Braze and GAM purportedly included [redacted] (Opp. 19, citing PSOF ¶ 19), is irrelevant, because [redacted]. Opp. 19-20; Butler Decl. Ex. D at 281:24-285:15; Kopel Decl. Ex. 93 ¶¶ 86-87; PSOF ¶¶ 16, 19, 21, 49. These arguments do not apply to Therrien, [redacted]. DSOF ¶¶ 21, 23, 27. There is no evidence that any [redacted].[6]

---

[5] It is undisputed that [redacted]. *See, e.g.*, DSOF ¶¶ 212-215, 218; *see also* ECF No. 136 at 12 n.5. There are [redacted] at all. DSOF ¶¶ 207, 208, 83; Butler Decl. Ex. A ¶¶ 47, 48, 51.

[6] Reardon's testimony with respect to [redacted] is not only irrelevant, he also testified that [redacted] (275:15-24) and [redacted]. Speculation (*see, e.g.*, PSOF ¶¶ 16, 19-21) and testimony outside the topic of

**B. <u>No Reasonable Jury Could Find that HTV Knowingly Disclosed "PII".</u>**

Plaintiff argues that HTV "knowingly" disclosed PII because HTV's Privacy Notice [redacted]. This argument misstates the evidence. Nowhere does the Privacy Notice state that [redacted]. Opp. 21; PSOF ¶ 162. Instead, [redacted]. In any event, even information "about" a person is not necessarily "PII" under the VPPA (or personally identifying), as the categories at the page cited by Plaintiff indicate.

Nor does Plaintiff present evidence to challenge the key undisputed fact on the "knowledge" requirement: HTV has never believed that Braze or GAM could reverse-engineer users' PII from the data at issue. Plaintiff dismisses HTV's argument as "silly" but does not indicate how Plaintiff could establish VPPA liability without such reverse-engineering. Opp. 22; *see also* ECF No. 136 at 15. *In re Hulu*, which Plaintiff tacitly acknowledges is directly on point, does not "conflict with *Yershov*" as Plaintiff argues. Opp. 22. *Yershov* was decided on a motion to dismiss, and the Court assumed the truth of the allegations with respect to the ability of geolocation to identify individuals. *Yershov* gives no guidance in light of the record here, with the benefit of discovery and Plaintiff's own expert demonstrating that it is NOT true of the data here: an ordinary person with [redacted] (or even dozens of points) would *not* be able to identify an individual. *See supra* p. 3; MSJ 13-15; ECF No. 136 at 13. Here, as in *In re Hulu*, there is no evidence that HTV knew that Braze or GAM would combine information sent over time to conduct the sort of analysis Plaintiff's expert proffers, no evidence that the data shared would permit them

Defendant's expert Reports (PSOF ¶¶ 17-18, 22, 32, 78-79, 98, 168-69) is also inadmissible. *See, e.g.*, *Soitec, SA v. Silicon Genesis Corp*., No. 99-10826, 2002 WL 34453284, *1 (D. Mass. Feb. 25, 2002).

to do so, and no evidence that the data could identify a user's *specific video content*. Plaintiff admits that [redacted] (DSOF ¶¶ 170-71, 228-29) and that [redacted] (*id.* ¶¶ 209, 247). Even under Plaintiff's theory, more than "little or no extra effort" would be needed for anyone to (i) collect sufficient geolocation data points, (ii) identify a specific person from that data, and (iii) associate specific *videos* with that person.

There is no evidence that GAM ever *had* more than a single geolocation or URL/COID (or video category). There is no evidence that GAM ever *kept* sufficient geolocation data points to identify Plaintiff, even by Plaintiff's reckoning of how many data points suffice. There is no evidence that GAM could associate any AAID with Plaintiff ([redacted]), or that GAM was able to associate AAID with any other information sent while Plaintiff used the WMUR App. *See, e.g.*, DSOF ¶¶ 229-30, Butler Decl. Ex. D at 150:1-21 ("I don't know if GAM tries to de-anonymize anyone"). Absent evidence that GAM was storing these transmissions, let alone in a way that permitted the connections Plaintiff posits, there is no basis for any jury to find that GAM received PII under the VPPA. *See In re Hulu*, 2014 WL 1724344, at *11.

Plaintiff's argument as to Braze fares no better. As set forth *supra* Part A, Plaintiff cannot show that Braze receives *any* PII, and there is only speculation, not evidence, as to [redacted]. DSOF ¶¶ 78, 178, 192-95, 250; *see also* Butler Decl. Ex. D at 151:17-152:5. There is no evidence as to [redacted]. There is no evidence that Braze received any [redacted]. *See supra* p. 5; PSOF ¶¶ 16, 19-21, 49. And Plaintiff admits that HTV does not know whether [redacted]. PSOF ¶ 185. As a result, there

is no basis for a jury to find that HTV ever knew that the data sent to Braze could have permitted it to identify Plaintiff *and* specific video content.

**C. <u>Disclosures to Braze and GAM Were in the Ordinary Course of HTV's Business.</u>**

Plaintiff admitted the facts showing that HTV's disclosures to Braze and GAM were incident to the "ordinary course of business"—that is to process requests or fulfill orders—and he provides neither facts nor law to counter them. *See, e.g.*, MSJ 22-26; DSOF ¶¶ 11-16, 129-38, 142, 153-57, 175-77, 191-95, 203a, 204, 221-25, 234-46. With respect to GAM, Plaintiff argues only that HTV "could have [redacted] without disclosing Class Members' PII". Opp. 24. But Plaintiff offers no factual support for that statement, and there is none in the record. In any event, the VPPA only requires that a disclosure be "incident to" the "ordinary course of business"; it does not require that the disclosure be "necessary for" the business purpose. Plaintiff cites no case to the contrary. In *Sterk v. RedBox Automated Retail, LLC*, the Seventh Circuit explicitly recognized that even purported "over disclosures" for the permitted business purposes were permitted by the VPPA. 770 F.3d 618, 625-26 (7th Cir. 2014).[7] By using the WMUR App, Plaintiff sought and received free local news and weather programming. In order to respond to Plaintiff's requests for that free content, HTV included advertising. The VPPA permits it to do so without incurring liability even if it shares information that the VPPA would otherwise prohibit.

