**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHARLES THERRIEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEARST TELEVISION, INC.,<br><br>Defendant. | Case No. 1:23-cv-10998<br><br>Hon. Richard G. Stearns<br><br>**ORAL ARGUMENT REQUESTED PURSUANT TO L.R. 7.1(d)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, TO REOPEN DISCOVERY**

Dated: March 14, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (BBO #716245)
Max S. Roberts (*Pro Hac Vice*)
Victoria X. Zhou (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**REARDON SCANLON LLP**
James J. Reardon, Jr. (BBO #566161)
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**


**PAGE**

INTRODUCTION AND SPECIFICATION OF RELIEF REQUESTED ..... 1

ARGUMENT ..... 2

I. CERTIFICATION IS APPROPRIATE USING AN ALTERNATIVE CLASS DEFINITION ..... 2

II. RECONSIDERATION OF THE COURT'S ORDER DENYING THE ORIGINAL CLASS DEFINITION IS WARRANTED ..... 4

A. The Court's Order Adopted Defendant's Incorrect Description Of Dr. V.R.'s methodology ..... 4

1. The Concept Of Identifying Class Members Using Only Their "Top-2 Locations" Was Made-Up By Defendant ..... 6

2. Neither Dr. V.R. Nor Plaintiff Proposed Using Class Member Affidavits ..... 8

i. Already-Proven Scientific Methodologies Do Not Need To Be Re-Validated Every Time They Are Used ..... 9

ii. To The Extent Required, Dr. V.R. Provided Alternative Means Of Validating His Findings Without Testimony ..... 9

iii. Asking A Sample Of Class Members To Verify Ownership Of Their E-mail Addresses To Confirm Dr. V.R.'s Findings Does Not Constitute Testimony ..... 10

B. The Court Misapprehended Or Overlooked That Dr. V.R.'s Methodology Allows For The Identification Of Class Members Who Live In Multi-Unit Buildings ..... 12

C. The Court Overlooked Evidence Proving That Braze And/Or Google Have Historical Data For Class Members ..... 13

D. The Court Made Manifest Errors Of Law ..... 14

1. The Court Erred By Finding Dr. V.R.'s Methodology Was Not Administratively Feasible ..... 14

2. The Court Made A Manifest Error Of Law By Finding Defendant Could "Genuinely Challenge" Class Members' Claims, When No Evidence In The Record Supports Its Defenses ........ 16

3. Denying Class Certification Based On The Number Of Videos Watched During The Class Period Was An Error ........ 18

III. IN THE ALTERNATIVE, THE COURT SHOULD REOPEN DISCOVERY SO PLAINTIFF CAN PROVE DR. V.R.'S METHODOLOGY ........ 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........ 16

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
867 F.3d 434 (3d Cir. 2017)........ 15

*Clough v. Revenue Frontier, LLC*,
2019 WL 2527300 (D.N.H. June 19, 2019)........ 17

*Code v. City of St. Louis ex rel. Medium Security Institution*,
103 F.4th 523 (8th Cir. 2024) ........ 4

*Delarosa v. Boiron, Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011) ........ 17

*Dilts v. Penske Logistics LLC*,
2013 WL 12095059 (S.D. Cal. July 15, 2013) ........ 11

*Dziennik v. Sealift, Inc.*,
2006 WL 1455464 (E.D.N.Y. May 23, 2006) ........ 20

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 3

*Feldman v. Star Tribune Media Co.*,
659 F. Supp. 3d 1006 (D. Minn. 2023)........ 17

*Hargrove v. Sleepy's LLC*,
974. F.3d 467 (3d Cir. 2020)........ 1, 15, 19

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018)........ 15, 16

*In re Hulu Privacy Litig.*,
2014 WL 2758598 (N.D. Cal. June 17, 2014)........ 15, 16, 18

*In re Initial Pub. Offering Sec. Litig.*,
483 F.3d 70 (2d Cir. 2007)........ 4

*In re Wholesale Grocery Prods. Antitrust Litig.*,
946 F.3d 995 (8th Cir. 2019) ........ 4

*Jancik v. WebMD LLC*,
2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ........ 14

*Johnson v. Comodo Grp., Inc.*,
2020 WL 525898 (D.N.J. Jan. 31, 2020) ........................................ 15

*Krakauer v. Dish Network, L.L.C.*,
2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ........................................ 15

*Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp.*,
670 S.W.2d 40 (Mo. Ct. App. 1984) ........................................ 11

*Mantha v. QuoteWizard.com, LLC*,
347 F.R.D. 376 (D. Mass. 2024) ........................................ 11, 12, 15

*Maree v. Deutsche Lufthansa AG*,
2023 WL 2563914 (C.D. Cal. Feb. 13, 2023) ........................................ 1, 5

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ........................................ 18

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ........................................ 15, 19

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ........................................ 20

*SHS ACK, LLC v. Silberberg*,
2023 WL 4186289 (D. Mass. June 26, 2023) ........................................ 19

*Smith v. United States*,
834 F.2d 166 (10th Cir. 1987) ........................................ 19

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) ........................................ 4