Plaintiff's argument with respect to Braze is even weaker. Plaintiff acknowledges that [redacted]. Opp. 25. This concession notwithstanding, he argues—without any basis—that [redacted]

[7] Plaintiff resists *Sterk*'s holding by relying on cases such as *Burdette v. FuboTV Inc.*, No. 23 C 10351, 2024 WL 2831466, at *5 (N.D. Ill. June 4, 2024) that misread *Sterk*. Opp. 24 n.1. *Sterk* did *not* hold that "marketing" or "advertising" purposes were outside the "ordinary course of business". The *Sterk* court instead recognized that the phrases "request processing" and "order fulfillment" are not limited to any particular type of requests or orders but would involve any of the sort of interactions that might have been possible in the ordinary course of interacting with customers. *Id*. at 625. Thus "customer service" was included even though not specified by statute. *Id*.

[redacted] or used for "analytics". *Id*. But Plaintiff's opinion ignores both (i) the common-sense proposition that [redacted] and (ii) the undisputed testimony in this case (which even Plaintiff cited, *see* PSOF ¶¶ 37, 40, 46) that [redacted]. DSOF ¶¶ 153, 155, 157. Plaintiff [redacted]. DSOF ¶¶ 68-73. While those [redacted] (*see, e.g.*, DSOF ¶¶ 153a-154, 174; PSOF ¶ 30; Butler Decl. Ex. B at 96:18-5, 167:10-168:18, 168:25-169:8), even if there *were* evidence that they were also used for other purposes (none is in the record), the VPPA does not require that the *sole* purpose of a disclosure be "order fulfillment" or "request processing", and Plaintiff cites no support to the contrary. *See also Sterk*, 770 F.3d at 625. These disclosures were within the "ordinary course of business" and permitted under the VPPA.[8]

**D. The First Amendment Bars Plaintiff's Claim Here.**

Plaintiff seeks to elevate the stakes by mischaracterizing Hearst's argument as a facial rather than as-applied challenge, and to reverse the burden of proof, which rests with him. *See* Opp. (citing *Mile Road Corp. v. City of Boston*, 345 Mass. 379 (1963)). Plaintiff is wrong on both counts, and fails to address the unconstitutional application he seeks *here* and his evidentiary burden in doing so. That the VPPA is unconstitutional as applied, assuming Hearst's speech is commercial,[9] follows from a series of Supreme Court cases that set a high burden for parties seeking to restrict such speech. *See* MSJ 27-30 (citing *44 Liquormart, Inc. v. Rhode Island*, 517

[8] In arguing he has Article III standing (Opp. 26), Plaintiff relies on decisions addressing (at the motion to dismiss stage without discovery) whether a bald violation of the VPPA can ever give rise to Article III standing. Each was decided prior to the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Nothing in the VPPA was intended to elevate the viewing of local news and weather reports to a protected privacy interest, and *TransUnion* makes plain that a plaintiff who is not seeking to remedy any actual harm does not have standing.

[9] Therrien's brief does not meaningfully dispute that passage of the VPPA was motivated by, and targeted at, non-commercial speech. MSJ 27. Strict scrutiny should apply.

U.S. 484, 505 (1996); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995); *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). They must offer evidence, not "speculation or conjecture," and show through that evidence that the alleged harm to Plaintiff is "real" and will be "alleviate[d] to a *material degree*" by the application sought. *Edenfield*, 507 U.S. at 770-71 (emphasis added). Therrien does not address these cases. He points to no studies, reports, evidence in this case, or before Congress, to explain how the VPPA would "materially advance[]" Congress' stated interest in protecting privacy by applying the law on these facts. This is fatal to Therrien's claim.

Therrien further acknowledges the VPPA is underinclusive, but defends the lack of "fit" by observing that underinclusivity is not always fatal. Opp. 29-30. But as explained in the very case on which Therrien relies, "underinclusivity raises a red flag" because it may "reveal that a law does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015); *see id.* (describing *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104 (1979), which found unconstitutional a law that prohibited newspapers, but not electronic media, from releasing the names of juvenile defendants; this "suggested that the law did not advance its stated purpose of protecting youth privacy"). That's the case here. Hearst is free to disclose potentially highly revealing information about Therrien's viewing history, so long as it concerns live broadcasts. At the same time, the law is overinclusive because it prohibits Hearst from disclosing Therrien's history of viewing anodyne videos (like weather reports) that reveal nothing private. The lack of fit shows the law does not directly and materially advance the government's interesting in protecting "the sanctity of personal privacy" under the third prong of the Central Hudson test, *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024), as is an independent basis to conclude the VPPA would be unconstitutional as applied to Hearst on the record here under the fourth prong.

Dated: March 4, 2025

Respectfully submitted,

*/s/ Matthew Greenfield*
Matthew Greenfield (Mass. BBO No. 684596)
Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
matthew.greenfield@hearst.com
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*
*Attorneys for Defendant Hearst Television Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 4, 2025.

*/s/ Matthew Greenfield*
Matthew Greenfield