*Waste Manag. Hdgs., Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000) ........................................ 16, 18

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........................................ 3

**STATUTES**

Cal. Civ. Code § 1798.140(v)(1) ........................................ 4

**RULES**

Fed. R. Civ. P. 23(a) ........................................ 2

Fed. R. Civ. P. 23(b)(3) ........................................ 2

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................................ 1, 4

Fed. R. Civ. P. 23(d) ........................................................................................................................ 20

**INTRODUCTION AND SPECIFICATION OF RELIEF REQUESTED**

Fed. R. Civ. P. 23(c)(1)(C) states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." This provision "allows for multiple bites at the apple throughout the litigation, and that does not impose an additional requirement on parties to prove a change in law or show new evidence to succeed on a renewed motion for certification." *Hargrove v. Sleepy's LLC*, 974. F.3d 467, 476 (3d Cir. 2020). "The Rule does not distinguish between a renewed motion for certification based on new evidence and one based on a more narrow and clearer definition of a class that meets the requirements of Rule 23." *Id.* "As a practical matter, [there is] no reason why plaintiffs who can cabin more clearly their class, and meet the other Rule 23 requirements, should be barred from succeeding on a renewed motion." *Id.*

Based on this, Plaintiff seeks three forms of relief. *First*, Plaintiff seeks to certify a narrower Class of Defendant's Class App users that registered using e-mail addresses, and without regard to geolocation. Because mere e-mail verification does not require individual testimony, the bases for the Court's Order Denying Plaintiff's First Motion for Class Certification (ECF No. 136) (the "Order") are inapplicable.

*Second*, Plaintiff requests that the Court reconsider its Order based on the original Class definition because the Court misapprehended the evidence and made errors of law based on mischaracterizations in Defendant's briefing. Plaintiff pointed out these mischaracterizations in his Class Certification Reply Brief (ECF No. 104) ("Reply") and *Daubert* Opposition (ECF No. 105) ("*Daubert* Opp."), which the Court appeared to overlook. "The failure to consider th[ese] brief[s] constitutes the failure to consider material facts, warranting reconsideration." *Maree v. Deutsche Lufthansa AG*, 2023 WL 2563914, at *3 (C.D. Cal. Feb. 13, 2023).

*Finally*, Plaintiff requests, in the alternative, to re-open discovery solely to allow Plaintiff to subpoena the Class records from Braze and Google to prove to the Court that his expert's proposed methodology will identify Class Members without the need for individual questions.

## ARGUMENT

### I. CERTIFICATION IS APPROPRIATE USING AN ALTERNATIVE CLASS DEFINITION

While Plaintiff believes the Court misapprehended facts germane to his first motion for class certification (*see* Argument § II, *infra*), he can also "cabin more clearly [his] class" so that it faces none of the purported infirmities the Court noted in its Order. Plaintiff therefore seeks certification of the following Class:

> All persons in the United States who (i) installed one of the Class Apps onto their mobile phone on or after May 5, 2021, (ii) provided their email address, and (iii) watched at least one pre-recorded video between May 5, 2021 and the present (the "Class Period").

As set forth below, this violates none of the Court's bases for denial of the first motion.[1]

#### A. No Testimony Is Required To Validate An Email Address

The Court's primary reason for denying class certification was ascertainability, finding that it would require "testimony from each putative class member" to identify them. Order at 13. Plaintiff believes the Court misapprehended this point. Argument § II.D, *infra*. Regardless, no testimony could conceivably be required to identify class members for whom Defendant already has e-mail addresses because testimony is not required to verify ownership an e-mail address. E-mail address verification is a ubiquitous practice of modern life that everybody with an email address does. In fact, asking users to verify their own e-mail addresses is so common that *even*

---

[1] This Class definition meets the Fed. R. Civ. P. 23(a) and 23(b)(3) factors for the same reasons as in Plaintiff's prior brief. *See* ECF Nos. 84, 104.

*Defendant does it*. *See*, *e.g.*, PRIVACY NOTICE ("When you submit a Privacy Rights Request, you will be required to verify access to the email address you submitted, and you will receive an email with a verification link to complete your email verification process. You are required to verify your email for us to proceed with your Privacy Rights Request.").[2] E-mails are even easier to verify than a list of names. If this were a true bar to certification, no class could ever be certified.

**B. Defendant's Records Contain All Data Necessary To Prove Class Membership**

Every element of the proposed class definition can be proven by the spreadsheets produced by Defendant in this case (the "Class List"). The Class List shows [redacted] Rosellini Dep. at 162:20-22 [redacted] In the case of Plaintiff, that column shows [redacted] proving his membership in the Class. [redacted] Finally, [redacted] Rosellini Dep. at 166:25-167:2. Here, [redacted] thereby proving his Class membership.

**C. Whether An Email Address Constitutes PII Is An Issue Common To The Class**

The Parties are now briefing the issue of whether e-mail constitutes PII on summary judgment. This is an issue common to the entire Class. As Plaintiff explains in his summary judgment opposition brief, an e-mail constitutes "pre se PII." *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (someone can be identified by "name, address, phone number, and more"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017)

---

[2] https://www.hearst.com/-/us-magazines-privacy-notice.

("[A]n email address may very well readily enable an 'ordinary person' to identify an individual" under the VPPA); *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) (under Driver's Privacy Protection Act, "[e]mail addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual."). Likewise, the CCPA defines "Personal Information" to include e-mail addresses. Cal. Civ. Code § 1798.140(v)(1). Indeed, *Defendant's own Privacy Policy* acknowledges "email addresses" are "personally identifiable information." PSOF ¶ 161 (ECF No. 129).

## II. RECONSIDERATION OF THE COURT'S ORDER DENYING THE ORIGINAL CLASS DEFINITION IS WARRANTED

Rule 23(c)(1)(C) "extends to requests, as here, to reconsider a prior class certification denial." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1004 (8th Cir. 2019). A district court abuses its discretion in reconsidering a prior class certification denial only if it rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions. *Code v. City of St. Louis ex rel. Medium Security Institution*, 103 F.4th 523, 529 (8th Cir. 2024) (cleaned up); *see also In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (allowing the petitioners to "return[ ] to the District Court to seek certification of a more modest class" and explaining that "District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial").

### A. The Court's Order Adopted Defendant's Incorrect Description Of Dr. V.R.'s methodology

In denying class certification, the Court summarized Dr. V.R.'s methodology as follows:

> analyzing geolocation data points over the class period to determine the users' "top-2" most-frequented locations; sending that data (assuming those "top-2" locations are the residential and secondary addresses of users) to third-party brokers who will use additional data sources; and validating whether the resulting names are HTV App users through manual steps, including testimony from each

putative class member confirming that the information disclosed is theirs.

Order at 12-13. This summary of Dr. V.R.'s methodology tracks Defendant's mischaracterization of his methodology (*see* ECF No. 95 at 2-3), *not* his actual methodology. Instead, as set forth in Plaintiff's Reply at 4-5 and Opposition at 1-3, Dr. V.R.'s *actual* methodology is as follows:

1. [redacted] V.R. Rep. ¶ 63; *see also* Reply at 4. To the extent necessary, [redacted] *Daubert Opp.* at 19.

2. From these addresses, determine *all of* the user's "frequented locations." *Daubert Opp.* at 2; *see also* V.R. Rep. ¶ 106. That is not not limited to only the users' "top-2" locations, and does not require the users' locations to be home and work. *Daubert Opp.* at 9, 11-12.

3. "[C]ross-referencing external data sources against frequented locations" to "identif[y] and de-anonymize[]" individuals." Order at 6 (citing V.R. Rep. ¶ 46). "This includes information publicly on the web, U.S. Census data, and online social networks along with data offered by brokers and online identity managers." Order at 6 n.3.

4. For members of the E-mail or AAID Subclasses, their additional data points "can also be cross referenced against other data sources to identify class members by first and last name." *Daubert Opp.* at 3 (citing V.R. Rep. ¶¶ 89-107).

Defendant's mischaracterization runs counter to the evidence in this case—which Plaintiff set forth in his prior briefing—and counter to the Court's own findings in denying the *Daubert* motion. The Court's misapprehension of Dr. V.R.'s methodology and failure to apprehend the evidence in these prior briefs warrants reconsideration. *Maree*, 2023 WL 2563914, at *3 ("Maree and Lufthansa point out that the Court failed to consider Maree's reply brief in its prior order …

The failure to consider this brief constitutes the failure to consider material facts, warranting reconsideration, which the Court now grants.").

*1. The Concept Of Identifying Class Members Using Only Their "Top-2 Locations" Was Made-Up By Defendant*

As Plaintiff explained in his *Daubert* Opposition, "Defendant's insistence that geolocation can only identify people through their home and workplaces is made-up and contradicted by the actual testimony of Dr. V.R." *Daubert Opp.* at 12. The Order misapprehended this evidence because: (i) Dr. V.R's proposed methodology goes well beyond analyzing two locations; (ii) the top-2 locations do not need to be the home and workplace under Dr. V.R's proposed methodology; and (iii) Dr. V.R's methodology does not "assume" the top-2 locations are the home and workplace, but rather uses "heuristics" to determine the user's home and workplace.

*First*, Dr. V.R.'s methodology was never based solely on users' top-2 locations. To the contrary, Dr. V.R. explained that, in addition to people's homes and workplaces, this data will reflect *other frequented* locations. V.R. Dep. at 184:23-185:9 [redacted] Indeed, as a peer-reviewed study noted, "[i]t is natural to think of the top 2 locations as home and work for a large fraction of the population, but more generally … [t]he more top locations an adversary knows about a target, the easier it is to identify the target." *Daubert Opp.* at 12 (citing Dr. V.R. Rep. ¶ 54).

Dr. V.R. further explained—and the Court recognized in the *Daubert* portion of the Order—that *all of* these frequented locations would be "cross-referenc[ed]" against "external data sources … to 'identif[y] and de-anonymize[]' individuals." Order at 6 (citing V.R. Rep. ¶ 46). "This includes information publicly on the web, U.S. Census data, and online social networks along with data offered by brokers and online identity managers." Order at 6 n.3 (citing V.R. Rep.

¶ 44). [redacted] V.R. Dep. at 172:2-6.

*Second*, [w]hile "users' top-2 locations are *expected* to match with their home and workplace address, respectively" (*Daubert Opp.* at 11 (quoting V.R. Rep. ¶ 59) (emphasis added)), Dr. V.R.'s methodology is not dependent on this principle. *See* V.R. Dep. at 193:5-13. Instead, "[a]s a[] peer-reviewed article notes, people can be identified by various points of interest beyond the home and workplace." *Daubert Opp.* at 12 (citing ECF No. 107-7); V.R. Rep. ¶ 54 (same).

*Third*, Dr. V.R. never proposed "assuming th[e] 'top-2' locations are the residential and secondary addresses of users." Order at 12. Instead, Dr. V.R. proposed to use "various heuristics and clustering techniques to effectively identify user home and workplace addresses, commuting paths, and other locations of interest by analyzing the time, duration and frequency of geolocation records for such locations." *Daubert Opp.* at 11 (quoting Dr. V.R. Rep. ¶ 59). Plaintiff provided a chart in his briefing (pulled directly from a peer-reviewed study cited by Dr. V.R.) showing how these "heuristics" permit researchers to identify home and work addresses:

| | | Heuristic Description | Dataset | | Proposed by |
|---|---|---|---|---|---|
| | | | Top | Low | |
| Home | 1 | Cluster with the highest number of tweets | 72.3% | 67.8% | [16], [17], [35], [42] |
| | 2 | Most tweets between 20:00-8:00 | 72.1% | 66.4% | [48] |
| | 3 | Most tweets between 24:00-7:00 | 69.3% | 54.7% | [35] |
| | 4 | Last destination of the day (before 3am) | 73.3% | 64.8% | [35], [42] |
| | 5 | Last destination of the day (w/o days with tweets between 24:00-7:00) | 71.4% | 64.4% | [35] |
| | 6 | Weighted PageRank for destinations | 44.1% | 26.4% | [35] |
| | 7 | Weighted PageRank for origins | 37.5% | 20.9% | [35] |
| | 8 | Most popular cluster in terms of unique days, during the *Rest* (2:00-7:59) and *Leisure* (19:00-01:59) time frames | 73.1% | 64.9% | [22] |
| | 9 | WMFV (best reported time frame: 24:00-5:59) | 65% | 50.9% | [46] |
| | 10 | W-MEAN (best reported time frame: 24:00-5:59) | 0.6% | 14.7% | [46] |
| | 11 | W-MEDIAN (best reported time frame: 23:00-5:59) | 15.6% | 24.5% | [46] |
| | 12 | LPAuditor's Home detection without 2nd level clustering | 73.7% | 69.3% | this paper |
| | 13 | **LPAuditor's Home detection** | **92.2%** | **92.9%** | **this paper** |
| Work | 14 | Most popular cluster in terms of unique days, during the *Active* time frame (e.g., working hours, 08:00-18:59) | 33.2% | 48.9% | [22] |
| | 15 | Cluster with the second highest number of tweets | 18.5% | 22.8% | - |
| | 16 | LPAuditor's Work detection without 2nd level clustering | 32.2% | 30.4% | this paper |
| | 17 | **LPAuditor's Work detection** | **55%** | **57.6%** | **this paper** |

*Daubert Opp.* at 12 (citing Geolocation Study at Table III). The Court's citations to Dr. V.R.'s report do not undermine this. Instead, these paragraphs show how Dr. V.R. determined Mr. Rosellini's identity from a single geolocation point using a publicly available resource (V.R. Rep.

¶ 58), and Plaintiff's [redacted] V.R. Rep. ¶ 106 (emphasis added). Accordingly, because the Court accepted Defendant's unsupported argument that Dr. V.R.'s methodology was limited to a user's top-2 locations, and that those top-2 locations had to be a user's home and workplace, the Court misapprehended the evidence.

2. *Neither Dr. V.R. Nor Plaintiff Proposed Using Class Member Affidavits*

Defendant's briefing also appears to have confused the Court into believing that Dr. V.R.'s methodology requires "testimony from each putative class member necessary to validate whether the geolocation data points identify residential and secondary addresses, and the names associated with those addresses would be 'administratively infeasible' and potentially violative of HTV's due process rights." Order at 13. This finding misapprehended the evidence on many levels.

To start, even if Dr. V.R.'s methodology required some validation from Class Members (and it doesn't), the most Dr. V.R. testified to was that [redacted] (V.R. Dep. at 278:20-24). Dr. V.R. *never* suggested that all Class Members would need to be contacted to confirm their names or "whether the geolocation data points identify residential and secondary addresses."

Even putting this aside, the Court misapprehended the evidence for at least four additional reasons: (i) validation was never required to begin with because Dr. V.R.'s methodology was already validated by peer-reviewed studies; (ii) to the extent validation is required, Dr. V.R. provided several alternative means to do so without input from Class Members; (iii) a survey conducted by an expert with a sample of Class Members to validate his results is permitted under

black letter law and does not constitute "testimony;" and (iv) the process of e-mail verification is so objective and manageable, even Defendant uses it.

**i. <u>Already-Proven Scientific Methodologies Do Not Need To Be Re-Validated Every Time They Are Used</u>**

As Plaintiff explained in his *Daubert* Opposition, Dr. V.R.'s methodology has already been validated by the scientific community. It does not require further confirmation by Class Members or multiple layers of review because "the Geolocation Study … prove[d] the effectiveness of the methodology so it could be used on other datasets." *Daubert Opp.* at 7; *see also* Argument § II.A.2.iii, *infra*. The Court recognized this as well in the *Daubert* portion of the Order, noting "[t]he idea that individuals are likely to be identified and de-anonymized by cross-referencing external data sources against frequented locations *is a conclusion accepted within the data privacy research community*." Order at 6 (emphasis added). And, as Dr. V.R. testified [redacted] *Daubert Opp.* at 13 (quoting Dr. V.R. Dep. at 126:13-23). The Court's misstatement of Dr. V.R.'s methodology to require validation by Class Members—when no further validation beyond that of the scientific community is required—warrants reconsideration.

**ii. <u>To The Extent Required, Dr. V.R. Provided Alternative Means Of Validating His Findings Without Testimony</u>**

Notwithstanding it was not required, and as Plaintiff pointed out in his Reply at 13, Dr. V.R. proposed [redacted] of validating his results other than corresponding with Class Members. *See also* V.R. Dep. at 278:13. One method was [redacted] where Dr. V.R. would [redacted]

[redacted] Reply at 13 (quoting V.R. Dep. at 279:5-12). And Dr. V.R. would use [redacted] V.R. Dep. at 172:2-6.

Indeed, Dr. V.R. already showed the accuracy of this method by confirming both Plaintiff's and Mr. Rosellini's identities [redacted] V.R. Rep. ¶¶ 58, 106. In both of those cases, no affidavit or testimony was necessary from either Plaintiff or Mr. Rosellini. Nor were any data brokers used. By performing this process manually for a sample of other Class Members, as he did for Plaintiff and Mr. Rosellini, Dr. V.R. could curate a ground truth manually for a sample size of the Class to validate the results of his methodology as to the entire population.

Dr. V.R. also proposed that [redacted] *Daubert Opp.* at 8 (cleaned up). Defendant's own expert agreed this was sufficient. *Id.* [redacted] (quoting Dippon Dep. at 113:11-17); *id.* [redacted] (quoting Dippon Dep. at 114:1-21). Thus, a method for validating the results already exists in Defendant's records.

#### iii. <u>**Asking A Sample Of Class Members To Verify Ownership Of Their E-mail Addresses To Confirm Dr. V.R.'s Findings Does Not Constitute Testimony**</u>

As *another, alternative* means of validating his findings, *to the extent that doing so is legally required* (it is not), Dr. V.R. explained he could contact a sample of putative Class Members via their email addresses listed in Defendant's records to confirm he had correctly identified them.

V.R. Dep. at 278:20-24 [redacted] Dr. V.R. gave this answer in response to a question about how he would [redacted] V.R. Dep. at 278:10-12. But that question improperly assumes (i) that the results from a data broker require validation when such a methodology has already been validated and approved by courts in this District[3]; and (ii) that Dr. V.R. was relying solely on data brokers and not other sources like "information publicly on the web." Order at 6 n.3 (cleaned up).

Nevertheless, Defendant twisted this deposition response into Dr. V.R.'s methodology requiring "testimony from each putative class member." *See* Order at 13. As the foregoing makes clear, Dr. V.R.'s methodology does *not* require further validation, much less "testimony" from Class Members. Argument § II.A.2, *supra*; *see also* Reply at 13. Further, as Plaintiff pointed out in his Reply, "an expert witness contacting a sample of people to validate results is not remotely considered 'testimony,' and expert witnesses are permitted to rely on hearsay. Fed. R. Evid. 703. Were that not the case, no expert could ever conduct a survey for purposes of litigation." Reply at 13-14; *see also Dilts v. Penske Logistics LLC*, 2013 WL 12095059, at *2 (S.D. Cal. July 15, 2013) (The responses that form the basis of Dr. O'Neil's opinion are hearsay. The Court, however, may admit the survey results as evidence of material facts under the residual hearsay rule…"); *Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 54 (Mo. Ct. App. 1984) ("[I]t is proper to allow into evidence surveys which meet fundamental requirements of necessity and trustworthiness for the purpose of providing the foundation for an expert opinion such as that elicited here.").

[3] *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 388 (D. Mass. 2024) (permitting use of "data processing service provider" to identify class members despite challenges to accuracy). The Court cited *Mantha* in its Order at 7.

Last, as highlighted above, asking users to verify their own e-mail addresses is not testimony. It is so common that *even Defendant uses it*. *See* Argument § I, *supra*.

**B. The Court Misapprehended Or Overlooked That Dr. V.R.'s Methodology Allows For The Identification Of Class Members Who Live In Multi-Unit Buildings**

The Court also incorrectly assumed Dr. V.R.'s methodology would not allow for the identification of Class Members who lived in "multi-unit apartment building[s] with hundreds of occupants" "from the geolocation data alone." Order at 13-14. Again, this misapprehends Dr. V.R.'s methodology, which is as applicable to Class Members who live in single residence buildings as those who live in multi-unit buildings.

As Plaintiff explained in his *Daubert* Opposition, [redacted] *Daubert Opp.* at 1-2 (quoting V.R. Rep. ¶ 51). Dr. V.R.'s methodology would be to match these frequented locations with "external data sources" to "identif[y] and de-anonymize[]" individuals." Order at 6 (citing V.R. Rep. ¶ 46). So, even if a person lives in a multi-unit building, they would visit other locations that would allow Dr. V.R. to identify them. *See Daubert Opp.* at 9 [redacted] (quoting V.R. Dep. at 185:4-9).

The Court noted that Dr. V.R. "would not be able to identify [former Plaintiff] Saunders' apartment number from the geolocation data alone." Order at 14. But as the Court recognized just pages earlier, Dr. V.R. was never assigned "to identify her." Order at 7; *see also Mantha*, 347 F.R.D. at 392 (ascertainability met because "Mantha is not required to identify every potential

class member precisely to satisfy the ascertainability requirements. He need only put forward objective criteria that makes the identification of the putative Class administratively feasible.").

Even so, the Court overlooked crucial facts in Dr. V.R.'s and Ms. Saunders' testimony. As to the former, Dr. V.R. would have used his same methodology for Ms. Saunders as any Class Member: [redacted] V.R. Dep. at 351:22-352:8. But Dr. V.R. did not have those resources in the middle of his deposition. *Id.* at 350:12-15 [redacted]

Dr. V.R. also testified that Ms. Saunders' data [redacted] *Id.* at 352:20-353:4; *see also Daubert Opp.* at 19 (citing same). In fact, as Plaintiff pointed out in his *Daubert* Opposition, Ms. Saunders' testimony reflected she was an outlier because she is a "double lung transplant" with naturally limited mobility. *Daubert Opp.* at 19 (quoting Saunders Dep. at 35:2-3). Thus, whether or not Dr. V.R. could identify Ms. Saunders is irrelevant because she, unlike Class Members, had atypical mobility patterns. The Court failed to consider or apprehend these facts, and reconsideration is therefore warranted.[4]

### C. The Court Overlooked Evidence Proving That Braze And/Or Google Have Historical Data For Class Members

The Court also credited Defendant's argument that "it is 'untrue and unsupported by any evidence sought in discovery or otherwise' that Braze and Google have" historical geolocation data. Order at 12 n.5 (quoting ECF No. 94 at 21). In fact, as Defendant has no knowledge of this

[4] Ms. Saunders is also not a Class Member because there were only 78 points of geolocation in her Braze data, approximately one-third of the geolocation points required for Class membership.

fact one way or another. Instead, the record shows that Braze *does have historical geolocation data*, as it produced Ms. Saunders' historical data. Braze also appeared to state it could produce Plaintiff's historical data (*see* Kopel Decl. Ex. 9), but Plaintiff was not added as a class representative (ECF No. 78) until after discovery was closed (ECF No. 43). Thus, by the time Plaintiff had standing to request this data, he was unable to do so. Further, Mr. Rosellini testified that [redacted] Rosellini Decl. (ECF No. 97-6) ¶¶ 16, 18, 25, 30-31; *see also* Rosellini Dep. at 68:11-19, 133:7-9, 136:9-13; ECF No. 97-9 at HTV-234 [redacted] Plaintiff pointed out these facts in his Reply. Reply at 6.

Thus, the only evidence in the record is that Braze and Google have historical Class Member data. As another court recently held in the VPPA context, ascertainability is met where the third party produced "Event Data … for [the named] Plaintiff" and the defendant "has not offered testimony to the contrary" that the third party could not pull this data for other class members. *Jancik v. WebMD LLC*, 2025 WL 560705, at *3-4 (N.D. Ga. Feb. 20, 2025). The Court's failure to look at this evidence warrants reconsideration.

**D. The Court Made Manifest Errors Of Law**

*1. The Court Erred By Finding Dr. V.R.'s Methodology Was Not Administratively Feasible*

The Court found there was no administratively feasible way to identify Class Members because "testimony from each putative class member [is] necessary to validate whether the geolocation data points identify residential and secondary addresses, and the names associated with those addresses." Order at 13. But as described above (and in Plaintiff's Class Certification Reply and *Daubert* Opposition Briefs), this is a mischaracterization of Dr. V.R.'s methodology.

Regardless, requiring Class Members to validate their information in conjunction with Defendant's Braze database does not defeat ascertainability. As the Third Circuit—which employs the most stringent ascertainability standard in the country[5]—has held, "multiple sets of evidence that can be matched with and verified by the putative class members' affidavits" satisfies ascertainability. *Hargrove*, 974 F.3d at 480; *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441-42 (3d Cir. 2017) (rejecting "[t]he conclusion that affidavits in combination with the Creditsmarts database categorically failed to meet [] ascertainability").

Further, as Plaintiff pointed out in his Reply at 18, numerous authorities find ascertainability met where an expert proposes matching class member data to data brokers or other private sources – without any need to validate the results. *See*, *e.g.*, *Mantha*, 347 F.R.D. at 392 (permitting use of "data processing service provider" to identify class members despite challenges to accuracy and noting "[a]lthough QuoteWizard disputes the accuracy of Verkhovskaya's methodology, it is enough, for ascertainability purposes, that Mantha has offered an objective means to ascertain the Class"); *Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693, at *4, *8-11 (M.D.N.C. Sept. 8, 2015) (permitting the use of two data processing entities to verify the class as the court "has considered the potential error rate and does not find it unreasonably high for these particular circumstances."); *Johnson v. Comodo Grp., Inc.*, 2020 WL 525898, at *9 (D.N.J. Jan. 31, 2020) (finding plaintiff's expert's methodology of using multiple data vendors is "sufficiently capable of identifying putative class members.").

The Order cited two cases on this point: *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018), and *In re Hulu Privacy Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014). The Court's

[5] *See*, *e.g.*, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015) ("[W]e briefly summarize the law of the Third Circuit, which has adopted this more stringent version of ascertainability.").

reliance on these authorities was misplaced. As to *In re Asacol*, as Plaintiff pointed out in his Reply at 14, "[t]he district court presumed that approximately ten percent of class members had not been injured by Warner's allegedly anticompetitive conduct because, even had a lower-priced generic alternative been available, these consumers would not have switched to it." *In re Asacol*, 907 F.3d at 46-47. Thus, testimony from every class member was necessary to establish "an element of [the] party's affirmative case." *Id.* at 53. Not so here, where the elements of Plaintiff's claim—whether geolocation, e-mail addresses, and/or AAIDs are reasonably and foreseeably likely to identify Class Members—does not require individualized testimony; the academic community has already proven that.

*In re Hulu* relies on a heightened standard of ascertainability that the Ninth Circuit has since rejected. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). In any event, the affidavit in *In re Hulu* had multiple steps to confirm the claim, such as "do you log into Facebook and Hulu from the same browser; do you log out of Facebook; do you set browser settings to clear cookies; and do you use software to block cookies?" *In re Hulu*, 2014 WL 2758598, at *16. By contrast, *some* Class Members here *at most* would only verify their e-mails.

*2. The Court Made A Manifest Error Of Law By Finding Defendant Could "Genuinely Challenge" Class Members' Claims, When No Evidence In The Record Supports Its Defenses*

The Court also held that ascertainability was not met because "HTV has stated its intention to challenge any affidavits." Order at 15. Notwithstanding affidavits are not part of Dr. V.R.'s methodology (Argument § I.B, *supra*), Defendant must "genuinely challenge[]" any Class Member affidavits. Order at 14. Courts may not "permit[] arguments woven entirely out of gossamer strands of speculation and surmise to tip the decisional scales in a class certification ruling." *Waste Manag. Hdgs., Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).

Here, both of Defendant's arguments rest on speculation and are therefore not genuine challenges to any element of Plaintiff's claim. As to consent, and as Plaintiff pointed out in his Reply at 13, Defendant has failed to produce evidence that any class member provided VPPA-compliant consent.[6] And "[u]nless a defendant points to evidence of consent, courts do not presume that resolving the issue requires individualized inquiries." *Clough v. Revenue Frontier, LLC*, 2019 WL 2527300, at *7 (D.N.H. June 19, 2019). Thus, Defendant has not and cannot genuinely challenge any affidavit based on consent.

As to "whether the data shared with Braze and Google reasonably and foreseeably is likely to identify a HTV user" (Order at 15), Defendant cannot really challenge this element because "[t]he idea that individuals are likely to be identified and de-anonymized by cross-referencing external data sources against frequented locations is a conclusion accepted within the data privacy research community." Order at 6. Even Defendant's expert agreed with that. ECF No. 108 (Kopel Decl. Ex. 7) at ¶¶ 24, 29 (report filed by Dr. Dippon in FAA matter finding that geolocation points and other data "could possibility reveal their identities … or their own locations when flying").

Regardless, Defendant's challenge goes to an objective element of every Class Members' claim. Either 250 points of geolocation are "reasonably and foreseeably likely" to identify Class Members or they are not. If Defendant is correct, then a class cannot be certified because the objective standard is not met, even if some people like Mr. Rosellini could be identified based on one point of geolocation. Defendant's arguments about the potential existence of outlying Class Members pertain to the merits rather than certification. *See*, *e.g.*, *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("Defendant's arguments that it can present proof the Coldcalm

[6] Consent is not actually an element of a VPPA claim. Instead, it is "an affirmative defense that the [Defendant] bears the burden to plead and prove." *Feldman v. Star Tribune Media Co.*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023).

worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product.").

### 3. *Denying Class Certification Based On The Number Of Videos Watched During The Class Period Was An Error*

Last, the Court noted that the data on Hearst's Braze dashboard does not "show who had geolocation enabled for those sessions or whether the 10 or more videos were viewed during the class period." Order at 12 n.5. The former is easily disposed of. Braze's historical data—which Plaintiff has adduced evidence exists (Argument § II.C, *supra*)—will show all the geolocation points for any Class Member. Defendant's argument is thus impermissible speculation, and finding otherwise constitutes manifest error of law and a misapprehension of facts. *Waste Manag. Hdgs., Inc.*, 208 F.3d at 298. As to the latter, the Court appeared to overlook Plaintiff's argument that, "in the alternative, the class can be limited to only App users whose [redacted] date in the Braze data is within the Class Period, thus ensuring that the videos were played during the class period." ECF No. 104 at 7 n.4 (citing Kopel Class Cert. Decl. Exs. 16-43 at Column J).[7] Indeed, "definitional flaws 'can and often should be resolved by refining the class definition rather than by flatly denying class certification on that basis.'" *In re Hulu*, 2014 WL 2758598, at *14 (quoting *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012)).

## III. IN THE ALTERNATIVE, THE COURT SHOULD REOPEN DISCOVERY SO PLAINTIFF CAN PROVE DR. V.R.'S METHODOLOGY

If the Court denies class certification, it should reopen discovery to allow Plaintiff to subpoena the Class records from Braze and Google to prove that his expert's proposed methodology will successfully identify Class Members without the need for individual questions.

[7] Plaintiff put forth this time period—"between May 5, 2021 and the present"—in his proposed new Class definition. Argument § I, *supra*.

To do that, Plaintiff seeks to reopen discovery for two limited purposes: (i) permitting Plaintiff to obtain the historical Braze data so Dr. V.R. can perform his methodology and Plaintiff can move again for class certification; and (ii) if Braze does not have the historical data, allowing Plaintiff to understand why Braze only had that data for Ms. Saunders. *Hargrove*, 974 F.3d at 470 ("[W]here an employer has failed to keep records it was required to keep by law, employees can prove ascertainability by producing sufficient evidence to define their proposed class as a matter of just and reasonable inference."); *Mullins*, 795 F.3d at 664 ("refusing to certify" class because defendants failed to retain records "effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions.").

"District courts have broad discretion in pretrial management matters, including discovery matters." *SHS ACK, LLC v. Silberberg*, 2023 WL 4186289, at *2 (D. Mass. June 26, 2023) (cleaned up). "Appellate decisions have identified several relevant factors in reviewing decisions concerning whether discovery should be reopened, including: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery … 5) the foreseeability of the need for additional discovery … and 6) the likelihood that the discovery will lead to relevant evidence." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

These factors weigh in favor of Plaintiff. *First*, no trial date has been scheduled. *Second*, although Defendant opposes this request, it will not be prejudiced. Defendant's entire opposition to Dr. V.R.'s testimony has been he did not analyze Class Member data and, even if he did, it would not identify Class Members. Why not put that to the test? *Third*, this Court previously found Plaintiff was "exceptionally diligent" in pursuing discovery. ECF No. 78. This is especially

so given the Court *shortened* the amount of time Plaintiff was allotted for discovery by four months, from December 6, 2024 to August 12, 2024. *See* ECF No. 67 at 3 n.2.

*Fourth*, it was foreseeable Plaintiff would require this data *after* class certification. However, as Plaintiff pointed out in his Reply at 7-8, subpoenaing Class Member data prior to certification would not have been appropriate under Supreme Court precedent. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978) (holding that where, as here, "information is sought to facilitate the sending of notice rather than to define or clarify issues in the case," notwithstanding that it "resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d)"); *see also Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage"). But if Plaintiff was required to procure this data prior to class certification (against Supreme Court precedent), then that request was not foreseeable.

*Finally*, it is a near-certainty that subpoenaing Braze for Class Member data will produce historical data for all Class Members. Again, the only evidence in the record is Ms. Saunders' historical geolocation data, and Braze has at least implied it can pull the same data for Plaintiff. *See also* Argument § II.C, *supra*. There is also no reason to think Google does not have this data. Then, Dr. V.R. can perform his methodology and demonstrate not only that it is accurate, but that it does not involve individualized testimony. To the extent Braze or Google do not have this data, then it is likely because "Defendant did not instruct them to retain Class Member data even after Defendant knew of its relevance following the action's commencement on May 5, 2023, nearly a year before the end (and amounting to approximately 38%) of the Class Period." Reply at 7. This will prompt significant questions and potential spoliation arguments.

Dated: March 14, 2025

Respectfully submitted,

By: /s/ Yitzchak Kopel
Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (BBO #716245)
Max S. Roberts (*Pro Hac Vice*)
Victoria X. Zhou (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**REARDON SCANLON LLP**
James J. Reardon, Jr. (BBO #566161)
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, I electronically filed the foregoing document with the Court's CM/ECF system, which will provide e-mail notice to all counsel of record.

By: */s/ Yitzchak Kopel*
Yitzchak Kopel